# Exhibit A

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| *In re Belle Tire Distributors, Inc. Data Breach Litigation* | Case No. 2:24-cv-12966-MFL-CI |
| | Hon. Matthew F. Leitman |
| | **CLASS ACTION** |

**JOINT DECLARATION OF PROPOSED SETTLEMENT CLASS
COUNSEL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1.      This Declaration is authored and submitted by proposed class counsel in the above-captioned matter: E. Powell Miller of The Miller Law Firm, P.C., Casondra R. Turner of Milberg, PLLC, and Scott Edward Cole of Cole & Van Note ("Class Counsel" and "Declarants").

2.      Declarants have personal knowledge of the matters stated herein. If called as witnesses, Declarants could and would testify truthfully and competently thereto under oath.

3.      Declarants are counsel for Plaintiffs and the Settlement Class in this action. Declarants submit this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion for Preliminary Approval").

4.      This case arises from a data security incident (the "Data Security

1

Incident") Defendant Belle Tire Distributors, Inc. ("Belle Tire") became aware of on or about June 11, 2024, involving the potential unauthorized access of Personally Identifiable Information ("PII") of approximately 29,000 individuals.

5.      In or around November 7, 2024, following Belle Tire's mailing of Notice Letters regarding the Data Security Incident, five putative class actions were filed against Belle Tire, *Berry v. Belle Tire Distributors, Inc.*, No. 2:24-cv-12966 (E.D. Mich.) *Algharably v. Belle Tire Distributors, Inc.*, No. 2:24-cv-12984 (E.D. Mich.), *Loafman v. Belle Tire Distributors, Inc.*, No. 2:24-cv-12994 (E.D. Mich.), *Georges v. Belle Tire Distributors, Inc.*, No. 2:24-cv-13018 (E.D. Mich.), *Travis v. Belle Tire Distributors, Inc.*, No. 2:24-cv-13084 (E.D. Mich.).

6.      After a status conference held on March 13, 2025, on March 19, 2025, the Court issued an Order Consolidating Cases and Appointing Interim Lead Counsel. On April 16, 2025, the Plaintiffs filed their Consolidated Complaint.

7.      On May 6, 2025, the Court granted the Parties' Stipulated Order to Stay Case Deadlines Pending Mediation. On September 4, 2025, the Court signed the Parties' Stipulated Order to Extend Stay Pending Mediation.

8.      On October 7, 2025, the Parties filed a Joint Status Report stating on September 30, 2025, the Parties attended a mediation session with mediator Hon. Morton Denlow (Ret.). The mediation did not produce a resolution, but the Parties continued to engage in adversarial settlement discussions, and, on February 6, 2026,

after months of negotiations, the Parties reached an agreement in principle. The Parties have since negotiated and finalized the details of the Settlement Agreement and present it here for preliminary approval.

9. This litigation involves roughly 29,000 individuals identified by Defendant. Mindful of the number of impacted individuals, since the filing of the litigation related to the Data Security Incident, the Parties have continuously engaged in settlement discussions.

10. In the period prior to the Parties' mediation, Class Counsel received informal discovery pertaining to Defendant's data security measures, the size of the Class, and the type of Private Information potentially accessed.

11. Through this informal discovery, Class Counsel and the Plaintiffs were able to evaluate the merits of Defendant's position and the strength and weaknesses of each respective side and draft a thorough mediation statement.

12. The exchange of information also allowed Class Counsel to confirm, e.g., the type of Private Information at issue here and the number of impacted individuals who had signed an arbitration agreements.

13. The Parties continued to negotiate during the subsequent months while exchanging information—ultimately coming to an agreement in principle on February 6, 2026.

14. On February 6, 2026, the Court issued a minute-entry noting that the

Parties reported reaching a preliminary resolution, the settlement documents were being prepared, and Plaintiffs would move for preliminary approval within approximately 45 days. The Parties have since worked to finalize the terms of the Settlement Agreement (the "S.A." or "Agreement") and have since negotiated the details of the Agreement and its exhibits, fulling executing the Agreement prior to the submission of Plaintiffs' Motion here (attached as **Exhibit 1** hereto).

15. The settlement terms that are summarized in the Motion for Preliminary Approval and detailed in the Agreement, in our view as Class Counsel, are fair, reasonable, and adequate, and in the best interests of the Settlement Class, supporting Preliminary Approval.

16. Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Class Counsel believe the claims asserted are meritorious and Plaintiffs would prevail if this matter proceeded to trial. Defendant, for its part, denies any wrongdoing whatsoever and disputes that it committed, or threatened or attempted to commit, any wrongful act, omission, or violation of law or duty alleged in the Action and believes it would have prevailed at summary judgment and/or trial.

17. Nonetheless, taking into account the uncertainty, risks, and expense inherent in any litigation, Defendant has concluded it is desirable and beneficial that the Action be fully and finally settled and terminated in the manner and upon the

terms and conditions set forth in this Agreement.

18. Ultimately, in reaching an agreement, Class Counsel and Defendant's Counsel engaged in settlement discussions in earnest beginning in May 2025, continuing through the Parties' mediation, and through February 2026 when a settlement in principle was reached.

19. The Settlement Agreement was reached with no risk of collusion or fraud, and is the product of good-faith, informed, extensive, and arm's-length negotiations by and between experienced attorneys who are familiar with class action litigation and with the legal and factual issues at the center of the Action. And the amount of service fees and attorney fees for which Class Counsel will seek court approval, was negotiated after the primary terms of the settlement were negotiated.

20. Class Counsel thoroughly evaluated damages and all relevant issues and obtained an excellent settlement for the Settlement Class.

21. Class Counsel have also confirmed that remedial measures were undertaken following the Data Security Incident, thus ensuring that the security of Settlement Class Members' data was enhanced.

22. Class Counsel and Class Representatives Tabbitha Berry, Hamza Yaser Algharably, Zachary Loafman, Anthony Georges, and Zach Travis believe the Settlement Agreement represents an excellent outcome for the Settlement Class. The Settlement Agreement provides for Settlement Class Members to receive

meaningful monetary and non-monetary relief.

23. The Settlement Agreement will provide substantial relief for the following Settlement Class: "All individuals whose Private Information was exposed to unauthorized third parties as a result of the Data Security Incident discovered by Defendant on or before June 11, 2024." S.A. ¶ 9kk (exclusions, *id.*).

24. Settlement Class Members may submit a claim for either (a) Compensation for Documented Losses, where Defendant will provide compensation for unreimbursed documented losses, up to a total of 150% of a Class Member's documented loss with reasonable proof connecting the loss to the Data Security Incident; each claimant's recovery under a Documented Loss claim is limited to a maximum of $1,000 or (b) a Cash Payment, in which Defendant will create a non-reversionary settlement fund of $75,000, from which claimants electing this option will receive a pro-rata payment.

25. Belle Tire has agreed to pay the costs of Administration Costs, including Notice, and any Service and Fee Awards.

26. Through a competitive bidding process, the Parties selected Simpluris, Inc., a company with decades of experience administering settlements, as the Settlement Administrator to submit to the Court for approval.

27. Although the reaction of absent Settlement Class Members is not yet known and the settlement Class has not had the chance to voice support, Proposed

Class Representatives Tabbitha Berry, Hamza Yaser Algharably, Zachary Loafman, Anthony Georges, and Zach Travis and Class Counsel strongly support the Agreement, which they believe is fair, reasonable, and adequate and in the Settlement Class's best interest.

28.     In Class Counsel's experience and informed judgment, the Settlement Agreement represents an excellent recovery and the benefits of the Agreement outweigh the risks and uncertainties of continued litigation, including the risks, time, and expenses associated with completing a trial and any appellate review.

29.     The traditional means for handling claims like those at issue here would tax the court system; require a massive expenditure of public and private resources; and, given the relatively small value of the claims compared to the cost of individual lawsuits by class members, would be impracticable. Thus, the Settlement Agreement is the best vehicle for Settlement Class Members to receive the relief in a prompt and efficient manner.

30.     Class Counsel will seek a Service Award of $1,250.00 each for Proposed Class Representatives Tabbitha Berry, Hamza Yaser Algharably, Zachary Loafman, Anthony Georges, and Zach Travis, in recognition of the time, effort, and expense incurred in pursuing claims benefiting the Settlement Class.

31.     Plaintiffs Tabbitha Berry, Hamza Yaser Algharably, Zachary Loafman, Anthony Georges, and Zach Travis greatly assisted Class Counsel with the

investigation into the Data Security Incident, sat through multiple plaintiff interviews, provided supporting documentation and other personal information to Class Counsel regarding the Data Security Incident, reviewed and approved their individual complaints and then later the Consolidated Complaint—providing valuable updated information about their experiences at that time, conferred with Class Counsel about the settlement negotiations, and provided meaningful input about what potential benefits were most important.

32. Class Counsel believe that Plaintiffs' interests are aligned with those of the Settlement Class, as Plaintiffs suffered the same injury, for which redress is sought, under the same legal theories. Plaintiffs understand that as named Plaintiffs, as part of their obligation as Class Representatives, they must, and have, worked and will continue to work to protect the Settlement Class and to not act just for their own personal benefit. Plaintiffs have been committed to protecting the interests of the Settlement Class through Class Counsel, and, again, believe the Settlement represents an excellent outcome for the Settlement Class.

33. Plaintiffs have no conflict, have participated actively, and are represented by attorneys experienced in class actions, including data security cases.

34. All of Plaintiffs' efforts on behalf of the Class have resulted in a favorable outcome for Settlement Class Members, and Class Counsel is aware of no antagonistic interests to the Settlement Class.

35.     In sum, Plaintiffs have demonstrated their adequacy by: (i) selecting well-qualified Class Counsel; (ii) producing information and documents to Class Counsel to permit investigation and development of the pleadings; (iii) being available as needed throughout the litigation; (iv) monitoring the litigation; and (v) actively participating in the settlement negotiations on behalf of the Settlement Class

36.     Class Counsel will also file a motion for an award of attorneys' fees and expenses, independent of any award to the Settlement Class, in which, subject to Court approval, Defendant shall pay $300,000.00. This fee Motion will be filed in advance of the Objection and Opt-Out Deadlines and Class Counsel will cause it to be uploaded immediately to the Settlement Website after filing.

37.     Class Counsel advanced litigation costs, including costs for the mediation, and devoted substantial resources to this Action—drafting initial complaints, drafting an amended complaint, seeking and then reviewing informal discovery, drafting a mediation statement, attending mediation, months of negotiating a settlement, and ultimately drafting the Settlement Agreement and Plaintiffs' Motion for Preliminary Approval.

38.     As noted, Class Counsel participated in rounds of negotiations that produced an Agreement that provides meaningful relief for the Settlement Class, despite substantial litigation risks.

39.     Class Counsel are particularly experienced in the litigation, certification, trial, and settlement of class action cases. Class Counsel regularly engage in data privacy matters, have extensive experience prosecuting data security and other complex cases, and possess the resources necessary to prosecute this case. They have also frequently been appointed lead class counsel in data security and other class actions, and, as noted, have dedicated substantial resources to this case, including negotiating this Settlement.

40.     Class Counsel is E. Powell Miller of The Miller Law Firm, P.C., Casondra R. Turner of Milberg, PLLC, and Scott Edward Cole of Cole & Van Note. Firm resumes demonstrating their experience and history of success in these types of cases are attached as **Exhibits 2**, **3**, and **4**, hereto.

41.     This experience proved beneficial to Plaintiffs and the Settlement Class during the Settlement negotiations. Through informal discovery, Class Counsel gained a complete understanding of the evidence related to the central issues in the Action, including the presence of arbitration agreements for certain impacted individuals.

42.     In sum, Class Counsel have adequately represented the Settlement Class by: (i) investigating Plaintiffs' claims; (ii) obtaining and analyzing Plaintiffs' detailed personal records; (iii) analyzing the scope of the Data Security Incident and Defendant's privacy policies, remedial steps, and financial condition; and (iv)

10

participating in months of settlement negotiations that produced an Agreement that provides meaningful relief for the Settlement Class, despite substantial litigation risks.

43.     Class Counsel have vigorously prosecuted this case and will continue to work diligently on behalf of the Settlement Class throughout the administration process.

44.     In addition to Plaintiffs Tabbitha Berry, Hamza Yaser Algharably, Zachary Loafman, Anthony Georges, and Zach Travis, Class Counsel recommends, for the Court's consideration, preliminary approval of the Settlement Agreement because it is well within the range of possible approval and represents a fair, reasonable, and adequate settlement and is in the best interests of the Settlement Class.

We declare under penalty of perjury under the laws of the State of Michigan and the United States of America that the foregoing is true and correct to the best of our knowledge.

Dated: April 13, 2026                          /s/ E. Powell Miller
                                               E. Powell Miller

Dated: April 13, 2026                          /s/ Casondra R. Turner
                                               Casondra R. Turner

Dated: April 13, 2026                          /s/ Scott Edward Cole
                                               Scott Edward Cole

11

# Exhibit 1

## SETTLEMENT AGREEMENT

This Settlement and Release Agreement ("Agreement" or "Settlement Agreement") is entered into by and between Belle Tire Distributors, Inc. ("Belle Tire" or "Defendant"), and Tabbitha Berry, Hamza Yaser Algharably, Zachary Loafman, Anthony Georges, and Zach Travis ("Plaintiffs"), both individually and on behalf of the Settlement Class, in the litigation *In Re: Belle Tire Distributors, Inc. Data Breach Litigation*, Case No. 2:24-cv-12966, currently pending in the United States District Court for the Eastern District of Michigan (the "Litigation"). Defendant and Plaintiffs are each referred to as a "Party" and are collectively referred to herein as "the Parties."

## I.      Recitals

1.      The Litigation arises out of a data security incident suffered by Belle Tire and identified on or about June 11, 2024, in which cybercriminals targeted and accessed Belle Tire's computer network and may have seen and taken certain sensitive information (the "Private Information") of Plaintiffs and Settlement Class Members (the "Data Security Incident").

2.      Defendant denies all claims asserted against it in the Litigation, denies all allegations of wrongdoing and liability, and denies all material allegations of the operative Consolidated Class Action Complaint (the "CAC") (ECF No. 10).

3.      Plaintiffs and Class Counsel believe that the legal claims asserted in the Litigation have merit. Class Counsel have investigated the facts relating to the claims and defenses alleged and the underlying events in the Litigation, have made a thorough study of the legal principles applicable to the claims and defenses asserted in the Litigation, and have conducted a thorough assessment of the strengths and weaknesses of the Parties' respective positions.

4.      The Parties desire to settle the Litigation and all claims arising out of or related to the allegations and/or subject matter of the CAC and the Litigation on the terms and conditions set forth herein for the purpose of avoiding the burden, expense, risk, and uncertainty of continuing

to litigate the Litigation.

5.      Counsel for the Parties engaged in extensive arm's-length negotiations concerning a possible settlement of the claims asserted in the Litigation, including a mediation with the Hon. Morton Denlow of JAMS on September 30, 2025. These hard-fought negotiations eventually resulted in a settlement, the terms of which are reflected in this Settlement Agreement.

6.      Plaintiffs and Class Counsel, on behalf of the Settlement Class, have concluded, based upon their investigation, and taking into account the contested issues involved, the expense and time necessary to prosecute the Litigation through trial, the risks and costs associated with further prosecution of the Litigation, the uncertainties of complex litigation, the desired outcome from continued litigation, and the substantial benefits to be received pursuant to this Settlement Agreement, that a settlement with Defendant on the terms set forth herein is fair and reasonable and in the best interest of Plaintiffs and the Settlement Class. Plaintiffs and Class Counsel believe that the Settlement confers substantial benefits upon the Settlement Class.

7.      The Parties agree and understand that neither this Settlement Agreement, nor the settlement it represents, shall be construed as an admission by Defendant of any wrongdoing whatsoever, including an admission of a violation of any statute or law or of liability on the claims or allegations in the Litigation or any other similar claims in other proceedings, or that any such claims would be suitable for class treatment. Defendant denies liability for the claims asserted and is entering into this Agreement to avoid further expense, inconvenience, and distraction of protracted litigation, and to obtain the nationwide releases, orders, and a judgment contemplated by this Agreement, thereby resolving with finality all claims that Plaintiffs and the Settlement Class have or could have asserted against the Released Parties.

8.      The Parties, by and through their respective duly authorized counsel of record, and

intending to be legally bound hereby, agree that the Litigation, and all matters and claims in the CAC, and all matters and claims arising out of or related to the allegations and/or subject matter of the CAC and Litigation, shall be settled, compromised, and dismissed, on the merits and with prejudice, upon the following terms and conditions.

## II.     Definitions

9.      As used herein and in the related documents attached hereto as exhibits, the following terms have the meaning specified below:

a.      "Attorneys' Fees, Costs, and Service Awards" means the amount of the attorneys' fees and Litigation Costs of Class Counsel and the Service Awards for Class Representatives, which will be submitted for Court approval.

b.      "Claims Deadline" means the deadline for filing claims set at a date certain sixty (60) Days from the Notice Date, as defined in Paragraph 44.

c.      "Claim Form" means the form that Settlement Class Members must complete and submit on or before the Claims Deadline to be eligible for the benefits described herein, and substantially in the form of **Exhibit A** to this Settlement Agreement. The Claim Form shall require a sworn affirmation under the laws of the United States but shall not require a notarization or any other form of verification.

d.      "Claims Period" means the period for filing claims up until a date certain sixty (60) Days from the Notice Date.

e.      "Claimants" shall have the meaning given in Paragraph 34.

f.      "Class Counsel" shall mean The Miller Law Firm P.C., Milberg, PLLC, and Cole & Van Note.

g.      "Class Representatives" means the Plaintiffs, Tabbitha Berry, Hamza Yaser Algharably, Zachary Loafman, Anthony Georges, and Zach Travis.

h.      "Court" means the United States District Court for the Eastern District of Michigan.

i.      "Data Security Incident" means the unauthorized access by a third party of Defendant's computer system, discovered on or about June 11, 2024, which led to the alleged disclosure of the Private Information of Plaintiffs and Settlement Class Members.

j.      "Day(s)" means calendar days, but does not include the day of the act, event, or default from which the designated period of time begins to run. Further and notwithstanding the above, when computing any period of time prescribed or allowed by this Settlement Agreement, "Days" includes the last day of the period unless it is a Saturday, a Sunday, or a federal legal holiday, in which event the period runs until the end of the next day that is not a Saturday, Sunday, or federal legal holiday.

k.      "Defendant's Counsel" means Honigman LLP.

l.      "Documented Losses" are defined in Paragraph 14.

m.      "Effective Date" means the date defined in Paragraph 89.

n.      "Final" with respect to a judgment or order means that all of the following have occurred: (i) the time expires for noticing any appeal; (ii) if there is an appeal or appeals, completion, in a manner that finally affirms and leaves in place the judgment or order without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration, rehearing, or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (iii) final dismissal of any appeal or the final dismissal of any proceeding on certiorari.

o.      "Final Approval Hearing" means the hearing to determine whether the

4

Settlement should be given final approval and whether the application of Class Counsel for Attorneys' Fees, Costs, and Service Awards for Plaintiffs should be approved.

p.      "Final Approval Order" means the order of the Court finally approving this Settlement, substantially in the form of **Exhibit E** to this Settlement Agreement.

q.      "Final Judgment" means the dismissal with prejudice in the Litigation, entered in connection with the Settlement and Final Approval Order.

r.      "Litigation" means the consolidated lawsuit entitled *In Re: Belle Tire Distributors, Inc. Data Breach Litigation*, Case No. 2:24-cv-12966, currently pending in the United States District Court for the Eastern District of Michigan.

s.      "Litigation Costs" means costs and expenses incurred by Class Counsel in connection with commencing, prosecuting, mediating, settling the Litigation, and obtaining an order of final judgment.

t.      "Long-Form Notice" means the written notice substantially in the form of **Exhibit B** to this Settlement Agreement.

u.      "Notice and Claims Administration Costs" means all approved reasonable costs incurred or charged by the Settlement Administrator in connection with providing notice to members of the Settlement Class and administering the Settlement. This does not include any separate costs incurred directly by Defendant or any of Defendant's attorneys, agents or representatives in this Litigation.

v.      "Notice Date" means the date defined in Paragraph 44.

w.      "Notice Program" means the notice program described in Section VII.

x.      "Objection Deadline" shall have the meaning set forth in Paragraph 54 or as otherwise ordered by the Court.

y.      "Parties" means Plaintiffs collectively and Defendant, and a "Party" means

5

either the Plaintiffs or the Defendant.

z.      "Plaintiffs' Released Claims" means all claims and other matters released in and by Section XIV of this Settlement Agreement.

aa.      "Postcard Notice," "Short-Form Notice," and "Email Notice" means the written notice to be sent to Settlement Class Members pursuant to the Preliminary Approval Order substantially in the form as the Short-Form Notice attached as **Exhibit C** to this Settlement Agreement.

bb.      "Preliminary Approval Date" means the date the Preliminary Approval Order has been executed and entered by the Court.

cc.      "Preliminary Approval Order" means the order certifying the proposed Class for settlement purposes, preliminarily approving this Settlement Agreement, approving the Notice Program, and setting a date for the Final Approval Hearing, entered in a format the same as or substantially similar to that of the Proposed Preliminary Approval Order attached hereto as **Exhibit D.**

dd.      "Related Entities" means Belle Tire's past or present parents, subsidiaries, divisions, and related or affiliated entities of any nature whatsoever, whether direct or indirect, as well as each of Belle Tire's and these entities' respective predecessors, successors, members, directors, officers, employees, principals, agents, attorneys, providers, vendors, customers, insurers, and reinsurers, and includes, without limitation, any person related to any such entity who is, was, or could have been named as a defendant in this Litigation.

ee.      "Released Claims" means all claims and other matters released in and by Section XIV of this Settlement Agreement.

ff.      "Releasing Parties" shall be defined as Plaintiffs, the Settlement Class

Members and all of their respective past, present or future spouses, immediate family members, heirs, executors, representatives, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, and corporations.

gg. "Released Persons" means Defendant and the Related Entities, as well as their respective past, present or future joint ventures, parent companies, subsidiaries, licensors, licensees, associates, affiliates, employers, and its, or their respective, administrators, employees, independent contractors, agents, consultants, insurers, reinsurers, directors, managing directors, officers, principals, members, managers, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, and corporations, whether foreign or domestic.

hh. "Settlement" means the settlement reflected by this Settlement Agreement.

ii. "Settlement Administrator" means the class action settlement administrator retained to carry out the notice plan and administer the claims and settlement fund distribution process. After reviewing bids, the Parties, subject to Court approval, have agreed to use Simpluris, Inc. as the Settlement Administrator in this matter.

jj. "Settlement Agreement" means this Settlement Agreement, including releases and all exhibits hereto.

kk. "Settlement Class" means "all individuals whose Private Information was

7

exposed to unauthorized third parties as a result of the Data Security Incident discovered by Defendant on or before June 11, 2024." Excluded from the Class are the judge(s) presiding over this matter and the clerks of said judge(s).

ll.     "Settlement Class Member[s]" means all persons who are members of the Settlement Class, except those who timely opt out of the Settlement Class in accordance with Section IX. Without counting those who opt out, Defendant estimates that there are approximately 29,000 Settlement Class Members.

mm.     "Settlement Fund" or "Alternative Pro Rata Settlement Fund" means the non-reversionary sum of seventy-five thousand dollars and zero cents ($75,000.00), to be paid by, or on behalf of, Defendant as specified in this Agreement, including any interest accrued thereon after payment, from which only the alternative pro rata Cash Payments to Settlement Class Members who submit valid and timely claims for the alternative pro rata Cash Payment shall be paid; compensation for Documented Losses will not be paid from the Alternative Pro Rata Settlement Fund.

nn.     "Settlement Website" means a dedicated website created and maintained by the Settlement Administrator, which will contain relevant documents and information about the Settlement, including this Settlement Agreement, the Postcard Notice, the Long-Form Notice, and the Claim Form, among other documents and information as agreed upon by the Parties and approved by the Court as required.

oo.     "Valid Claims" means Settlement Claims in an amount approved by the Settlement Administrator or found to be valid through the claims processing and/or dispute resolution process.

## III.     CERTIFICATION OF THE SETTLEMENT CLASS

10.     For settlement purposes only, the Parties will request that the Court certify the

8

Settlement Class.

11.     If this Settlement Agreement is terminated or disapproved, or if the Effective Date should not occur for any reason, then the Parties' consent to and request for certification of the Settlement Class will be withdrawn and deemed to be of no force or effect for any purpose in this or any other proceeding.

12.     Neither this Settlement Agreement, nor any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of this Settlement Agreement is intended to, or shall be construed as, or deemed to be evidence of an admission or concession by the Settling Defendants that a class should be or should have been certified for any purposes other than this Settlement and none of them shall be admissible in evidence for any such purpose in any proceeding.

## IV.     BENEFITS TO SETTLEMENT CLASS MEMBERS

13.     **Compensation to Settlement Class Members.** Settlement Class Members must submit a valid Claim Form within the Claims Period in order to receive compensation from the Settlement. Claims will be subject to review for completeness and plausibility by the Settlement Administrator. For claims deemed to be invalid, the Settlement Administrator will provide claimants an opportunity to cure in the manner set forth in Paragraph 34. Settlement Class Members are eligible to receive compensation from the Settlement by electing one (and only one) of the Settlement options: (a) reimbursement for Documented Losses as set forth in Section IV(13), or (b) participation in an alternative pro rata cash payment.

14.     **Documented Losses.** All Settlement Class Members who submit a Valid Claim using the Claim Form are eligible for reimbursement for 150% of that Class Member's documented out-of-pocket expenses incurred because of the Data Security Incident, with reasonable proof connecting the expense to the Data Security Incident ("Documented Losses").

9

The most a Settlement Class Member can be awarded for Documented Losses is $1,000. Examples of Documented Losses include, but are not limited to: (i) unreimbursed bank fees; (ii) fees for credit reports; (iii) identity theft protection services and plans purchased between June 11, 2024 and the Claims Deadline; (iv) cell phone charges (only if charged by the minute); (v) postage; and (vi) gasoline for local travel. To receive reimbursement for any Documented Losses, Settlement Class Members must submit a Valid Claim, including necessary supporting documentation and proof connecting the claimed expense to the Data Security Incident, to the Claims Administrator.

15.     **Alternative Pro Rata Cash Payment.** Settlement Class Members may file a claim for an alternative Cash Payment that is allocated by proration as described in Paragraph 19.

## V.     ALTERNATIVE PRO RATA SETTLEMENT FUND

16.     **Alternative Pro Rata Settlement Fund:** Defendant agrees to make a payment of seventy-five thousand dollars and zero cents ($75,000.00) and deposit that payment into the Alternative Pro Rata Settlement Fund, along with the Notice and Claims Administration Costs, thirty (30) Days after this Court enters the Preliminary Approval Order. The Alternative Pro Rata Settlement Fund shall be used to provide alternative pro rata cash payments to Settlement Class Members who submit valid claims for the alternative Cash Payment. The timing set forth in this provision is contingent upon the receipt of an invoice, W-9, payment instructions from the Settlement Administrator for the Alternative Pro Rata Settlement Fund, and contact information of an individual to voice-verify the instructions, by the date that the Preliminary Approval Order is issued.

17.     **Custody of the Alternative Pro Rata Settlement Fund:** The Alternative Pro Rata Settlement Fund shall be deposited in an appropriate trust account established by the Settlement Administrator but shall remain subject to the jurisdiction of the Court until such time as the entirety of the Alternative Pro Rata Settlement Fund is distributed pursuant to this Agreement or returned

to Defendant in the event this Agreement is voided, terminated, or cancelled.

a.  In the event this Agreement is voided, terminated, or cancelled due to lack of approval from the Court or any other reason: (i) the Class Representatives and Class Counsel shall have no obligation to repay any of the Notice and Claims Administration Costs that have been paid or incurred in accordance with the terms and conditions of this Agreement; (ii) any amounts remaining in the Alternative Pro Rata Settlement Fund after payments incurred in accordance with the terms and conditions of this Agreement, including all interest earned on the Alternative Pro Rata Settlement Fund net of any taxes, shall be returned to Defendant; and (iii) no other person or entity shall have any further claim whatsoever to such amounts.

18.  **Non-Reversionary:** This Settlement is not a reversionary settlement. As of the Effective Date, all rights of Defendant in or to the Alternative Pro Rata Settlement Fund shall be extinguished, except in the event this Settlement Agreement is voided, cancelled, or terminated, as described in Section XIII of this Agreement. In the event the Effective Date occurs, no portion of the Alternative Pro Rata Settlement Fund shall be returned to Defendant.

19.  **Use of the Alternative Pro Rata Settlement Fund:** As further described in this Agreement, the Alternative Pro Rata Settlement Fund shall be used by the Settlement Administrator to pay for the alternative pro rata Cash Payments to Settlement Class Members and any taxes owed by the Alternative Pro Rata Settlement Fund. Separate and apart from the funds deposited in the Alternative Pro Rata Settlement Fund, Defendant agrees to pay for: (i) payments to Class Members who submit Valid Claims for Documented Losses in an amount determined by the Settlement Administrator, but not exceeding $1,000 per Class Member, (ii) reasonable Notice and Claims Administration Costs incurred pursuant to this Settlement Agreement as approved by the Parties and approved by the Court, (iii) any Service Awards approved by the Court, and (iv)

11

any attorneys' fees and costs award as approved by the Court, all pursuant to the terms and conditions of this Agreement. Defendant assumes no obligation to pay any cost not expressly provided in this Paragraph.

20.      **Financial Account:** The Alternative Pro Rata Settlement Fund shall be an account established and administered by the Settlement Administrator, at a financial institution recommended by the Settlement Administrator and approved by Class Counsel and Defendant, and shall be maintained as a qualified settlement fund pursuant to Treasury Regulation § 1.468 B-1, *et seq.*

21.      **Payment/Withdrawal Authorization:** No amounts may be withdrawn from the Alternative Pro Rata Settlement Fund unless (i) expressly authorized by the Settlement Agreement, or (ii) as may be approved by the Court. The Settlement Administrator shall provide Class Counsel and Defendant with notice of any withdrawal or other payment the Settlement Administrator proposes to make from the Alternative Pro Rata Settlement Fund before the Effective Date at least seven (7) business days prior to making such withdrawal or payment.

22.      **Payments to Class Members:** The Settlement Administrator, subject to such supervision and direction of the Court and Class Counsel as may be necessary or as circumstances may require, shall administer and oversee distribution of the Alternative Pro Rata Settlement Fund to Claimants pursuant to this Agreement.

23.      **Treasury Regulations and Fund Investment:** The Parties agree that the Alternative Pro Rata Settlement Fund is intended to be maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468 B-1, and that the Settlement Administrator, within the meaning of Treasury Regulation§ 1.468 B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Alternative Pro Rata Settlement Fund

12

and paying from the Alternative Pro Rata Settlement Fund any taxes owed by the Alternative Pro Rata Settlement Fund. The Parties agree that the Alternative Pro Rata Settlement Fund shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election required to treat the Alternative Pro Rata Settlement Fund as a qualified settlement fund from the earliest date possible. Any and all funds held in the Alternative Pro Rata Settlement Fund shall be held in an interest-bearing account insured by the Federal Deposit Insurance Corporation at a financial institution determined by the Settlement Administrator and approved by the Parties. Funds may be placed in a non-interest bearing account as may be reasonably necessary during the check-clearing process. The Settlement Administrator shall provide an accounting of any and all funds in the Alternative Pro Rata Settlement Fund, including any interest accrued thereon and payments made pursuant to this Agreement, upon request of any of the Parties.

24.      **Taxes:** Any and all taxes owed by the Alternative Pro Rata Settlement Fund shall be paid out of the Alternative Pro Rata Settlement Fund, and shall be timely paid by the Settlement Administrator without prior order of the Court. Further, the Alternative Pro Rata Settlement Fund shall indemnify and hold harmless the Parties and their counsel for taxes (including, without limitation, taxes payable by reason of any such indemnification payments). The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Class Representative or any Settlement Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Alternative Pro Rata Settlement Fund. Each Class Representative and Settlement Class Member shall be solely responsible for the federal, state, and local tax consequences to him or her regarding the receipt of funds from the Alternative Pro Rata Settlement Fund pursuant to this Agreement.

25.      **Limitation of Liability**

13

a. Defendant and its counsel shall not have any responsibility for or liability whatsoever with respect to (i) any act, omission, or determination of Class Counsel, the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Alternative Pro Rata Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Alternative Pro Rata Settlement Fund; (iv) the determination, administration, calculation, or payment of any claims asserted against the Alternative Pro Rata Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Alternative Pro Rata Settlement Fund; or (vi) the payment or withholding of any taxes, expenses, and/or costs incurred in connection with the taxation of the Alternative Pro Rata Settlement Fund or the filing of any returns. Defendant also shall have no obligation to communicate with Settlement Class Members and others regarding amounts paid under the Settlement.

b. The Class Representative and Class Counsel shall not have any liability whatsoever with respect to (i) any act, omission, or determination of the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Alternative Pro Rata Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Alternative Pro Rata Settlement Fund; (iv) the determination, administration, calculation, or payment of any claims asserted against the Alternative Pro Rata Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Alternative Pro Rata Settlement Fund; or (vi) the payment or withholding of any taxes, expenses, and/or costs incurred in connection with the taxation of the Alternative Pro Rata Settlement Fund or the filing of any returns.

## VI. SETTLEMENT ADMINISTRATION

26. All agreed-upon and reasonable Notice and Claims Administration Costs will be

14

paid separate and apart from the Alternative Pro Rata Settlement Fund and shall be deposited with the Settlement Administrator within fifteen (15) Days after this Court enters the Preliminary Approval Order.

27.     The Parties solicited competitive bids for settlement administration, including Notice and Claims Administration Costs, and will rely upon Email Notice, where available, and Postcard Notice, in order to contain the costs of settlement administration while still providing effective notice to the Settlement Class Members.

28.     The Settlement Administrator will provide written notice of the settlement terms to all Settlement Class Members for whom Defendant has provided a valid mailing address or email address. The Settlement Administrator shall perform skip-tracing for any returned mail and shall re-mail notice to any Settlement Class Members whose addresses are uncovered by skip-tracing. Settlement Class Members shall have thirty (30) Days from the Notice Date to object to the Settlement Agreement.

29.     The Settlement Administrator will cause the Notice Program to be effectuated in accordance with the terms of the Settlement Agreement and any orders of the Court. The Settlement Administrator may request the assistance of the Parties to facilitate providing notice and to accomplish such other purposes as may be approved by both Class Counsel and Defendant's Counsel. The Parties shall reasonably cooperate with such requests.

30.     The Settlement Administrator will administer the claims process in accordance with the terms of the Settlement Agreement and any additional processes agreed to by both Class Counsel and Defendant's Counsel, subject to the Court's supervision and direction as circumstances may require.

31.     To make a claim, a Settlement Class Member must complete and submit a valid,

15

timely, and sworn Claim Form. A Claim Form shall be submitted online at the Settlement Website or by U.S. mail and must be postmarked no later than the Claims Deadline.

32. The Settlement Administrator will review and evaluate each Claim Form, including any required documentation submitted, for validity, timeliness, and completeness.

33. For any Claim Form seeking request for Compensation for Documented Losses, the Settlement Administrator will review the supporting documentation and explanation connecting the claimed loss to the Data Security Incident. If, in the Settlement Administrator's determination, the Claim Form and supporting materials provides reasonable proof that a claimed loss is connected with the Data Security Incident, the Settlement Administrator shall inform the Parties and provide the Parties with the Claim Form and supporting materials. Any Party may object to the sufficiency of the Claim Form and/or supporting materials, and in the case of an objection, the Settlement Administrator will, in good faith, review the preliminary determination for compliance with Section IV (Paragraph 14) above. Any remaining objections may be brought to the Court for binding determination.

34. If, in the determination of the Settlement Administrator, the Settlement Class Member submits a timely but incomplete or inadequately supported Claim Form, the Settlement Administrator shall give the Settlement Class Member notice of the deficiencies, and the Settlement Class Member shall have twenty-one (21) Days from the date of the written notice to cure the deficiencies. The Settlement Administrator will provide notice of deficiencies concurrently to Defendant's Counsel and Class Counsel. If the defect is not cured within the 21-Day period, then the Claim will be deemed invalid. All Settlement Class Members who submit a valid and timely Claim Form, including a Claim Form deemed defective but timely cured, shall be considered "Claimants."

16

35.     The Settlement Administrator will maintain records of all Claim Forms submitted until three hundred and sixty (360) Days after entry of the Final Judgment. Claim Forms and supporting documentation may be provided to the Court upon request and to Defendant, Class Counsel, and Defendant's Counsel to the extent necessary to resolve claims determination issues pursuant to this Settlement Agreement. Class Counsel or the Settlement Administrator will provide other reports or information that the Court may request or that the Court or Defendant's Counsel may reasonably require.

36.     Subject to the terms and conditions of this Settlement Agreement, forty-five (45) Days after the Effective Date, the Settlement Administrator shall mail or otherwise provide a payment via check ("Claim Check") or digital payment selected in consultation with the Settlement Administrator (collectively, "Claim Payment") to each Claimant for: their request for Compensation for Documented Losses; or for their pro rata share of the Alternative Pro Rata Settlement Fund in accordance with the following distribution procedures: the amount of each Cash Payment shall be calculated by dividing the Alternative Pro Rata Settlement Fund by the number of valid claims for Cash Payment.

37.     Each Claim Check shall be mailed to the address provided by the Claimant on his or her Claim Form. All Claim Checks issued under this section shall be void if not negotiated within ninety (90) Days of their date of issue and shall contain a legend to that effect. Claim Checks issued pursuant to this section that are not negotiated within ninety (90) Days of their date of issue shall not be reissued.

38.     To the extent any monies remain in the Alternative Pro Rata Settlement Fund more than one hundred twenty (120) Days after the distribution of Claim Payments to the Claimants, a subsequent payment will be evenly made to all Claimants who cashed or deposited their initial

17

Claim Payments they received, provided that the average payment amount is equal to or greater than Seven Dollars and Zero Cents ($7.00). The distribution of this remaining Alternative Pro Rata Settlement Fund shall continue until the average payment amount in a distribution is less than Seven Dollars and No Cents ($7.00), whereupon the amount remaining in the Alternative Pro Rata Settlement Fund, if any, shall be distributed by mutual agreement of the Parties and the Court.

39.     For any Claim Check returned to the Settlement Administrator as undeliverable (including, but not limited to, when the intended recipient is no longer located at the address), the Settlement Administrator shall make reasonable efforts to find a valid address and resend the Claim Check within thirty (30) Days after the check is returned to the Settlement Administrator as undeliverable. The Settlement Administrator shall only make one attempt to resend a Claim Check.

40.     No portion of the Alternative Pro Rata Settlement Fund shall revert or be repaid to Defendant after the Effective Date. Any residual funds remaining in the Alternative Pro Rata Settlement Fund, after all payments and distributions are made pursuant to the terms and conditions of this Agreement shall be distributed according to the provisions outlined in Paragraph 19.

## VII.    NOTICE TO SETTLEMENT CLASS MEMBERS

41.     The Parties agree the following Notice Program provides reasonable notice to the Settlement Class.

42.     Direct Notice shall be provided to Settlement Class Members via Email Notice for Settlement Class Members for whom the Settlement Administrator has a valid email address and otherwise by U.S. Mail for Settlement Class Members for whom the Settlement Administrator has a valid address.

43.     Within ten (10) Days of the entry of the Preliminary Approval Order, Defendant shall provide the Settlement Administrator with the names, email addresses, and last addresses known to Defendant for the individuals who may be Settlement Class Members (the "**Class List**").

18

The Settlement Administrator shall, by using the National Change of Address database maintained by the U.S. Postal Service ("**Postal Service**"), obtain updates, if any, to the mailing addresses.

    a.  Belle Tire shall provide the Class List to the Settlement Administrator only for the purposes of settlement administration. The Settlement Administrator shall not provide the Class List to Class Counsel.

    b.  To the extent Class Counsel learns the identity of and/or address or email address of any Settlement Class Member(s) in connection with the settlement administration process, including but not limited to by Class Counsel being contacted by any Settlement Class Member(s) based on such Settlement Class Member(s) receiving Class Counsel's contact information on the Class Notice and/or Claim Form, Class Counsel shall not use that information for any purpose other than assisting Settlement Class Member(s) with the settlement administration process. Class Counsel shall not use information obtained through the settlement administration process regarding the identity of and/or last-known address of any Class Member(s) to solicit or notify any such Settlement Class Member(s) about any other currently pending or future actions that such Settlement Class Member(s) may be able to join and/or bring. Nothing in this Settlement Agreement shall restrict Class Counsel's ability and right to represent any Class Member(s) in this Litigation or in any other currently-pending or future action in the event that such Settlement Class Member(s) independently approach(es) Class Counsel or is approached by Class Counsel without using information obtained in connection with the settlement administration process in this Litigation, seeking representation in connection with their potential rights to assert claims against any entity.

44. Within thirty (30) Days following entry of the Preliminary Approval Order ("Notice Date"), the Settlement Administrator shall provide Email Notice and/or Postcard Notice to all Settlement Class Members. The Settlement Administrator shall mail a Claim Form to Settlement Class Members upon written or telephonic request.

45. For any email addresses reported as invalid, the Settlement Administrator shall provide Postcard Notice. If any Short-Form Notice is returned by the Postal Service as undeliverable, the Settlement Administrator shall re-mail the Postcard Notice to the forwarding address, if any, provided by the Postal Service on the face of the returned mail. For Notices returned with no forwarding address, the Settlement Administrator shall perform skip-tracing for any returned mail and shall re-mail notice to any Settlement Class Members whose addresses are

uncovered by skip-tracing.

46.     The mailed notice will consist of the Postcard Notice substantially in the form of **Exhibit C**. The Settlement Administrator shall have discretion to format this Postcard Notice in a reasonable manner to minimize mailing and administrative costs. Before the mailing of the Postcard Notice is commenced, Class Counsel and Defendant's Counsel shall first be provided with a proof copy (including what the items will look like in their final form) and shall have the right to inspect the same for compliance with the Settlement Agreement and the Court's orders.

47.     No later than thirty (30) Days following entry of the Preliminary Approval Order, and prior to the mailing of the Postcard Notice to all Settlement Class Members, the Settlement Administrator will create a dedicated Settlement Website. The Settlement Administrator shall cause the CAC, Postcard Notice, Long-Form Notice, Claim Form, this Settlement Agreement, the Preliminary Approval Order, and other relevant settlement and court documents to be available on the Settlement Website. Any other content proposed to be included or displayed on the Settlement Website shall be approved in advance by counsel for the Parties, which approval shall not be unreasonably withheld, by Class Counsel and Defendant's Counsel. The website address and the fact that a more detailed Long-Form Notice and a Claim Form are available through the website shall be included in the Postcard Notice.

48.     Claimants shall be able to submit their claims via the website.

49.     The Settlement Website shall be maintained from the Notice Date until sixty (60) Days after the Claims Deadline has passed.

50.     Claim Forms shall be returned or submitted to the Settlement Administrator online or via U.S. mail, postmarked by the Claims Deadline set by the Court, or be forever barred unless such claim is otherwise approved by the Court at the Final Approval Hearing, for good cause

20

shown as demonstrated by the applicable Settlement Class Member.

51.    Prior to the Final Approval Hearing, the Settlement Administrator shall provide to Class Counsel to file with the Court an appropriate affidavit or declaration from the Settlement Administrator concerning compliance with the Court-approved Notice Program.

## VIII.    OBJECTIONS TO THE SETTLEMENT

52.    Any Settlement Class Member who wishes to object to the Settlement Agreement must file with the Court and serve a written objection(s) to the Settlement ("**Objection(s)**") on Class Counsel and Defendant's Counsel, at the addresses set forth in the Long-Form Notice.

53.    Each Objection must substantially comply with the following; (i) set forth the Settlement Class Member's full name, current address, telephone number, and email address; (ii) contain the Settlement Class Member's original signature; (iii) contain proof that the Settlement Class Member is a member of the Settlement Class; (iv) state that the Settlement Class Member objects to the Settlement, in whole or in part; (v) set forth a statement of the legal and factual basis for the Objection; (vi) provide copies of any documents that the Settlement Class Member wishes to submit in support of his/her position; (vii) identify all counsel representing the Settlement Class Member, if any; (viii) contain the signature of the Settlement Class Member's duly authorized attorney or other duly authorized representative, along with documentation setting forth such representation; and (ix) contain a list, including case name, court, and docket number, of all other cases in which the objector and/or the objector's counsel has filed an objection to any proposed class action settlement in the past three (3) years.

54.    Objections must be filed with the Court and served on Class Counsel and Defendant's Counsel no later than thirty (30) Days after the Notice Date (the "Objection Deadline"). The Objection Deadline shall be included in the Short-Form and Long-Form Notices.

55.    Class Counsel and Defendant's Counsel may, but need not, respond to the

21

Objections, if any, by means of a memorandum of law served prior to the Final Approval Hearing.

56. An objecting Settlement Class Member has the right, but is not required unless otherwise ordered by the Court, to attend the Final Approval Hearing. If an objecting Settlement Class Member intends to appear at the Final Approval Hearing, either with or without counsel, he or she must also file a notice of appearance with the Court (as well as serve the notice on Class Counsel and Defendant's Counsel) by the Objection Deadline.

57. If the objecting Settlement Class Member intends to appear at the Final Approval Hearing through counsel, he or she must also identify the attorney(s) representing the objecting Settlement Class Member who will appear at the Final Approval Hearing and include the attorney(s) name, address, phone number, e-mail address, state bar(s) to which counsel is admitted, as well as associated state bar numbers.

58. Any Settlement Class Member who does not submit a timely Objection in complete accordance with this Settlement Agreement and the Long-Form Notice, or as otherwise ordered by the Court, shall not be treated as having filed a valid Objection to the Settlement and shall forever be barred from raising any objection to the Settlement.

## IX. OPT OUT PROCEDURES

59. Each individual wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Claims Administrator. The written notice must clearly manifest an individual's intent to opt-out of the Settlement Class. To be effective, written notice must be postmarked no later than thirty (30) Days after the Notice Date.

60. All individuals who submit valid and timely notices of their intent to opt-out of the Settlement Class, as set forth in Paragraph 59 above, referred to herein as "**Opt-Outs**" and excluded from the definition of "Settlement Class Member[s]" shall not receive any benefits of

22

and/or be bound by the terms of this Settlement Agreement. All Settlement Class Members shall be bound by the terms of this Settlement Agreement and Judgment entered thereon.

## IX.   ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

61.   Class Counsel shall request the Court to approve an award of attorneys' fees and costs not to exceed $300,000.00. Any attorneys' fees and costs award approved by the Court shall be paid by Belle Tire no later than fourteen (14) Days after the Effective Date. The timing set forth in this provision is contingent upon the receipt of a W-9, payment instructions from Class Counsel, and contact information of an individual to voice-verify the instructions. For the avoidance of doubt, the Court-approved amount of any attorneys' fees and costs award shall be paid by Defendant separate and apart from the Alternative Pro Rata Settlement Fund and other benefits to the Settlement Class. The amount of attorneys' fees and costs was negotiated after the primary terms of the Settlement were negotiated.

62.   Class Counsel shall request the Court to approve a service award of one thousand dollars and zero cents ($1,250.00) for each named Plaintiff ($6,250 in total), which award is intended to recognize Plaintiffs for their efforts in the Litigation and commitment on behalf of the Settlement Class (the "**Service Awards**"). For the avoidance of doubt, the Court-approved amount for any Service Award shall be paid by Defendant separate and apart from the Alternative Pro Rata Settlement Fund and any other benefits to the Settlement Class. If approved by the Court, the Service Awards will be paid by Belle Tire to Class Counsel no later than thirty (30) Days after the Effective Date. The timing set forth in this provision is contingent upon the receipt of a W-9, payment instructions from Class Counsel, and contact information of an individual to voice-verify the instructions. The Parties did not discuss or agree upon payment of the Service Awards until after they agreed on all materials terms of relief to the Settlement Class.

63.   Class Counsel will file an application with the Court for the requested Attorneys'

Fees, Costs, and Service Awards no later than fourteen (14) Days prior to the Objection Deadline.

64. The Parties agree that the Court's approval or denial of any request for the Attorneys' Fees, Costs, and Service Awards are not conditions to this Settlement Agreement and are to be considered by the Court separately from final approval, reasonableness, and adequacy of the settlement. Any reduction to the Attorneys' Fees, Costs, and Service Awards shall not operate to terminate or cancel this Settlement Agreement.

## X. NOTICES

65. All notices to the Parties required by the Settlement Agreement shall be made in writing and communicated by mail to the following addresses below.

All notices to Class Counsel or Plaintiffs shall be sent to:

E. Powell Miller
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, MI 48307

Casondra Turner
**MILBERG, PLLC**
260 Peachtree Street NW, Suite 2200
Atlanta, GA 30303

Scott Edward Cole
**Cole & Van Note**
555 12th Street, Suite 2100
Oakland, CA 94607

All notices to Defendant's Counsel or Defendant shall be sent to:

Andrew Clark
Jalen Farmer
**HONIGMAN LLP**
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226

66. Other than attorney-client communications or communications otherwise protected from disclosure pursuant to law or rule, the Parties shall promptly provide to each other copies of

24

comments, Objections, or other documents or filings received from a Settlement Class Member as a result of the Notice Program.

## XI.    SETTLEMENT APPROVAL PROCESS

67.    After execution of this Settlement Agreement, the Parties shall promptly move the Court to enter the Preliminary Approval Order, which:

   a.    Preliminarily approves this Settlement Agreement;

   b.    Provisionally certifies the Settlement Class;

   c.    Finds the proposed settlement is sufficiently fair, reasonable, adequate, and in the best interests of the Settlement Class;

   d.    Finds the Notice Program constitutes valid, due, and sufficient notice to the Settlement Class Members, and constitutes the best notice practicable under the circumstances, complying fully with the requirements of the laws of Michigan, the Constitution of the United States, and any other applicable law and that no further notice to the Class is required beyond that provided through the Notice Program;

   e.    Appoints Simpluris, Inc. as the Settlement Administrator;

   f.    Directs the Settlement Administrator to provide notice to Settlement Class Members in accordance with the Notice Program provided for in this Settlement Agreement;

   g.    Approves the Claim Form and directs the Settlement Administrator to administer the Settlement in accordance with the provisions of this Settlement Agreement;

   h.    Approves the Objection procedures as outlined in this Settlement Agreement;

   i.    Schedules a Final Approval Hearing to consider the final approval, reasonableness, and adequacy of the proposed settlement and whether it should be finally approved by the Court; and,

25

j. Contains any additional provisions agreeable to the Parties that might be necessary or advisable to implement the terms of this Settlement Agreement.

## XII. FINAL APPROVAL HEARING

68. The Parties will recommend that the Final Approval Hearing shall be scheduled no earlier than seventy-five (75) Days after the Notice Date.

69. The Parties may file a response to any objections and a Motion for Final Approval no later than fourteen (14) Days after the Objection Deadline.

70. Any Settlement Class Member who wishes to appear at the Final Approval Hearing, whether pro se or through counsel, must, by the Objection Deadline, either mail or hand-deliver to the Court or file a notice of appearance in the Litigation, take all other actions or make any additional submissions as may be required in the Long-Form Notice, this Settlement Agreement, or as otherwise ordered by the Court, and mail that notice and any other such pleadings to Class Counsel and Defendant's Counsel as provided in the Long-Form Notice.

71. The Parties shall ask the Court to enter a Final Approval Order and Judgment which includes the following provisions:

a. A finding that the Notice Program fully and accurately informed all Settlement Class Members entitled to notice of the material elements of the settlement, constitutes the best notice practicable under the circumstances, constitutes valid, due, and sufficient notice, and complies fully with the laws of Michigan, the United States Constitution, and any other applicable law;

b. A finding that after proper notice to the Settlement Class, and after sufficient opportunity to object, no timely objections to this Settlement Agreement have been made, or a finding that all timely objections have been considered and denied;

c. Approval of the Settlement, as set forth in the Settlement Agreement, as

fair, reasonable, adequate, and in the best interests of the Settlement Class, in all respects, finding that the settlement is in good faith, and ordering the Parties to perform the Settlement in accordance with the terms of this Settlement Agreement;

d.    A finding that neither the Final Judgment, the Settlement, nor the Settlement Agreement shall constitute an admission of liability by any of the Parties, or any liability or wrongdoing whatsoever by any Party;

e.    Subject to the reservation of jurisdiction for matters discussed in subparagraph (h) below, a dismissal with prejudice of the Litigation;

f.    A finding that Plaintiffs shall, as of the entry of the Final Judgment, conclusively be deemed to have fully, finally, and forever completely released, relinquished, and discharged the Released Persons from the Plaintiffs' Released Claims;

g.    A finding that all Settlement Class Members shall, as of the entry of the Final Judgment, conclusively be deemed to have fully, finally, and forever completely released, relinquished, and discharged the Released Persons from the Released Claims; and

h.    A reservation of exclusive and continuing jurisdiction over the Litigation and the Parties for the purposes of, among other things, (i) supervising the implementation, enforcement, construction, and interpretation of the Settlement Agreement, the Preliminary Approval Order, and the Final Judgment; and (ii) supervising the administration and distribution of the relief to the Settlement Class and resolving any disputes that may arise with regard to the foregoing.

72.    Upon entry of the Final Approval Order, the Litigation shall be dismissed with prejudice, with the Parties to bear their own costs and attorneys' fees and costs not otherwise awarded in accordance with this Settlement Agreement.

## XIII.   TERMINATION OF THIS SETTLEMENT AGREEMENT

73.     Each Party shall have the right to terminate this Settlement Agreement if:

a.     The Court denies preliminary approval of this Settlement Agreement (or grants preliminary approval through an order that materially differs in substance to **Exhibit D** hereto);

b.     The Court denies final approval of this Settlement Agreement (or grants final approval through an order that materially differs in substance from **Exhibit E** hereto);

c.     The Final Approval Order and Final Judgment do not become final by reason of a higher court reversing final approval by the Court, and the Court thereafter declines to enter a further order or orders approving the settlement on the terms set forth herein; or

d.     The Effective Date cannot or does not occur.

74.     Defendant shall have the right, but not the obligation, to terminate the Settlement Agreement if 250 or more individuals opt out of the Settlement Class.

75.     The Parties agree to work in good faith to effectuate this Settlement Agreement.

76.     If a Party elects to terminate this Settlement Agreement under this Section XIII, that Party must provide written notice to the other Party's counsel, by hand delivery, mail, or e-mail within ten (10) Days of the occurrence of the condition permitting termination.

77.     Nothing shall prevent Plaintiffs or Defendant from appealing or seeking other appropriate relief from an appellate court with respect to any denial by the Court of final approval of the Settlement.

78.     If this Settlement Agreement is terminated or disapproved, or if the Effective Date should not occur for any reason, then: (i) this Settlement Agreement, the Preliminary Approval Order, the Final Approval Order (if applicable), and all of their provisions shall be rendered null and void; (ii) all Parties shall be deemed to have reverted to their respective status in the Litigation

28

as of the date and time immediately preceding the execution of this Settlement Agreement; (iii) except as otherwise expressly provided, the Parties shall stand in the same position and shall proceed in all respects as if this Settlement Agreement and any related orders had never been executed, entered into, or filed; and (iv) no term or draft of this Settlement Agreement nor any part of the Parties' settlement discussions, negotiations, or documentation (including any declaration or brief filed in support of the motion for preliminary approval or motion for final approval), nor any rulings regarding class certification for settlement purposes (including the Preliminary Approval Order and, if applicable, the Final Approval Order and Final Judgment), will have any effect or be admissible into evidence for any purpose in the Litigation or any other proceeding.

79.     If the Court does not approve the Settlement or the Effective Date cannot or does not occur for any reason, Defendant shall retain all its rights and defenses in the Litigation. For example, Defendant shall have the right to object to the maintenance of the Litigation as a class action, to move for summary judgment, and to assert defenses at trial, and nothing in this Settlement Agreement or other papers or proceedings related to the Settlement shall be used as evidence or argument by any Party concerning whether the Litigation may properly be maintained as a class action, or for any other purpose.

## XIV.  RELEASE

80.     The Final Approval Order and Final Judgment shall provide that the Litigation is dismissed with prejudice as to the Plaintiffs and all Settlement Class Members.

81.     On the Effective Date, Plaintiffs and each and every Settlement Class Member shall be bound by this Settlement Agreement and shall have recourse only to the benefits, rights, and remedies provided hereunder. No other action, demand, suit, arbitration, or other claim or proceeding, regardless of forum, may be pursued against Released Persons with respect to the Plaintiffs' Released Claims or the Released Claims.

82.     On the Effective Date and in consideration of the promises and covenants set forth in this Settlement Agreement, Plaintiffs will be deemed to have fully, finally, and forever completely released, relinquished, and discharged the Released Persons from any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, disputes, contracts or agreements, extra-contractual claims, damages, punitive damages, exemplary damages, multiplied damages, expenses, costs, attorneys' fees and/or obligations, whether in law or in equity, accrued or unaccrued, direct or indirect, individual or representative, of every nature and description whatsoever, regardless of whether arising out of or connected to the Data Security Incident, that were or could have been asserted in the Litigation or other state, federal, local, statutory or common law or any other law, rule or regulation, against the Released Parties, or any of them, arising out of any facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the alleged disclosure of the Settlement Class Members' Private Information to any third party, including all claims that were brought or could have been brought in the Litigation relating to the disclosure of such information belonging to any and all Releasing Parties (the "**Plaintiffs' Release**"). Nothing herein is intended to release any claims any governmental agency or governmental actor has against Defendant. The Plaintiffs' Release shall be included as part of the Final Approval Order so that all claims released thereby shall be barred by principles of res judicata, collateral estoppel, and claim and issue preclusion (the "**Plaintiffs' Released Claims**"). The Plaintiffs' Released Claims shall constitute and may be raised as a complete defense to any proceeding arising from, relating to, or filed in connection with the Plaintiffs' Released Claims.

83.     On the Effective Date and in consideration of the promises and covenants set forth

in this Settlement Agreement, each Settlement Class Member will be deemed to have fully, finally, and forever completely released, relinquished, and discharged the Released Persons from any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, disputes, contracts or agreements, extra-contractual claims, damages, punitive damages, exemplary damages, multiplied damages, expenses, costs, attorneys' fees and/or obligations, whether in law or in equity, accrued or unaccrued, direct or indirect, individual or representative, of every nature and description whatsoever, regardless of whether arising out of or connected to the Data Security Incident, that were or could have been asserted in the Litigation or other state, federal, local, statutory or common law or any other law, rule or regulation, against the Released Parties, or any of them, arising out of any facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the alleged disclosure of the Settlement Class Members' Private Information to any third party, including all claims that were brought or could have been brought in the Litigation relating to the disclosure of such information belonging to any and all Releasing Parties (the "**Settlement Class Release**"). The Settlement Class Release shall be included as part of the Final Approval Order so that all claims released thereby shall be barred by principles of res judicata, collateral estoppel, and claim and issue preclusion (the "**Released Claims**"). The Released Claims shall constitute and may be raised as a complete defense to any proceeding arising from, relating to, or filed in connection with the Released Claims.

84.     Subject to Court approval, upon entry of the Final Approval Order, Plaintiffs and all Settlement Class Members shall be bound by this Settlement Agreement and the Settlement Class Release and all of Plaintiffs' Released Claims and the Released Claims shall be dismissed

31

with prejudice and released.

85. The Plaintiffs' Released Claims and Released Claims include the release of Unknown Claims. "**Unknown Claims**" means claims that could have been raised in the Litigation and that any of the Plaintiffs or Settlement Class Members, and each of their respective heirs, executors, administrators, representatives, agents, partners, trustees, successors, attorneys, and assigns do not know to exist or suspects to exist, which, if known by him, her or it, might affect his, her, or its agreement to release Defendant and all other Released Persons, or might affect his, her, or its decision to agree to, or object or not to object to the Settlement. Upon the Effective Date, Plaintiffs, the Settlement Class, and any Releasing Party shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE PLAINTIFFS DO NOT KNOW OR SUSPECT TO EXIST IN THEIR FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY THEM MUST HAVE MATERIALLY AFFECTED THEIR SETTLEMENT WITH THE DEFENDANT.

Upon the Effective Date, each of the Releasing Parties shall be deemed to have, and shall have, waived any and all provisions, rights, and benefits conferred by any law of any state, the District of Columbia or territory of the United States, by federal law, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to Section 1542 of the California Civil Code. The Class Representatives, the Settlement Class, and the Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Release, but that it is their intention to finally and forever settle and release the Released Claims, including but not limited to any Unknown Claims they may have, as that term is defined in this Paragraph. The Parties acknowledge, and Settlement Class Members shall be deemed by

32

operation of the Agreement to have acknowledged, that the foregoing waiver is a material term of the Agreement.

86.     On entry of the Final Approval Order and Final Judgment, the Plaintiffs and Settlement Class Members shall be enjoined from prosecuting, respectively, the Plaintiffs' Released Claims and the Released Claims, in any proceeding in any forum against any of the Released Persons or based on any actions taken by any Released Persons authorized or required by this Settlement Agreement or the Court or an appellate court as part of this Settlement.

87.     Without in any way limiting the scope of the Plaintiffs' Release or the Settlement Class Release (the "**Releases**"), the Releases cover, without limitation, any and all claims for attorneys' fees or costs incurred by Class Counsel or any other counsel representing Plaintiffs or Settlement Class Members, or any of them, in connection with or related in any manner to the Litigation, the Settlement, the administration of such Settlement and/or the Plaintiffs' Released Claims or the Released Claims as well as any and all claims for Service Awards to Plaintiffs.

88.     Nothing in the Releases shall preclude any action to enforce the terms of this Settlement Agreement, including participation in any of the processes detailed herein.

## XV.   EFFECTIVE DATE

89.     The "Effective Date" of this Settlement Agreement shall be the first Day after the date when all of the following conditions have occurred:

a.      This Settlement Agreement has been fully executed by all Parties and their counsel;

b.      Orders have been entered by the Court certifying the Settlement Class, granting preliminary approval of this Settlement Agreement and approving the Notice Program and Claim Form, all as provided above;

c.      The Court-approved Postcard Notice has been mailed, other notice required

by the Notice Program, if any, has been effectuated and the Settlement Website has been duly created and maintained as ordered by the Court;

d. The Court has entered a Final Approval Order finally approving this Settlement Agreement, as provided above; and

e. The Final Approval Order and Final Judgment have become Final, as defined in Paragraph 9n.

## XVI. MISCELLANEOUS PROVISIONS

90. The recitals and exhibits to this Settlement Agreement are integral parts of the Settlement and are expressly incorporated and made a part of this Settlement Agreement.

91. This Settlement Agreement is for settlement purposes only. Neither the fact of nor any provision contained in this Settlement Agreement nor any action taken hereunder shall constitute or be construed as an admission of the validity of any claim or any fact alleged in the CAC or Litigation or of any wrongdoing, fault, violation of law or liability of any kind on the part of Defendant or any admission by Defendant of any claim in this Litigation or allegation made in any other proceeding, including regulatory matters, directly or indirectly involving the Data Security Incident or allegations asserted in the CAC and Litigation. This Settlement Agreement shall not be offered or be admissible in evidence against the Parties or cited or referred to in any action or proceeding between the Parties, except in an action or proceeding brought to enforce its terms. Nothing contained herein is or shall be construed or admissible as an admission by Defendant that Plaintiffs' claims, or any similar claims, are suitable for class treatment.

92. In the event that there are any developments in the effectuation and administration of this Settlement Agreement that are not dealt with by the terms of this Settlement Agreement, then such matters shall be dealt with as agreed upon by the Parties, and failing agreement, as shall be ordered by the Court. The Parties shall execute all documents and use their best efforts to

34

perform all acts necessary and proper to promptly effectuate the terms of this Settlement Agreement and to take all necessary or appropriate actions to obtain judicial approval of this Settlement Agreement to give this Settlement Agreement full force and effect.

93.     No person shall have any claim against Plaintiffs, Class Counsel, Defendant, Defendant's Counsel, the Settlement Administrator, or the Released Persons, or any of the foregoing's agents or representatives based on the administration of the Settlement substantially in accordance with the terms of the Settlement Agreement or any order of the Court or appellate court.

94.     This Settlement Agreement constitutes the entire Settlement Agreement between and among the Parties with respect to the Settlement of the Litigation. This Settlement Agreement supersedes all prior negotiations and Settlement Agreements and may not be modified or amended except by a writing signed by the Parties and their respective counsel. The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or understanding concerning any part of the subject matter of this Settlement Agreement has been made or relied on except as expressly set forth in this Settlement Agreement.

95.     There shall be no waiver of any term or condition in this Settlement Agreement absent an express writing to that effect by the non-waiving Party. No waiver of any term or condition in this Settlement Agreement shall be construed as a waiver of a subsequent breach or failure of the same term or condition, or waiver of any other term or condition of this Settlement Agreement.

96.     In the event a third-party, such as a bankruptcy trustee, former spouse, or other third-party has or claims to have a claim against any payment made to a Settlement Class Member, it is the responsibility of the Settlement Class Member to transmit the funds to such third-party.

Unless otherwise ordered by the Court, the Parties will have no, and do not agree to any, responsibility for such transmittal.

97. This Settlement Agreement shall not be construed more strictly against one Party than another merely because it may have been prepared by counsel for one of the Parties, it being recognized that because of the arm's-length negotiations resulting in this Settlement Agreement, all Parties hereto have contributed substantially and materially to the preparation of the Settlement Agreement. All terms, conditions, and exhibits are material and necessary to this Settlement Agreement and have been relied upon by the Parties in entering into this Settlement Agreement.

98. This Settlement Agreement shall be construed under and governed by the laws of the State of Michigan without regard to its choice of law provisions.

99. In the event that one or more of the provisions contained in this Settlement Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect the other provisions of the Settlement Agreement, which shall remain in full force and effect as though the invalid, illegal, or unenforceable provision(s) had never been a part of this Settlement Agreement as long as the benefits of this Settlement Agreement to Defendant or the Settlement Class Members are not materially altered, positively or negatively, as a result of the invalid, illegal, or unenforceable provision(s).

100. This Settlement Agreement will be binding upon and inure to the benefit of the successors and assigns of the Parties, Released Persons, and Settlement Class Members.

101. The headings used in this Settlement Agreement are for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement. In construing this Settlement Agreement, the use of the singular includes the plural (and vice-versa)

and the use of the masculine includes the feminine (and vice-versa).

102.    The Parties stipulate to stay all proceedings in the Litigation until the approval of this Settlement Agreement has been finally determined, except the stay of proceedings shall not prevent the filing of any motions, affidavits, and other matters necessary to obtain and preserve judicial approval of this Settlement Agreement.

103.    This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original as against any Party who has signed it and all of which shall be deemed a single Settlement Agreement.

104.    Each Party to this Settlement Agreement and the signatories thereto warrant that he, she, or it is acting upon his, her or its independent judgment and the advice of his, her, or its counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other Party, other than the warranties and representations expressly made in this Settlement Agreement.

105.    Each signatory below warrants that he or she has authority to execute this Settlement Agreement and bind the Party on whose behalf he or she is executing the Settlement Agreement.

IN WITNESS WHEREOF, the Parties have hereby accepted and agreed to the Settlement Agreement.

[signatures on following page(s)]

37

Docusign Envelope ID: 65E52CFA-03AA-8135-81B5-18F182E1D3CE

## AGREED TO BY:

Signed by:

38954B1FDAB54D0...

4/13/2026
_____
Date

Belle Tire Distributors, Inc.

*Defendant*


_____
Date

_____
E. Powell Miller
The Miller Law Firm, P.C.


_____
Date

_____
Casondra Turner
Milberg, PLLC


_____
Date

_____
Scott Edward Cole
Cole & Van Note

*Counsel for Proposed Representative
Plaintiffs and Class Counsel*

38

**AGREED TO BY:**

| | |
|---|---|
| _____ | _____ |
| Date | Belle Tire Distributors, Inc. |
| | |
| | ***Defendant*** |
| | *E. Powell Miller* |
| 4.8.26 | _____ |
| Date | E. Powell Miller |
| | The Miller Law Firm, P.C. |
| | |
| _____ | _____ |
| Date | Casondra Turner |
| | Milberg, PLLC |
| | |
| _____ | _____ |
| Date | Scott Edward Cole |
| | Cole & Van Note |

***Counsel for Proposed Representative***
***Plaintiffs and Class Counsel***

38

**AGREED TO BY:**


_____
Date

_____
Belle Tire Distributors, Inc.

*Defendant*


_____
Date

_____
E. Powell Miller
The Miller Law Firm, P.C.


4/8/2026   \_\_\_\_
Date

*/s/ Casondra Turner*
Casondra Turner, Milberg, PLLC


_____
Date

_____
Scott Edward Cole
Cole & Van Note

***Counsel for Proposed Representative Plaintiffs and Class Counsel***

**AGREED TO BY:**

_____        _____
Date                          Belle Tire Distributors, Inc.

                                    *Defendant*

_____        _____
Date                          E. Powell Miller
                                    The Miller Law Firm, P.C.

_____        _____
Date                          Casondra Turner
                                    Milberg, PLLC

4/7/26        _____
Date                          Scott Edward Cole
                                    Cole & Van Note

                                    *Counsel for Proposed Representative*
                                    *Plaintiffs and Class Counsel*

4/6/2026
_____

Date

_____
ID kcqjAvRmQ3nsX9PvrmeA7nv4

Tabbitha Berry


_____

Date

_____

Hamza Yaser Algharably


_____

Date

_____

Zachary Loafman


_____

Date

_____

Anthony Georges


_____

Date

_____

Zach Travis

39

_____          _____
Date                         Tabbitha Berry


 04/06/2026                  _____
_____          Hamza Algharably (Apr 6, 2026 10:38:46 EDT)
Date                         Hamza Yaser Algharably


_____          _____
Date                         Zachary Loafman


_____          _____
Date                         Anthony Georges


_____          _____
Date                         Zach Travis

_____                    _____
Date                               Tabbitha Berry


_____                    _____
Date                               Hamza Yaser Algharably


Apr 10, 2026                       _____
_____                    Zachary Loafman (Apr 10, 2026 14:59:17 EDT)
Date                               Zachary Loafman


_____                    _____
Date                               Anthony Georges


_____                    _____
Date                               Zach Travis


39

_____                         _____
Date                                      Tabbitha Berry


_____                         _____
Date                                      Hamza Yaser Algharably


_____                         _____
Date                                      Zachary Loafman


04/09/2026                                _____
_____
Date                                      Anthony Georges


_____                         _____
Date                                      Zach Travis

39

_____          _____

Date                               Tabbitha Berry

_____          _____

Date                               Hamza Yaser Algharably

_____          _____

Date                               Zachary Loafman

_____          _____

Date                               Anthony Georges

04/06/2026                 *Zachariah Shea Travis*
_____           Zachariah Shea Travis (Apr 6, 2026 11:06:56 EDT)

Date                               Zach Travis

39

# Exhibit A

<table>
<tr><td>

**Your claim must be submitted online or postmarked by:**

[Claims Deadline]

</td><td>

*In Re: Belle Tire Distributors, Inc. Data Breach Litigation*
Case No. 2:24-cv-12966
District Court for the Eastern District of Michigan

**DATA BREACH SETTLEMENT CLAIM FORM**

</td><td>

**Your claim must be submitted online or postmarked by:**

[Claims Deadline]

</td></tr>
</table>

---

## GENERAL INSTRUCTIONS

**Who is eligible to file a claim?** The court has defined the Class this way: "All individuals whose Private Information was exposed to unauthorized third parties as a result of the Data Security Incident discovered by Defendant on or before June 11, 2024."

The Judge in this case, and the Judge's family and staff, are excluded from the Class.

### COMPLETE THIS CLAIM FORM IF YOU ARE A CLASS MEMBER AND WISH TO RECEIVE ONE OF THE FOLLOWING SETTLEMENT BENEFITS

## AVAILABLE BENEFITS

Belle Tire will pay Documented Losses, court-approved attorneys' fees and costs, Service Award payments for the Plaintiffs, and the costs of administering the Settlement. Belle Tire will also establish an Alternative Pro Rata Settlement Fund of $75,000.00. The Alternative Pro Rata Settlement Fund will be used to pay Alternative Pro Rata Cash Compensation.

**CASH PAYMENT OPTIONS**

**Documented Losses.** If you incurred actual, <u>documented</u> out-of-pocket losses due to the Data Security Incident, you can get back 150% of what you spent, up to **$1,000.00**. The losses must have occurred between June 11, 2024, and [Claims Deadline].

This benefit covers out-of-pocket expenses like:

- losses because of identity theft or fraud
- fees for credit reports, credit monitoring, or freezing and unfreezing your credit
- cost to replace your IDs
- postage to contact banks by mail

You need to send proof, like bank statements or receipts, to show how much you spent or lost and the bases for why you believe the expenses are because of the Data Security Incident. You can also send notes or papers you made yourself to explain or support other proof, but those notes or papers alone are not enough to make a valid claim. Your proof or notes should show that your expenses were because of the Data Incident.

You cannot claim a payment for expenses that have already been reimbursed by a third party.

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.[SettlementWebsite].com**

**Your claim must be submitted online or postmarked by:**
**[Claims Deadline]**

*In Re: Belle Tire Distributors, Inc. Data Breach Litigation*
Case No. 2:24-cv-12966
District Court for the Eastern District of Michigan

**DATA BREACH SETTLEMENT CLAIM FORM**

**Your claim must be submitted online or postmarked by:**
**[Claims Deadline]**

**-OR-**

**Alternative Pro Rata Cash Compensation.** In the alternative to submitting a claim for Documented Losses, Class Members may file a claim for an equal share of the Alternative Pro Rata Settlement Fund. The amount of the payment will be calculated by dividing $75,000.00 by the number of valid and timely Alternative Pro Rata Cash Compensation claims.

You do not have to provide any proof or explanation to claim this payment.

If you have questions about these benefits, you can ask for free help any time by contacting the Settlement Administrator at:

- Email: info@[SettlementWebsite].com
- Call toll free, 24/7: 1-XXX-XXX-XXXX
- By mail:   Belle Tire Data Breach Settlement
            c/o Settlement Administrator
            [PO Box Number]
            [Address]

**THE MOST EFFICIENT WAY TO SUBMIT YOUR CLAIMS IS ONLINE AT**
**www.[SettlementWebsite].com**

You may also print out and complete this Claim Form, and submit it by U.S. mail.

An electronic image of the completed Claim Form can also be emailed to info@[SettlementWebsite].com

**You must submit your Claim Form online, by mail, or by email no later than [Claims Deadline].**

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.[SettlementWebsite].com**

**Your claim must be submitted online or postmarked by:**
**[Claims Deadline]**

*In Re: Belle Tire Distributors, Inc. Data Breach Litigation*
Case No. 2:24-cv-12966
District Court for the Eastern District of Michigan

**DATA BREACH SETTLEMENT CLAIM FORM**

**Your claim must be submitted online or postmarked by:**
**[Claims Deadline]**

## I. CLASS MEMBER NAME AND CONTACT INFORMATION

Print your name and contact information below. You must notify the Settlement Administrator if your contact information changes after you submit this claim form.  All fields are required. **Please print legibly.**

First Name

Last Name

Street Address

City

State

Zip Code

Email Address

Phone Number

Notice ID (if known)

## II. PRO RATA CASH COMPENSATION

☐ Check this box to claim an equal share of the $75,000.00 Alternative Pro Rata Settlement Fund.

## III. DOCUMENTED LOSSES

☐ Check this box if you would like to claim reimbursement for <u>Documented</u> Losses due to identity theft or fraud. You can get back up to $1,000.00 with proof of losses that you demonstrate are connected to the Data Security Incident.

*Please complete the table below, describing the supporting documentation you are submitting.*

| Description of Documentation Provided | Amount |
|---|---|
| *Example: Unauthorized bank transfer* | *$500* |
| | |
| | |
| | |
| | |
| | |
| | |
| **TOTAL CLAIMED:** | |

If you have more expenses than rows, you may attach additional sheets of paper to account for them. For each expense for which you seek reimbursement, please attach a brief written statement explaining how that expense

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.[SettlementWebsite].com**

*In Re: Belle Tire Distributors, Inc. Data Breach Litigation*
Case No. 2:24-cv-12966
District Court for the Eastern District of Michigan

**DATA BREACH SETTLEMENT CLAIM FORM**

was caused by the Data Security Incident. Please print your name and sign the bottom of each additional sheet of paper.

## IV. PAYMENT SELECTION

Please select **one** of the following payment options if you are claiming a cash payment.

☐ **PayPal**
Email address, if different than you provided in Section 1:_____

☐ **Venmo**
Mobile number, if different than you provided in Section 1:_____

☐ **Zelle**
Email address or mobile number, if different than you provided in Section 1:_____

☐ **Virtual Prepaid Card**
Email address, if different than you provided in Section 1:_____

☐ **Physical Check**
Payment will be mailed to the address provided in Section 1.

## V. ATTESTATION & SIGNATURE

I swear and affirm on penalty of perjury that the information provided in this Claim Form, including supporting documentation, is true and correct to the best of my knowledge. I understand that my claim is subject to verification and that I may be asked to provide supplemental information by the Settlement Administrator before my claim is considered complete and valid.

_____     _____     _____
Signature                                              Printed Name                                        Date

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.[SettlementWebsite].com**

# Exhibit B

# NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

*In Re: Belle Tire Distributors, Inc. Data Breach Litigation*
Case No. 2:24-cv-12966
United States District Court for the Eastern District of Michigan

**IF YOUR PRIVATE INFORMATION WAS COMPROMISED IN THE JUNE 2024 <u>BELLE TIRE DISTRIBUTORS, INC.</u> DATA SECURITY INCIDENT, A PROPOSED CLASS ACTION SETTLEMENT MAY AFFECT YOUR RIGHTS, AND ENTITLE YOU TO A <u>CASH PAYMENT</u>.**

*A court has authorized this notice. This is not a solicitation from a lawyer.*
*You are not being sued.*
***Please read this Notice carefully and completely.***

- A Settlement has been reached with Belle Tire Distributors, Inc. ("Belle Tire" or "Defendant") in a class action lawsuit. This case is about the targeted cyberattack on Belle Tire's computer systems that occurred in June 2024 (the "Data Security Incident"). Certain files that contained private information were accessed. These files may have contained personal information such as names; address; date of birth; social security numbers; or driver's License numbers.

- The lawsuit is called *In Re: Belle Tire Distributors, Inc. Data Breach Litigation*, Case No. 2:24-cv-12966. It is pending in the United States District Court for the Eastern District of Michigan (the "Litigation").

- Belle Tire denies that it did anything wrong, and the Court has not decided who is right.

- The parties have agreed to settle the lawsuit (the "Settlement") to avoid the costs and risks, disruptions, and uncertainties of continuing the Litigation.

- Belle Tire's records indicate that you are a Class Member and entitled to benefits under the Settlement. You may have received a previous notice directly from Belle Tire.

- Your rights are affected whether you act or don't act. ***Please read this Notice carefully and completely.***

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DEADLINE |
|---|---|---|
| **SUBMIT A CLAIM** | The only way to receive payment from this Settlement is by submitting a valid and timely Claim Form. The fastest way to submit your Claim Form is online at www.[SettlementWebsite].com. If you prefer, you can download the Claim Form from the Settlement Website and mail it to the Settlement Administrator. You may also call or email the Settlement Administrator to receive a paper copy of the Claim Form. | _____, **2026** |
| **OPT OUT OF THE SETTLEMENT** | You can choose to opt out of the Settlement and receive no benefit or payment. This option allows you to sue, continue to sue, or be part of another lawsuit against Defendant related to the legal claims resolved by this Settlement. You can hire your own lawyer at your own expense. | _____, **2026** |
| **OBJECT TO THE SETTLEMENT AND/OR ATTEND A HEARING** | If you do not opt out of the Settlement, you may object to it by writing to the Court about why you don't like the Settlement. You may also ask the Court for permission to speak about your objection at the Final Approval Hearing. If you object, you may also file a claim for Settlement benefits. | _____, **2026** |
| **DO NOTHING** | Unless you opt out of the Settlement, you are automatically part of the Settlement. If you do nothing, you will not receive benefits or payments from this Settlement and you will give up the right to sue, continue to sue, or be part of another lawsuit against the Defendant related to the legal claims resolved by this Settlement. | No Deadline |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement.

2

## WHAT THIS NOTICE CONTAINS

BASIC INFORMATION ................................................................................................3

WHO IS IN THE SETTLEMENT ..................................................................................4

THE SETTLEMENT BENEFITS....................................................................................4

SUBMITTING A CLAIM FORM FOR SETTLEMENT BENEFITS ...............................5

THE LAWYERS REPRESENTING YOU .....................................................................6

EXCLUDING YOURSELF FROM THE SETTLEMENT ...............................................6

COMMENTING ON OR OBJECTING TO THE SETTLEMENT....................................7

THE COURT'S FINAL APPROVAL HEARING ............................................................8

IF I DO NOTHING .......................................................................................................8

GETTING MORE INFORMATION ...............................................................................8

# Basic Information

## 1. Why was this Notice issued?

The United States District Court for the Eastern District of Michigan authorized this Notice. You have a right to know about the proposed Settlement of this class action lawsuit, and about all of your options, before the Court decides whether to grant final approval of the Settlement. This Notice explains the lawsuit, your legal rights, what benefits are available, and who can receive them.

The lawsuit is called *In Re: Belle Tire Distributors, Inc. Data Breach Litigation*, Case No. 2:24-cv-12966. It is pending in the United States District Court for the Eastern District of Michigan. The people that filed this lawsuit are called the "Plaintiffs" (or "Class Representatives") and the company they sued, Belle Tire Distributors, Inc., is called the "Defendant."

## 2. What is this lawsuit about?

This lawsuit alleges that during the cyberattack on Belle Tire's computer systems discovered by Defendant on or before June 11, 2024, certain files that contained private information were accessed. These files may have contained personal information such as names; address; date of birth; social security numbers; and/or driver's License numbers.

## 3. What is a class action?

In a class action, one or more individuals sue on behalf of other people with similar claims. These individuals are called the "Plaintiffs" or "Class Representatives." Together, the people included in the class action are called a "Class" or "Class Members." One court resolves the lawsuit for all Class Members, except for those who opt out from the settlement. In this Settlement, the Class Representatives are Tabbitha Berry; Hamza Yaser Algharably; Zachary Loafman; Anthony Georges; and Zach Travis. Everyone included in this Action are the Class Members.

## 4. Why is there a Settlement?

3

Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.[SettlementWebsite].com

The Court did not decide whether the Plaintiffs or the Defendant are right. Both sides have agreed to a Settlement to avoid the costs and risks of a trial, and to allow the Class Members to receive benefits from the Settlement. The Plaintiffs and their attorneys think the Settlement is best for all Class Members.

# Who is in the Settlement?

## 5. Who is included in the Settlement?

The Court has defined the Class this way: "All individuals whose Private Information was exposed to unauthorized third parties as a result of the Data Security Incident discovered by Defendant on or before June 11, 2024."

## 6. Are there exceptions to being included?

Yes. The Judge in this case, and the Judge's staff, are excluded from the Class.

If you are not sure whether you are a Class Member, you can ask for free help any time by contacting the Settlement Administrator at:

- Email: info@[SettlementWebsite].com
- Call toll free, 24/7: 1-XXX-XXX-XXXX
- By mail:  Belle Tire Data Breach Settlement
  c/o Settlement Administrator
  [PO Box Number]
  [Address]

You may also view the Settlement Agreement at www.[SettlementWebsite].com.

# The Settlement Benefits

## 7. What does the Settlement provide?

Belle Tire will pay Documented Losses, court-approved attorneys' fees and costs, Service Award payments for the Plaintiffs, and the costs of administering the Settlement. Belle Tire will also establish an Alternative Pro Rata Settlement Fund of $75,000.00. The Alternative Pro Rata Settlement Fund will be used to pay Alternative Pro Rata Cash Compensation.

**CASH PAYMENT OPTIONS**

**Documented Losses.** If you incurred actual, underline documented out-of-pocket losses due to the Data Breach, you can get back 150% of what you spent, up to **$1,000.00**. The losses must have occurred between June 11, 2024, and [Claims Deadline].

This benefit covers out-of-pocket expenses like:

- losses because of identity theft or fraud
- fees for credit reports, credit monitoring, or freezing and unfreezing your credit
- cost to replace your IDs
- postage to contact banks by mail

4

Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.[SettlementWebsite].com

You need to send proof, like bank statements or receipts, to show how much you spent or lost. You can also send notes or papers you made yourself to explain or support other proof, but those notes or papers alone <u>are not enough</u> to make a valid claim. Your proof or notes should show that your expenses were because of the Data Incident.

You cannot claim a payment for expenses that have already been reimbursed by a third party.

**-or-**

**Alternative Pro Rata Cash Compensation.** In the alternative to submitting a claim for Documented Losses, Class Members may file a claim for an equal share of the Pro Rata Settlement Fund. The amount of the payment will be calculated by dividing $75,000.00 by the number of valid and timely Alternative Pro Rata Cash Compensation claims.

You do not have to provide any proof or explanation to claim this payment.

If you have questions about these benefits, you can ask for free help any time by contacting the Settlement Administrator at:

- Email: info@[SettlementWebsite].com
- Call toll free, 24/7: 1-XXX-XXX-XXXX
- By mail:  Belle Tire Data Breach Settlement
        c/o Settlement Administrator
        [PO Box Number]
        [Address]

## 8. What claims am I releasing if I stay in the Class?

If you stay in the class, you won't be able to be part of any other lawsuit against Belle Tire about the issues that this Settlement covers. The "Releases" section of the Settlement Agreement (Section XIV) describes the legal claims that you give up if you remain in the Class. The Settlement Agreement is available at www.[SettlementWebsite].com.

# Submitting a Claim Form for a Settlement Payment

## 9. How do I submit a claim for a Settlement benefit?

The fastest way to submit your Claim Form is online at www.[SettlementWebsite].com. If you prefer, you can download a printable Claim Form from the website and mail it to the Settlement Administrator at:

Belle Tire Data Breach Settlement
c/o Settlement Administrator
[PO Box Number]
[Address]

You may also contact the Settlement Administrator to request a Claim Form by telephone, toll free, 1-XXX-XXX-XXXX, by email info@[SettlementWebsite].com, or by U.S. mail at the address above.

## 10. Are there any important Settlement payment deadlines?

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.[SettlementWebsite].com**

If you are submitting a Claim Form online, you must do so by [Claims Deadline]. If you are submitting a claim by U.S. mail, the completed and signed Claim Form, including supporting documentation, must be postmarked no later than [Claims Deadline].

## 11. When will the Settlement benefits be issued?

The Court will hold a final approval hearing on [FA Hearing Date] (*see* **Question 18)**. If the Court approves the Settlement, there may be appeals. We do not know if appeals will be filed, or how long it will take to resolve them if they are filed.

Settlement payments will be distributed if the Court grants final approval, and after any appeals are resolved.

## The Lawyers Representing You

## 12. Do I have a lawyer in the case?

Yes, the Court has appointed E. Powell Miller of The Miller Law Firm, P.C., Casondra R. Turner of Milberg, PLLC and Scott Edward Cole of Cole & Van Note, to represent you and other Class Members ("Class Counsel").

## 13. Should I get my own lawyer?

You will not be charged for Class Counsel's services. If you want your own lawyer, you may hire one at your expense.

## 14. How will Class Counsel be paid?

Class Counsel will ask the court to approve $300,000.00 as reasonable attorney's fees and costs of litigation. This amount will be paid by Belle Tire.

Class Counsel will also ask for Service Award payments of $1,250.00 for each of the Class Representatives. Service Award payments will also be paid by Belle Tire.

## Excluding Yourself from the Settlement

## 15. How do I opt out of the Settlement?

If you do not want to be part of the Settlement, you must formally exclude yourself from the Settlement. This is called a Request for Exclusion, and is sometimes also called "opting out." If you opt out, you will not receive Settlement benefits or payment. However, you will keep any rights you may have to sue Belle Tire on your own about the legal issues in this case.

If you exclude yourself, you are telling the Court that you do not want to be part of the Settlement. You will not be eligible to receive any Settlement benefits if you exclude yourself.

The deadline to exclude yourself from the Settlement is **[Opt-Out Deadline]**.

To be valid, your Request for Exclusion must have the following information:

(1)  the name of the Litigation: *In Re: Belle Tire Distributors, Inc. Data Breach Litigation*, Case No. 2:24-cv-12966, pending in the United States District Court for the Eastern District of Michigan;

(2)  your full name, mailing address, telephone number, and email address;

(3)  personal signature; and

(4)  the words "Request for Exclusion" or a clear and similar statement that you do not want to participate in the Settlement.

You may only exclude yourself—not any other person.

Mail your Request for Exclusion to the Settlement Administrator at:

Belle Tire Data Breach Settlement
ATTN: Exclusion Request
[PO Box Number]
[Address]

Your Request for Exclusion must be submitted, postmarked, or emailed by **[Opt-Out Deadline]**.

# Commenting on or Objecting to the Settlement

## 16. How do I tell the Court if I like or do not like the Settlement?

If you are a Class Member and do not like part or all of the Settlement, you can object to it. Objecting means telling the Court your reasons for why you think the Court should not approve the Settlement. The Court will consider your views.

You cannot object if you have excluded yourself from the Settlement (*see* **Question 15**)

You must provide the following information for the Court to consider your objection:

(1)  the name of the Litigation: *In Re: Belle Tire Distributors, Inc. Data Breach Litigation*, Case No. 2:24-cv-12966, pending in the United States District Court for the Eastern District of Michigan;

(2)  your full name, mailing address, telephone number, and email address;

(3)  your signature (if you have hired your own lawyer, their signature is not sufficient);

(4)  information that proves that you are a Class Member (such as a notice you have received);

(5)  a clear description of all the reasons you object; include any legal support, such as documents, you may have for your objection;

(6)  if you have hired your own lawyer to represent you for this objection, provide their name, bar number, and contact information; and

(7)  if you or your lawyer have objected in any other cases in the past three years, list the names, courts, and civil action numbers for each of those cases;

For your objection to be valid, it must meet each of these requirements.

To be considered by the Court, you must file your complete objection with the Clerk of Court by **[OBJECTION DATE]**. You must also send a copy of the objection to the Settlement Administrator, Class Counsel, and counsel for Defendants.

| Clerk of the Court | Settlement Administrator |
|---|---|
| Clerk of the Court<br>[Court Address] | Belle Tire Data Breach Settlement<br>ATTN: Objections<br>[PO Box Number]<br>[Address] |

| Class Counsel | Counsel for Defendants |
|---|---|
| E. Powell Miller<br>Gregory A. Mitchell<br>**THE MILLER LAW FIRM, P.C.**<br>950 W. University Dr., Ste. 300<br>Rochester, MI 48307<br><br>Casondra Turner<br>**MILBERG, PLLC**<br>260 Peachtree Street NW, Suite 2200<br>Atlanta, GA 30303<br><br>Scott Edward Cole<br>**Cole & Van Note**<br>555 12th Street, Suite 2100<br>Oakland, CA 94607 | **Honigman LLP**<br>660 Woodward Avenue, Suite 2290<br>Detroit, MI 48226 |

## 17. What is the difference between objecting and excluding?

Objecting is telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement. Excluding yourself from the Settlement is opting out and stating to the Court that you do not want to be part of the Settlement. If you opt out of the Settlement, you cannot object to it because the Settlement no longer affects you.

# The Court's Final Approval Hearing

## 18. When is the Court's Final Approval Hearing?

The Court will hold a final approval on **[FA Hearing Date] at [Hearing Time] Eastern Time**, in Room [Court Room] of the United States District Court for the Eastern District of Michigan, at [Court Address].

At the final approval hearing, the Court will decide whether to approve the Settlement. The Court will also decide how Class Counsel should be paid, and whether to award Service Award payments to the Class Representatives. The Court will also consider any objections to the Settlement.

If you are a Class Member, you or your lawyer may ask permission to speak at the hearing at your own cost (*See* **Question 16**).

The date and time of this hearing may change without further notice. Please check www.[SettlementWebsite].com for updates.

## 19. Do I have to come to the Final Approval Hearing?

8

No. Class Counsel will answer any questions the Court may have. You may attend at your own expense if you wish, but you do not have to.

If you file an objection, you do not have to come to the Final Approval Hearing to talk about it; the Court will consider it as long as it was filed on time. You may also pay your own lawyer to attend, but you do not have to.

# If I Do Nothing

## 20. What happens if I do nothing at all?

If you do nothing, you will not receive a benefit from this Settlement.

You will also give up the rights described in **Question 8**.

# Getting More Information

## 21. How do I get more information?

This Notice is a summary of the proposed Settlement. The full Settlement Agreement and other related documents are available at the Settlement Website, www.[SettlementWebsite].com.

If you have additional questions, you can ask for free help any time by contacting the Settlement Administrator at:

- Email: info@[SettlementWebsite].com
- Call toll free, 24/7: 1-XXX-XXX-XXXX
- By mail:  Belle Tire Data Breach Settlement
        c/o Settlement Administrator
        [PO Box Number]
        [Address]

You can obtain copies of publicly filed documents by visiting the office of the Clerk of the Court,

Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd.
Detroit, MI 48226

**DO NOT CONTACT THE COURT OR CLERK OF COURT REGARDING THIS SETTLEMENT**

9

# Exhibit C

Belle Tire Data Breach Settlement
c/o Settlement Administrator
P.O. Box _____
[Address]

First Class
Mail
US Postage
Paid
Permit #__

**In Re: Belle Tire Distributors, Inc. Data Breach Litigation**
Case No. 2:24-cv-12966

**IF YOUR PRIVATE INFORMATION WAS COMPROMISED IN THE JUNE 2024 <u>BELLE TIRE DISTRIBUTORS, INC.</u> DATA BREACH, A PROPOSED CLASS ACTION SETTLEMENT MAY AFFECT YOUR RIGHTS AND ENTITLE YOU TO A <u>CASH PAYMENT</u>.**

*A court has authorized this Notice.*

*This is <u>not</u> a solicitation from a lawyer.*

*You are <u>not</u> being sued.*

**THIS NOTICE IS ONLY A SUMMARY.
VISIT WWW.[SETTLEMENTWEBSITE].COM
OR SCAN THIS QR CODE
FOR COMPLETE INFORMATION.**



«Barcode»

Postal Service: Please do not mark barcode

Claim #: XXX- «LoginID» - «MailRec»
«First1» «Last1»
«Addr1» «Addr2»
«City», «St» «Zip»
«Country»



### Why am I receiving this notice?

A Settlement has been reached with Belle Tire Distributors, Inc. ("Belle Tire") in a class action lawsuit ("Settlement"). The case is about the cyberattack on Belle Tire's computers discovered on or about June 11, 2024 (the "Data Security Incident"). Files containing private information were accessed. Belle Tire denies that it did anything wrong, and the Court has not decided who is right. The parties have agreed to settle the lawsuit to avoid the risks, disruption, and uncertainties of continued litigation. A copy of the Settlement is available online.

### Who is included in the Settlement?

The Court has defined the class as: "All individuals whose Private Information was exposed to unauthorized third parties as a result of the Data Security Incident discovered by Defendant on or before June 11, 2024."

The Court has appointed experienced attorneys, called "Class Counsel," to represent the Class.

### What are the Settlement benefits?

All Class Members may submit a claim for Documented Losses of up to 150% of what you spent, up to **$1,000.** In the alternative to submitting a claim for Documented Losses, Class Members **may claim an equal share of a $75,000** Pro Rata Settlement Fund. The amount of the payment will be calculated by dividing $75,000 by the number of valid and timely Alternative Pro Rata Cash Compensation claims.

You do not have to provide any proof or explanation to claim this payment.

Full details and instructions are available online.

### How do I receive a benefit?

File all of your claims online. For a full paper Claim Form call **1-XXX-XXX-XXXX**. **Claims must be submitted online or postmarked by [Claims Deadline]**.

### What if I don't want to participate in the Settlement?

If you do not want to be part of the Settlement, you must exclude yourself by **[Opt-Out Deadline]** or you will not be able to sue Belle Tire for the claims made in *this* lawsuit. If you exclude yourself, you cannot get benefits from this Settlement. If you want to object to the Settlement, you may file an objection by **[Objection Deadline]**. The Settlement Agreement, available online, explains how to exclude yourself or object.

### When will the Court approve the Settlement?

The Court will hold a hearing in this case on **[FA Hearing Date]** at the **Theodore Levin U.S. Courthouse, 231 W. Lafayette Blvd., Detroit, MI 48226**, to consider whether to approve the Settlement. The Court will also consider Class Counsel's request for attorney's fees and costs of up to $300,000, and Service Awards of $1,250 for each of the Plaintiffs. You may attend the hearing at your own cost, but you do not have to.

www.[SettlementWebsite].com

# Exhibit D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| *In re Belle Tire Distributors, Inc. Data Breach Litigation* | Case No. 2:24-cv-12966-MFL-CI |
| | Hon. Matthew F. Leitman |
| | **CLASS ACTION** |

## [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION <u>SETTLEMENT AND PROVIDING NOTICE</u>

This case is before the Court on Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement (the "Motion"), brought by Plaintiffs Tabbitha Berry, Hamza Yaser Algharably, Zachary Loafman, Anthony Georges, and Zach Travis. The Court, having considered the Unopposed Motion, the supporting Brief, the Settlement Agreement between Plaintiffs and Defendant Belle Tire Distributors, Inc. (the "Settlement Agreement"); the proposed Claim Form, Long Form Notice, and Short Form Notice (attached as Exhibits A, B, and C, respectively, to the Settlement Agreement); the pleadings and other papers filed in this Action; and the statements of counsel and the Parties, and for good cause shown, **GRANTS** the Motion.

**IT IS HEREBY ORDERED** as follows:

### <u>Preliminary Approval of Settlement Agreement</u>

1.       Unless otherwise defined herein, all terms that are capitalized herein shall have the meanings ascribed to those terms in the Settlement Agreement.

2.       This Court has jurisdiction over the Litigation, Plaintiffs, all Settlement Class Members, Defendant Belle Tire Distributors, Inc. ("Belle Tire"), and any party to any agreement that is part of or related to the Settlement.

3.       The Court finds that the Settlement set forth in the Settlement Agreement is sufficiently fair, reasonable and adequate such that it is hereby preliminary approved and notice of the settlement should be provided to the

1

Settlement Class Members and that a hearing shall be held as set forth below.

## Class Certification

4.      Solely for purposes of the Settlement, the Court conditionally certifies the following class pursuant to Fed. R. Civ. P. 23(a) and (b)(3) ("Settlement Class"):

> All individuals whose Private Information was exposed to unauthorized third parties as a result of the Data Security Incident discovered by Defendant on or before June 11, 2024.

5.      Excluded from the Settlement Class are: (i) all Persons who timely and validly request exclusion from the Class; (ii) the judge assigned to evaluate the fairness of this settlement (including any members of the Court's staff assigned to this case); (iii) Defendant's officers and directors, and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

6.      Subject to final approval of the Settlement, the Court finds and concludes for settlement purposes only that the prerequisites to a class action, set forth in Fed. R. Civ. P. 23(a) and (b), are satisfied in that:

a.  The Settlement Class is so numerous that joinder of all members is impracticable;

b.  There are questions of law and fact common to the Settlement Class;

2

c. Plaintiffs and Proposed Settlement Class Counsel (as defined above) fairly and adequately represent that Settlement Class;

d. The claims of Plaintiffs are typical of those of Settlement Class Members;

e. Common issues predominate over any individual issues affecting the members of the Settlement Class;

f. Plaintiffs fairly and adequately protect and represent the interests of all members of the Settlement Class, and Plaintiffs' interests are aligned with the interests of all other members of the Settlement Class; and

g. Settlement of the Litigation on a class-action basis is superior to other means of resolving this matter.

7. The Court provisionally appoints E. Powell Miller of The Miller Law Firm, P.C., Casondra R. Turner of Milberg, PLLC, and Scott Edward Cole of Cole & Van Note as Proposed Settlement Class Counsel (hereinafter "Class Counsel"), having determined that the requirements of Rule 23(g) of the Federal Rules of Civil Procedure are fully satisfied by this appointment.

8. The Court hereby appoints Tabbitha Berry, Hamza Yaser Algharably, Zachary Loafman, Anthony Georges, and Zach Travis as the Class Representatives for settlement purposes only on behalf of the Settlement Class.

**Notice to Settlement Class Members**

9. Pursuant to Federal Rule of Civil Procedure 23(e), the Court approves the Long Form Notice and the Short Form Notice (the "Settlement Notices"), attached as Exhibits B and C, respectively, to the Settlement Agreement, and finds

3

that the dissemination of these Settlement Notices substantially in the manner and form set forth in the Settlement Agreement complies fully with the requirements of the Federal Rule of Civil Procedure 23 and due process of law, and is the best notice practicable under the circumstances.

10.     The Court further approves the Claim Form, substantially similar to Exhibit A to the Settlement Agreement, which will be available both on the Settlement Website and by request.

11.     The notice procedures described above are hereby found to be the best means of providing notice under the circumstances and, when completed, shall constitute due and sufficient notice of the Settlement Agreement and the Final Approval Hearing to all persons affected by and/or entitled to participate in the Settlement Agreement, in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure and due process of law.

12.     The Court hereby orders that, within fourteen (14) days of entry of this Order, Belle Tire shall provide to the Settlement Administrator the contact information of Settlement Class Members, including names and physical addresses, that is currently in Belle Tire's possession.

13.     No later than thirty (30) days from the date of this Order preliminarily approving the Settlement ("Notice Commencement Date"), Class Counsel shall cause the Settlement Administrator to send via U.S. mail and/or via email the Short

4

Form Notice to each Settlement Class member and shall cause to be published the Long Form Notice, thereby making it available to the rest of the Settlement Class as stated in the Notice Plan.

14. Contemporaneous with seeking Final Approval of the Settlement, Class Counsel and Belle Tire shall cause to be filed with the Court an appropriate affidavit or declaration from the Settlement Administrator with respect to complying with the Notice Plan.

15. All costs incurred in disseminating and otherwise in connection with the Settlement Notices shall be paid by Defendant.

16. The Settlement Notices and Claim Form satisfy the requirements of due process and of Rule 23(e) of the Federal Rules of Civil Procedure and thus are approved for dissemination to the Settlement Class. The Claim Form shall be made available to the Settlement Class as set forth on the Notice Plan and shall be made available to any potential Class Member that requests one.

### Responses by Settlement Class Members and the Scheduling of the Final Approval Hearing

17. Settlement Class Members will have sixty (60) days from the Notice Commencement Date to file a Claim Form and to elect to opt out or object up to the Settlement.

18. Any members of the Settlement Class who or that wishes to be excluded ("opt-out") from the Settlement Class must send a written request to the designated

Post Office Box established by the Settlement Administrator postmarked on or before the Opt-Out Deadline. Members of the Settlement Class may not opt-out of the Settlement by submitting requests to opt-out as a group or class, but must in each instance individually and personally sign and submit an opt-out request. All Settlement Class Members that opt-out of the Settlement will not be eligible to receive any benefits under the Settlement, will not be bound by any further orders or judgments entered for or against the Settlement Class, and will preserve their ability to independently pursue any claims they may have against Belle Tire.

19.     Any Member of the Settlement Class who does not properly and timely opt-out of the Settlement shall, upon entry of the Order and Final Judgment, be bound by all the terms and provisions of the Settlement Agreement and Release, whether or not such Settlement Class Member objected to the Settlement and whether or not such Settlement Class Member received consideration under the Settlement Agreement.

20.     The Court adopts the following schedule for the remaining events in this case:

| ACTION | DEADLINE |
|---|---|
| Defendant Provides Class List to Settlement Administrator | 14 days after entry of this Preliminary Approval Order |
| Defendant Pays Administrative Expenses | 30 days after entry of this Preliminary Approval Order |
| Notice Date | 30 days after entry of this Preliminary Approval Order |

6

| Motion for Attorneys' Fees and Expenses | 14 days prior to Objection and Opt-Out Deadline |
|---|---|
| Claims Deadline | 60 days after Notice Date |
| Opt-Out / Exclusion Deadline | 60 days after Notice Date |
| Objection Deadline | 60 days after Notice Date |
| Final Approval Brief and Response to Objections Due | 14 days prior to Final Approval Hearing |
| Final Approval Hearing | [No earlier than 90 days after Notice Date] |

21. A hearing on the Settlement (the "Final Approval Hearing") shall be held before this Court on a date to be set by the Court.

22. At the Final Approval Hearing, the Court will consider (a) the fairness, reasonableness, and adequacy of the proposed class Settlement and whether the Settlement should be granted final approval by the Court; (b) dismissal with prejudice of the Litigation; (c) entry of an order including the Release; (d) entry of the Final Approval Order; and (e) entry of final judgment in this Litigation. Class Counsel's application for award of attorney's fees and costs, and request for the Court to award a service award to the named Plaintiffs, shall also be heard at the time of the hearing.

23. The date and time of the Final Approval Hearing shall be subject to adjournment by the Court without further notice to the Members of the Settlement Class, other than posted on the Settlement Website and that which may be posted by the Court. Should the Court adjourn the date for the Final Approval Hearing, that

shall not alter the deadlines for mailing and publication of notice, the Opt-Out deadline, or the deadlines for submissions of settlement objections, claims, and notices of intention to appear at the Final Approval Hearing unless those dates are explicitly changed by subsequent Order. The Court may also decide to hold the hearing via zoom or telephonically. Instructions on how to appear at and regarding the time of the Final Approval Hearing will be posted on the Settlement Website.

24. Any person or entity who or which does not elect to be excluded from the Settlement Class may, but need not, enter an appearance through its own attorney. Settlement Class Members that do not timely object or opt out and that do not have an attorney enter an appearance on their behalf will be represented by Class Counsel.

25. Any person or entity who or which does not elect to be excluded from the Settlement Class may object to the Settlement. Any Settlement Class Member may object to, among other things, (a) the Settlement, (b) entry of Final Approval Order and the judgment approving the Settlement, (c) Class Counsel's application for fees and expenses, or (d) the Service Award request, by mailing a written objection, with a postmark date no later than the Objection Date, to Class Counsel and Belle Tire's Counsel. The Settlement Class Member making the objection (the "Objector") or his or her counsel may also file an objection with the Court through the Court's Electronic Court Filing ("ECF") system, with service on Class Counsel and Belle Tire's Counsel made through the ECF system. For all objections mailed to

Class Counsel and Belle Tire's Counsel, Class Counsel will file them with the Court with the Motion for Final Approval of the Settlement.

26.     The Objector's objection must be either (1) filed with the Court no later than sixty (60) days after the Notice Commencement Date or (2) mailed to Class Counsel and Belle Tire's Counsel, with a postmark date of no later than sixty (60) days after the Notice Commencement Date. To be valid, the objection must include: (i) the name of the proceedings; (ii) the Settlement Class Member's full name, current mailing address, and telephone number; (iii) a statement of the specific grounds for the objection, as well as any documents supporting the objection; (iv) the identity of any attorneys representing the objector; (v) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; (vi) a statement identifying all class action settlements objected to by the Settlement Class Member (and his or her attorney) in the previous 5 years; (vii) the signature of the Settlement Class Member or the Settlement Class Member's attorney; and (viii) documentary evidence identifying the individual as a member of the Settlement Class (e.g., a Data Incident notice letter).

27.     Only Settlement Class Members that have filed and served valid and timely notices of objection shall be entitled to be heard at the Final Approval Hearing. Any Settlement Class Member who does not timely file and serve an objection in writing in accordance with the procedure set forth in the Class Notice

and mandated in this Order shall be deemed to have waived any objection to (a) the Settlement; (b) the Release; (c) entry of Final Approval Order or any judgment; (d) Class Counsel's application for fees, costs, and expenses; and/or (e) the Service Award request for the named Plaintiffs, whether by appeal, collateral attack, or otherwise.

28.    Settlement Class Members need not appear at the hearing or take any other action to indicate their approval of the Settlement.

29.    Upon entry of the Order and Final Judgment, all members of the Settlement Class that have not personally and timely requested to be excluded from the Settlement Class will be enjoined from proceeding against Belle Tire with respect to all of the Released Claims.

30.    Belle Tire, through the Settlement Administrator, shall cause to be prepared and sent all notices that are required by the Class Action Fairness Act of 2005 ("CAFA") as specified in 28 U.S.C. § 1715. The costs associated with providing notice under CAFA shall be paid by Defendant.

31.    Class Counsel and Belle Tire's Counsel shall cooperate promptly and fully in the preparation of such notices, including providing the Settlement Administrator with any and all information in its possession necessary for the preparation of these notices. Belle Tire shall provide, or cause to be provided, courtesy copies of the notices to Class Counsel for the purpose of implementing the

10

settlement. The Settlement Administrator shall provide notice to Class Counsel of compliance with the CAFA requirements within ten (10) days of providing notice to Attorneys General under CAFA.

## Administration of the Settlement

32.    The Court hereby appoints the settlement administrator proposed by the parties, Simpluris, Inc. (the "Settlement Administrator"). Responsibilities of the Settlement Administrator shall include: (a) establishing a post office box for purposes of communicating with Settlement Class Members; (b) disseminating notice to the Class; (c) developing a website to enable Settlement Class Members to access documents; (d) accepting and maintaining documents sent from Settlement Class Members relating to claims administration; and (e) distributing settlement checks to Settlement Class Members. Pursuant to the Settlement Agreement, the Settlement Administrator and costs of administration shall be paid by Belle Tire.

33.    In the event the Settlement Agreement and the Settlement are terminated in accordance with the applicable provisions of the Settlement Agreement—the Settlement Agreement, the Settlement, and all related proceedings shall, except as expressly provided to the contrary in the Settlement Agreement, become null and void, shall have no further force and effect, and Settlement Class Members shall retain all of their current rights to assert any and all claims against Belle Tire and any other Released Entity, and Belle Tire and any other Released

11

Entities shall retain any and all of their current defenses and arguments thereto. The Litigation shall thereupon revert forthwith to its respective procedural and substantive status prior to the date of execution of the Settlement Agreement and shall proceed as if the Settlement Agreement and all other related orders and papers had not been executed.

34.   Neither this Order nor the Settlement Agreement nor any other settlement-related document nor anything contained herein or therein or contemplated hereby or thereby nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement or herein or in any other settlement-related document, shall constitute, be construed as or be deemed to be evidence of or an admission or concession by Belle Tire as to the validity of any claim that has been or could have been asserted against it or as to any liability by it as to any matter set forth in this Order, or as to the propriety of class certification for any purposes other than for purposes of the current Settlement.

**IT IS SO ORDERED.**

Dated: _____          _____
                                     The Honorable Matthew F. Leitman
                                     United States District Court Judge

# Exhibit E

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
MICHIGAN SOUTHERN DIVISION**

| | |
|---|---|
| *In re Belle Tire Distributors, Inc. Data Breach Litigation* | Case No. 2:24-cv-12966-MFL-CI |
| | Hon. Matthew F. Leitman |
| | **CLASS ACTION** |

**[PROPOSED] FINAL APPROVAL ORDER GRANTING
PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND APPLICATION FOR
ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

WHEREAS, Plaintiffs Tabbitha Berry, Hamza Yaser Algharably, Zachary Loafman, Anthony Georges, and Zach Travis submitted to the Court an Unopposed Motion for Final Approval of Class Settlement Action Settlement and Application for Attorneys' Fees, Costs, and Service Awards [ECF No.__];

WHEREAS, on _____, 2026, the Court entered its Preliminary Approval Order, which, *inter alia*: (1) preliminarily approved the Settlement; (2) determined that, for purposes of the Settlement only, the Action should proceed as a class action and certified the Settlement Class; (3) appointed Plaintiffs Tabbitha Berry, Hamza Yaser Algharably, Zachary Loafman, Anthony Georges, and Zach Travis as Class Representatives; (4) appointed E. Powell Miller of The Miller Law Firm, P.C., Casondra R. Turner of Milberg, PLLC and Scott Edward Cole of Cole & Van Note as Class Counsel; (5) appointed Simpluris, Inc. as the Settlement

1

Administrator; (6) approved the form and manner of Notice and the Notice Program; (7) approved the Claim Process and Claim Form; and (8) set the Final Approval Hearing date;

WHEREAS, thereafter, Notice was provided to the Settlement Class in accordance with the Court's Preliminary Approval Order by Postcard Notice and the Long Form Notice was available to Settlement Class Members on the Settlement Website or on request to the Settlement Administrator;

WHEREAS, a notice of settlement was timely mailed to governmental entities as provided for under 28 U.S.C. § 1715;

WHEREAS, on _____, 2026, the Court held a Final Approval Hearing to determine whether the Settlement was fair, reasonable, and adequate, and to consider the Application for Attorneys' Fees, Costs, and Service Awards;

WHEREAS, based on the foregoing, having considered the papers filed and proceedings held in connection with the Settlement, having considered all of the other files, records, and proceedings in the Action, and being otherwise fully advised;

**IT IS HEREBY ORDERED AND ADJUDGED** as follows:

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) and personal jurisdiction over all Parties to the Action, including all Settlement Class Members.

2

2.     This Final Approval Order incorporates herein the definitions from set forth in the Settlement Agreement, attached as Exhibit A to the Motion for Final Approval.

3.     The Notice provided to the Settlement Class was the best notice practicable under the circumstances and constituted due and sufficient notice of the proceedings and matters set forth therein to all persons entitled to notice. The Notice and Notice Program fully satisfied the requirements of due process, Federal Rule of Civil Procedure 23, and all other applicable law and rules. The Claim Process is also fair, and the Claim Form is easily understandable.

4.     The Settlement is in all respects fair, reasonable, and adequate, after considering all of the Federal Rule of Civil Procedure 23(e)(2) factors and the Sixth Circuit's traditional factors in *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007), highlighted by evidence that: (a) there was no fraud or collusion in negotiating the Settlement with the assistance of a qualified mediator; (b) the complexity, expense, and likely duration of the litigation; (c) the stage of the proceedings and the amount of discovery completed; (d) the risks of establishing liability, damages, and maintaining the class action through trial; (e) the reaction of the Settlement Class to the Settlement; (f) Class Counsel's and the Class Representatives' supporting opinions about the Settlement; and (g) the public interest in approving the

3

Settlement. The Settlement was made based on a record that is sufficiently developed and complete to have enabled the Parties to adequately evaluate and consider their positions.

5. In finding the Settlement fair, reasonable, and adequate, the Court has also considered the opinion of competent counsel, as well as the indication of an overwhelming positive reaction from the Settlement Class given the total number of Claims made, that there were __ objection(s) to the Settlement filed, and that only __ opt-outs were submitted. A list of the individuals who have opted-out of the Settlement, if any, is attached hereto as *Exhibit A*. Those individuals will not be bound by the Settlement Agreement and Releases contained therein.

6. Based on the information presented to the Court, the Claim Process has proceeded consistent with the Agreement and the Preliminary Approval Order. All Settlement Class Members who submitted Valid Claims shall receive their Settlement Class Member Benefits pursuant to the Settlement's terms. All Settlement Class Members who did not submit a Claim, or for whom the Claim is determined to be invalid, shall still be bound by the terms of the Settlement and Releases therein.

7. The allocation and distribution plan for Settlement Class Member Benefits proposed by the Parties in the Agreement is fair, reasonable, and adequate.

8. The Class Representatives and Class Counsel have fairly and adequately represented and will continue to adequately represent and protect the

4

interests of Settlement Class Members in connection with the Settlement.

9.     Because the Court grants Final Approval of the Settlement set forth in the Agreement and finds it to be fair, reasonable, and adequate, the Court authorizes and directs implementation of all terms and provisions of the Settlement.

10.     All Parties to this Action, including all Settlement Class Members, are bound by the Settlement as set forth in the Agreement and this Order.

11.     The appointment of Plaintiffs Tabbitha Berry, Hamza Yaser Algharably, Zachary Loafman, Anthony Georges, and Zach Travis as Class Representatives is affirmed.

12.     The appointment of E. Powell Miller of The Miller Law Firm, P.C., Casondra R. Turner of Milberg, PLLC and Scott Edward Cole of Cole & Van Note as Class Counsel is affirmed.

13.     The Court appointment of Simpluris, Inc. as the Settlement Administrator is affirmed.

14.     The Court affirms its findings that the Settlement Class meets the relevant requirements of Fed. R. Civ. P. 23(a) and (b)(3) for only the purposes of the Settlement in that (1) the number of members of the Settlement Class is so numerous that joinder is impracticable; (2) there are questions of law and fact common to the members of the Settlement Class; (3) the claims of the Plaintiffs are typical of the claims of the members of the Settlement Class; (4) the Plaintiffs are adequate

representatives for the Settlement Class, and have retained experienced and adequate Class Counsel; (5) the questions of law and fact common to the members of the Settlement Class predominate over any questions affecting any individual members of the Settlement Class; and (6) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy.

15. Therefore, the Court finally certifies the following Settlement Class:

> All individuals whose Private Information was exposed to unauthorized third parties as a result of the Data Security Incident discovered by Defendant on or before June 11, 2024.

Excluded from the Settlement Class are all persons who are: (a) directors, officers, and employees of Defendants; (b) the Judge assigned to the Action, that Judge's immediate family, and Court staff; (c) any Settlement Class Member who timely and validly opts-out of the Settlement; and (d) any individual who timely and validly opts-out of the Settlement.

16. Judgment shall be, and hereby is, entered dismissing the Action with prejudice.

17. As of the Effective Date, and in exchange for the relief described in the Settlement, the Releasing Parties shall be deemed to have, and by operation of the Final Approval Order shall have, fully, finally, and forever released, acquitted, relinquished, and completely discharged the Released Parties from any and all Released Claims.

6

18.     In consideration for this Agreement and the consideration set forth therein, the Releasing Parties hereby release the Released Parties from the Released Claims.

19.     If, consistent with the plan of distribution set forth in the Settlement, there are funds remaining in the Settlement Fund 20 days following the 180-day check negotiation period, any remaining funds shall be distributed to __, which the Court approves as the *cy pres* recipient.

20.     Pursuant to Federal Rule of Civil Procedure 23(h), Class Counsel is awarded $300,000.00 for Attorneys' Fees and Litigation Costs.

21.     These payments shall be made out of the Settlement Fund in accordance with the Agreement. Class Counsel have sole responsibility, within Class Counsel's discretion, to allocate and distribute attorneys' fees among Plaintiffs' counsel. The Court evaluated Class Counsel's request applying, among other considerations, the percentage of the common fund method and concludes that amount is within the range of reason.

22.     The Class Representatives are each awarded $1,250.00 Service Awards. The Service Awards shall be payable out of the Settlement Fund in accordance with the Agreement.

23.     Plaintiffs and all Settlement Class members and Releasing Parties, and persons purporting to act on their behalf, are permanently enjoined from

7

commencing or prosecuting (either directly, representatively, or in any other capacity) any of the Released Claims against any of the Released Parties in any action or proceeding in any court, arbitration forum, or tribunal.

24.    The Court hereby retains and reserves jurisdiction over: (a) implementation of this Settlement and any distributions to the Settlement Class Members; (b) the Action, until the Effective Date, and until each and every act agreed to be performed by the Parties shall have been performed pursuant to the terms of the Agreement, including the exhibits appended thereto; and (c) all Parties, for the purpose of enforcing and administering the Settlement.

25.    In the event the Effective Date of the Settlement does not occur, the Settlement shall be rendered null and void to the extent provided by and in accordance with the Agreement, and this Final Approval Order and any other order entered by this Court in accordance with the terms of the Agreement shall be vacated, *nunc pro tunc*.

26.    There being no just reason for delay, the Clerk of Court is hereby directed to enter final judgment forthwith pursuant to Federal Rules of Civil Procedure 58.

IT IS SO ORDERED on_____, 2026.

_____
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

8

# EXHIBIT A

## Opt-Out List

1.

2.

# Exhibit 2

# THE MILLER LAW FIRM

## A Professional Corporation

950 W. University Dr., Ste. 300
Rochester, MI  48307
(248) 841-2200

**www.millerlawpc.com**

# THE MILLER LAW FIRM, P.C. | FIRM RESUME

The Miller Law Firm, P.C. (the "Firm") is one of the premier litigation law firms in the United States and Michigan's leading class action firm.  A recognized leader in the area of complex commercial litigation, the Firm is ranked Tier 1 in Detroit by *U.S. News-Best Lawyers* "Best Law Firms" for commercial litigation.  Since the Firm's founding in 1993, the Firm has developed a national reputation for successfully prosecuting securities fraud and consumer class actions on behalf of its clients.  As Lead Counsel or Co-Lead Counsel appointed by judges throughout the United States in some of the country's largest and most complex cases, the Firm has achieved over $3 billion in settlements, recoveries and/or verdicts on behalf of injured class members.

## Highlights of Results Obtained

2025        *In re Healthec LLC Data Breach Litigation*
            (United States District Court, New Jersey)
            (Case No. 2:24-cv-00026) (PSC Member)

            Result:   $5.5 million settlement value

            *In re Chevrolet Bolt EV Battery Litigation*
            (United States District Court, Eastern District of Michigan)
            (Case No. 2:20-cv-13256) (Co-Lead Class Counsel)

            Result:   $150 million settlement value

            *McClain v. Henry Ford Health*
            (Wayne County Circuit Court)
            (Case No. 2025-000801-CZ)

            Result:  approx. $12.3 million settlement value

            *White v. FCA US LLC*
            (United States District Court, Eastern District of Michigan)
            (Case No. 4:21-cv-11696) (Co-Lead Class Counsel)

            Result:  $96 million settlement value

            *Chapman v. General Motors LLC*
            (United States District Court, Eastern District of Michigan)
            (Case No. 2:19-cv-12333) (Class Counsel)

            Result:  $50 million settlement

2024        *Ubillus v. Progressive Marathon Ins. Co.*

(Washtenaw Circuit Court)
(Case No. 19-000741) (Class Counsel)
Result: $61 million settlement

*In re: Henry Ford Health System Data Security Litigation*
(United States District Court, Eastern District of Michigan)
(Case No. 2:23-cv-12520) (Class Counsel)

Result: $700,000 settlement

*In re Wright & Filippis, LLC Data Security Breach Litigation*
(United States District Court, Eastern District of Michigan)
(Case No. 2:22-cv-12908) (Chair of Class Counsel)

Result: $2.9 million settlement

*Schreiber v. Mayo Found. for Medical Education and Research*
(United States District Court, Western District of Michigan)
(Case No. 2:22-cv-00188) (Class Counsel)

Result: $52.5 million settlement

*Pratt v. KSE Sportsman Media, Inc.*
(United States District Court, Eastern District of Michigan)
(Case No. 1:21-cv-11404) (Class Counsel)

Result: $9.5 million settlement

2023  *Cooper (nee Zimmerman) v. The 3M Company and Wolverine*
(United States District Court, Western District of Michigan)
(Case No. 1:17-cv-01062) (Co-Lead Counsel)

Result: $54 million settlement

*Reynolds v. FCA*
(United States District Court, Eastern District of Michigan)
(Case No. 2:19-cv-11745) (Co-Lead Counsel)

Result: Over $30 million settlement value

*Kain v. The Economist Newspaper NA, Inc.*
(United States District Court, Eastern District of Michigan)
(Case No. 4:21-cv-11807) (Co-Lead Counsel)

Result: $9.5 million settlement

*Ketover v. Kiplinger Washington Editors, Inc.*

(United States District Court, Eastern District of Michigan)
(Case No. 1:21-cv-12987) (Class Counsel)

Result: $6.8 million settlement

*Moeller v. The Week Publications, Inc.*
(United States District Court, Eastern District of Michigan)
(Case No. 1:22-cv-10666) (Class Counsel)

Result: $5.1 million settlement

*Thomsen v. Morley*
(United States District Court, Eastern District of Michigan)
(Case No. 1:22-cv-10271) (Plaintiffs' Executive Committee)

Result:  $4.3 million settlement

2022  *In re; National Prescription Opiate Litigation (CVS, Walgreens and Walmart retail pharmacy and two manufacturers Allergan and Teva)*
(United States District Court, Northern District Ohio, MDL Court)
(Case No. 1:17-md-2804) (Represented several Michigan counties who were parties to and benefited from the global settlement)

Result:  $18.5 billion global settlement plus Narcan or additional cash from Teva

*In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.*,
(United States District Court, District of Kansas)
(Case No. 2:17-md-02785) (Plaintiffs' Steering Committee)

Result:    $609 million in settlements

*Wood, et al. v. FCA US LLC*
(United States District Court, Eastern District of Michigan)
(Case No. 5:20-cv-11054) (Co-Lead Counsel)

Result:    Over $108 million settlement value

*Persad, et al. v. Ford Motor Company*
(United States District Court, Eastern District of Michigan)
(Case No. 2:17-cv-12599) (Co-Lead Counsel)

Result:   Over $42 million settlement value

*Loftus v. Outside Integrated Media, LLC*
(United States District Court, Eastern District of Michigan)
(Case No. 2:21-cv-11809) (Co-Lead Counsel)

Result:   Approximately $1 million settlement

*Graham, et al. v. University of Michigan, et al.*,
(United States District Court, Eastern District of Michigan)
(Case No. 2:21-cv-11168) (Co-Lead Counsel)

Result:   Injunctive relief settlement mandating University reforms to address and prevent sexual misconduct

John Doe MC-1 v. University of Michigan, et. al.
(United States District Court, Eastern District of Michigan)
(Case No. 2:20-cv-10568) (Represented several victims of sexual abuse in private, confidential settlement)

Result:  Confidential settlement

**2021**  *In re; National Prescription Opiate Litigation (Distributor and Manufacturer Janssen Pharmaceuticals Settlement)*
(United States District Court, Northern District of Ohio, MDL Court)
(Case No. 1:17-md-2804) (Represented several Michigan counties who were parties to and benefited from the global settlement.)

Result:  $26 billion global settlement

*Simmons, et al. v. Apple, Inc.*
(Superior Court of the State of California, County of Santa Clara)
(Case No. 17CV312251) (Co-Lead Counsel)

Result:   $9.75 million settlement

*Dougherty v Esperion Therapeutics, Inc., et. Al.*
(United States District Court, Eastern District of Michigan)
(Case No. 2:16-cv-10089) (Local Counsel)

Result:  $18.25 million settlement

*In re Broiler Chicken Antitrust Litigation*
(United States District Court, Northern District of Illinois, Eastern Division) (Case No. 1:16-cv-08637)

Result:  $93.5 million in settlements in 2021

**2020**  *In re Resistors Antitrust Litigation*
(United States District Court, Northern District of California)
(Case No. 3:15-cv-03820) (Informal member of Steering Committee)

Result:  $33.4 million in settlements in 2020

*In re Capacitors Antitrust Litigation*
(United States District Court, Northern District of California)
(Case No. 03:17-md-02801) (Informal member of Steering
Committee)

Result: $30.95 million in settlements in 2020

2019    *Carl Palazzolo, et al. Fiat Chrysler Automobiles N.V., et al.*
(United States District Court, Eastern District of Michigan)
(Case No. 16-cv-12803) (Co-Lead Counsel)

Result: $14.75 million settlement

*Zimmerman v. Diplomat Pharmacy, Inc., et al.*
(United States District Court, Eastern District of Michigan)
(Case No. 2:16-cv-14005) (Liaison Counsel)

Result: $14.1 million settlement

2018    *In re Freight Forwarders Antitrust Litigation*
(United States District Court, Eastern District of New York)
(Case No. 08-cv-00042) (Counsel for Class Representative)

Result: $1 billion settlement

2017    *Foster v. L3 Communications, EO Tech*
(United States District Court, Western District of Missouri)
(Case No. 15-cv-03519) (Co-Lead Counsel)

Result: $51 million settlement (100% recovery)

2016    *In re Automotive Parts Antitrust Litigation*
(United States District Court, Eastern District of Michigan)
(Case No. 12-md-02311) (Liaison Counsel)

Result: Over $1 billion in settlements

*GM Securities Class Action/New York Teachers Retirement System v.
General Motors Company*
(United States District Court, Eastern District of Michigan)
(Case No. 4:14-cv-11191) (Local Counsel)

Result: $300 million settlement

*ERISA Class Action/Davidson v. Henkel Corporation*
(United Sates District Court, Eastern District of Michigan)
(Case No. 12-cv-14103) (Lead Counsel)

Result: $3.35 million settlement (100% Recovery for 41-member class)

*Pat Cason-Merenda and Jeffrey A. Suhre v. VHS of Michigan, Inc.,
dba Detroit Medical Center (Antitrust)*
(United States District Court, Eastern District of Michigan)
(Case No. 2:06-cv-15601) (Special Trial Counsel)

Result: $42 million settlement

2015     *In re AIG 2008 Securities Litigation*
(United States District Court, Southern District of New York)
(Case No. 08-cv-04772) (Co-Lead Counsel)

Result: $970.5 million settlement

2014     *City of Farmington Hills Employees Retirement System v. Wells
Fargo Bank, N.A.*
(United States District Court, District of Minnesota)
(Case No. 10-cv-04372) (Co-Lead Counsel and Primary Trial Counsel)

Result: $62.5 million settlement

*The Shane Group, Inc., et al. v. Blue Cross Blue Shield of Michigan*
(United States District Court, Eastern District of Michigan)
(Case No. 2:10-cv-14360) (Co-Lead Counsel)

Result: $30 million settlement

*In re Refrigerant Compressors Antitrust Litigation*
(United States District Court, Eastern District of Michigan)
(Case No. 09-md-02042) (Co-Lead Counsel)

Result: $30 million settlement

2013     *The Board of Trustees of the City of Birmingham Employees et. al. v.
Comerica Bank et. al.*
(United States District Court, Eastern District of Michigan)
(Case No. 2:09-13201) (Co-Lead Counsel)

Result: $11 million settlement

*In Re Caraco Pharmaceutical Laboratories, Ltd. Securities Litigation*
(United States District Court, Eastern District of Michigan)

(Case No. 2:09-cv-12830) (Co-Lead Counsel)

Result:  $2.975 million settlement

*In Re TechTeam Global Inc. Shareholder Litigation*
(Oakland County Circuit Court, State of Michigan)
(Case No. 10-114863-CB)  (Liaison Counsel)

Result:  $1.775 million settlement

*General Retirement System of the City of Detroit and Police and Fire Retirement System of the City of Detroit vs. UBS Securities, LLC (Structured Investment Vehicle)*
(United States District Court, Eastern District of Michigan)
(Case No. 2:10-cv-13920) (Lead Counsel)

Result:   Confidential settlement

2010   *Epstein, et al. v. Heartland Industrial Partners, L.P., et al.*
(United States District Court, Eastern District of Michigan)
(Case No. 2:06-CV-13555) (Substantial role)

Result:  $12.2 million settlement

*In Re Skilled Healthcare Group, Inc. Securities Litigation*
(United States District Court, Central District of California)
(Case No. 09-5416) (Substantial role)

Result:  $3 million settlement

2009   *In Re Proquest Company Securities Litigation*
(United States District Court, Eastern District of Michigan)
(Case No. 4:06-CV-11579) (Substantial role; argued Motion to Dismiss)

Result:  $20 million settlement

*In Re Collins & Aikman Corporation Securities Litigation*
(United States District Court, Eastern District Michigan)
(Case No. 03-CV-71173) (Substantial role)

Result:  $10.8 million settlement

*In re IT Group Securities Litigation*
(United States District Court, Western District of Pennsylvania)
(Civil Action No. 03-288) (Co-Lead Counsel)

Result:  $3.4 million settlement

2008        *In re Mercury Interactive Securities Litigation*
            (United States District Court, Northern District of California)
            (Civil Action No. 03:05-CV-3395-JF) (Substantial role)

            Result:  $117 million settlement

            *In Re General Motors Corporation Securities and Derivative Litigation*
            (United States District Court, Eastern District of Michigan)
            (Master Case No. 06-MD-1749) (Co-Lead Counsel)

            Status: Obtained major corporate governance reforms to address accounting
            deficiencies

2007        *Wong v. T-Mobile USA, Inc.*
            (United States District Court, Eastern District of Michigan)
            (Case No. 05-CV-73922) (Co-Lead)

            Result:  Settlement for 100% of damages

            *In re CMS Energy Corporation Securities Litigation*
            (United States District Court, Eastern District Michigan)
            (Master File No. 2:02 CV 72004) (Substantial role)

            Result:  $200 million settlement

2005        *In re Comerica Securities Fraud Litigation*
            (United States District Court, Eastern District of Michigan)
            (Case No. 2:02-CV-60233) (Substantial role)

            Result:  $21 million in total settlements

            *Street v. Siemens*
            (Philadelphia State Court)
            (Case No. 03-885) (Co-Lead Counsel)

            Result:  $14.4 million (100% recovery)

            *Redmer v. Tournament Players Club of Michigan*
            (Wayne County Circuit Court) (Case No. 02-224481-CK) (Co-Lead)

            Result:  $3.1 million settlement

2004        *Passucci v. Airtouch Communications, Inc.*
            (Wayne County Circuit Court) (Case No. 01-131048-CP) (Co-Lead)

Result:  Estimated settlement value between $30.9 and $40.3 million

*Johnson v. National Western Life Insurance*
(Oakland County Circuit Court)
(Case No. 01-032012-CP) (Substantial role)

Result:  $10.7 million settlement

2003    *Felts v. Starlight*
(United States District Court, Eastern District Michigan)
(Case No. 01-71539) (Co-Lead)

Result: Starlight agrees to stop selling ephedrine as an ingredient in its weight loss dietary supplement product

*In re Lason Securities Litigation*
(United States District Court, Eastern District Michigan)
(Case No. 99-CV-76079) (Co-Lead)

Result: $12.68 million settlement

2001    *Mario Gasperoni, et al. v. Metabolife International, Inc.*
(United States District Court, Eastern District Michigan)
(Case No. 00-71255) (Co-Lead)

Result: Nationwide settlement approved mandating changes in advertising and labeling on millions of bottles of dietary supplement, plus approximately $8.5 million in benefits

1999    *Pop v. Art Van Furniture and Alexander Hamilton Insurance Company*
(Wayne County Circuit Court) (Case No. 97-722003-CP) (Co-Lead)

Result: Changes in sales practices and $9 million in merchandise.

*Schroff v. Bombardier*
(United States District Court, Eastern District Michigan)
(Case No. 99-70327) (Co-Lead)

Result:  Recall of more than 20,000 defective Seadoos throughout North America; repair of defect to reduce water ingestion problem; extended warranties; and approximately $4 million in merchandise.

*In re National Techteam Securities Litigation*
(United States District Court, Eastern District Michigan)
(Master File No.  97-74587) (Substantial role)

Result:  $11 million settlement

*In Re F&M Distributors, Inc., Securities Litigation*
(United States District Court, Eastern District Michigan)
(Case No. 95-CV-71778-DT) (Minor role)

Result:  $20 million settlement

1998    *In Re Michigan National Corporation Securities Litigation*
(United States District Court, Eastern District Michigan)
(Case No 95 CV 70647 DT) (Substantial role)

Result:  $13.3 million settlement

1995    *In re Intel Pentium Processor Litigation*
(Superior Court, Santa Clara County, California) (Master File No. 745729)
(Substantial role)

Result: Intel agreed to replace millions of defective Pentium chips on demand without any cost to consumers



**ROCHESTER**
950 W. UNIVERSITY DR.
SUITE 300
ROCHESTER, MI 48307

**DETROIT**
211 WEST FORT STREET
SUITE 705
DETROIT, MI 48226

248-841-2200  |  WWW.MILLER.LAW

# E. POWELL MILLER, PARTNER

✉ **EPM**@millerlawpc.com



Powell Miller has been recognized as Michigan's number one ranked attorney by Super Lawyers Magazine for 2020.  He has also been named one of the Top 10 lawyers in Michigan for seventeen consecutive years, from 2009-2025, by Super Lawyers Magazine, and in 2010, 2015, 2019, 2020, and 2024 he was the recipient of the Best Lawyers – Lawyer of the Year in the category of Bet-The-Company Litigation. In 2017, Mr. Miller was the recipient of the Judge Friedman and Cook Civility Award, which is awarded to only one lawyer each year. In 2024, he received the Professionalism Award from the Oakland County Bar Association. He has been named as one of the Best Lawyers in America every year since 2005. Mr. Miller has earned Martindale-Hubbell's highest rating, AV® Preeminent™ 5/5.0 for legal ethics and ability and a 10/10 from AVVO a public rating system. Mr. Miller is also ranked as only one of nine in Michigan to receive the highest Band 1 rating by Chambers USA, describing Mr. Miller as a "superb trial lawyer" who "routinely acts for high-profile clients based across the [United] states."

Mr. Miller focuses his practice on all aspects of litigation. He has been retained by many Fortune 500 and other clients to represent them in litigation throughout the United States, including in Michigan, New York, New Jersey, Pennsylvania, Arkansas, Florida, Texas, Kentucky, Ohio, California, Colorado, Indiana, and Illinois.

Mr. Miller recently led the trial team and secured a significant victory in a closely followed defamation trial. After more than five years of litigation and a demand for tens of millions of dollars in damages, the court granted a directed verdict in favor of Mr. Miller's clients immediately following plaintiff's case-in-chief. Mr. Miller also previously prevailed in an arbitration against Jimmy Johns in the amount of $4.8 million including a $1 million attorney fee award. In October 2019, Mr. Miller defended a consumer goods manufacturer against plaintiffs asserting complex price discrimination and antitrust claims, and alleging millions of dollars in damages. Following a three-week trial and seven hours of deliberations, a California jury returned a unanimous verdict in favor of Mr. Miller's client. Mr. Miller has never lost a trial, and has obtained verdicts in excess of $5 million, $10 million and $23 million.

Mr. Miller has also obtained in excess of $10 billion in settlements for class members, consumers, and governmental entities. These settlements, including a $970.5 million settlement with AIG in 2015, are regularly among the largest settlements in Michigan and the United States.

Mr. Miller has previously served as Co-President of the Detroit Chapter of the Federal Bar Association Antitrust and Securities Committees. He also serves on the Executive Committee for the Wayne State University Law School Board of Visitors, has served a Co-Chair of the American Bar Association Procedures Subcommittee on class actions and multi-district litigation, and serves as a Master member of The Oakland County Bar Association Inns of Court.

In 2024, Mr. Miller taught the inaugural Class Actions and Multidistrict Litigations course at Wayne State University Law School. He has also previously lectured on securities litigation at the University of Michigan

248-841-2200  |  WWW.MILLER.LAW

School of Law and also served as an Adjunct Professor at the University of Detroit Law School teaching trial practice.

Mr. Miller graduated third in his class from Wayne State University Law School, magna cum laude, in 1986. He was named to the honor society, Order of the Coif, and he was an Editor of the Wayne Law Review. In 1986, Mr. Miller joined the Detroit law firm of Honigman Miller Schwartz and Cohn, where he was elected partner in 1990. In 1994, he formed his own firm.

Mr. Miller has been recognized as a top debater in the United States. He won first place at the Harvard University National Debate Tournament as a freshman at Georgetown University. He also represented Georgetown in a special international debating exhibition against the Oxford Debating Union of Great Britain.

Mr. Miller is a proud supporter of the Detroit Urban Debate League, a nonprofit that supports the creation of debate programs in under-served high schools; the University of Detroit Jesuit High School and Academy; The Joe Niekro Foundation, which is committed to aiding in the research and treatment of aneurysm patients and families; and Charlotte's Wings, a nonprofit that is dedicated to supporting ailing children in Southeast Michigan through donations of new books to the children and their families in hospital and hospice care.

**EDUCATION:**

**UNIVERSITY OF DETROIT JESUIT HIGH SCHOOL, 1979**

**GEORGETOWN UNIVERSITY, B.A., 1983**

**WAYNE STATE UNIVERSITY LAW SCHOOL, J.D., 1986**



# Exhibit 3



# FIRM RESUME

# &

# BIOGRAPHY OF CASONDRA R. TURNER



Milberg, PLLC ("Milberg") is an AV-rated international law firm with dozens of attorneys and offices across the United States and the European Union. Founded in 1965, Milberg has recovered over $50 billion for our clients. Milberg prides itself on providing thoughtful and knowledgeable legal services to clients worldwide across multiple practice areas.

The firm represents plaintiffs in the areas of antitrust, securities, financial fraud, consumer protection, automobile emissions claims, defective drugs and devices, environmental litigation, financial and insurance litigation, and cyber law and data security. Milberg has a prominent data privacy practice group that has repeatedly secured class settlements and appellate victories, which have shaped data privacy litigation.

For 60 years, Milberg and its affiliates have been protecting victims' rights. Our attorneys possess a renowned depth of legal expertise, employ the highest ethical and legal standards, and pride ourselves on providing stellar service to our clients. We have repeatedly been recognized as leaders in the plaintiffs' bar and appointed to numerous leadership roles in prominent national mass torts and class actions.

*Milberg challenges corporate wrongdoing through class action, mass tort, consumer and shareholder right services, both domestically and globally.*

In the United States, Milberg currently holds more than 100 court-appointed full- and co-leadership positions in state and federal courts across the country. Our firm has offices in California, Chicago, Florida, Georgia, Illinois, Kentucky, Louisiana, Mississippi, New Jersey, New York, North Carolina, South Carolina, Tennessee, Washington, Washington D.C., and Puerto Rico. Milberg's commitment to its clients reaches beyond the United States, litigating antitrust, securities, and consumer fraud actions in Europe and South America, with offices located in the United Kingdom, and the Netherlands. Milberg prides itself on providing excellent service worldwide.

The firm's lawyers have been regularly recognized as leaders in the plaintiffs' bar by the National Law Journal, Legal 500, Chambers USA, Time Magazine, Lawdragon, and Super Lawyers, among others.

*"A powerhouse that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers."*
- THE NEW YORK TIMES

www.milberg.com

2

# PRACTICE AREAS

## SECURITIES FRAUD

Milberg pioneered the use of class action lawsuits to litigate claims involving investment products, securities, and the banking industry. Fifty years ago, the firm set the standard for case theories, organization, discovery, methods of settlement, and amounts recovered for clients. Milberg remains among the most influential securities litigators in the United States and internationally.

Milberg and its attorneys were appointed Lead Counsel and Co-Lead Counsel in hundreds of federal, state, and multidistrict litigation cases throughout its history.

## ANTITRUST & COMPETITION LAW

For over fifty years, Milberg's Antitrust Practice Group has prosecuted complex antitrust class actions against defendants in the healthcare, technology, agriculture, and manufacturing industries engaged in price-fixing, monopolization and other violations of antitrust law and trade restraints.

## FINANCIAL LITIGATION

For over fifty years, Milberg's Antitrust Practice Group has prosecuted complex antitrust class actions against defendants in the healthcare, technology, agriculture, and manufacturing industries engaged in price-fixing, monopolization and other violations of antitrust law and trade restraints.

## CONSUMER PROTECTION

Milberg's Consumer Protection Practice Group focuses on improving product safety and protecting those who have fallen victim to deceptive marketing and advertising of goods and services and/or purchased defective products. Milberg attorneys have served as Lead Counsel and Co-Lead Counsel in hundreds of federal, state, and multidistrict litigation cases alleging the sale of defective products, improper marketing of products, and violations of consumer protection statutes.

## DANGEROUS DRUGS & DEVICES

Milberg is a nationally renowned firm in mass torts, fighting some of the largest, wealthiest, and most influential pharmaceutical and device companies and corporate entities in the world. Our experienced team of attorneys has led or co-led numerous multidistrict litigations of defective drugs and medical devices.

## EMPLOYMENT & CIVIL RIGHTS

Milberg's Employment & Civil Rights attorneys focus on class actions and individual cases nationwide arising from discriminatory banking and housing practices, unpaid wages and sales commissions, improperly managed retirement benefits, workplace discrimination, and wrongful termination.

## ENVIRONMENTAL LITIGATION & TOXIC TORTS

Milberg's Environmental Litigation & Toxic Torts Practice Group focuses on representing clients in mass torts, class actions, multi-district litigation, regulatory enforcement, citizen suits, and other complex environmental and toxic tort matters. Milberg and its attorneys have held leadership roles in all facets of litigation in coordinated proceedings, with a particular focus on developing the building blocks to establish general causation, which is often the most difficult obstacle in an environmental or toxic tort case.

## STATE & LOCAL GOVERNMENTS

Milberg attorneys are dedicated to defending the Constitutional and statutory rights of individuals and businesses that are subjected to unlawful government exactions and fees by state and local governments or bodies.

## INFORMATION TECHNOLOGY

Milberg is a leader in the fields of cyber security, data breach litigation, and biometric data collection, litigating on behalf of clients — both large and small — to change data security practices so that large corporations respect and safeguard consumers' personal data.

## APPELLATE

Consisting of former appellate judges, experienced appellate advocates, and former law clerks who understand how best to present compelling arguments to judges on appeal and secure justice for our clients beyond the trial courts, Milberg's Appellate Practice Group boasts an impressive record of success on appeal in both state and federal courts.

## LEADERSHIP ROLES

In re: Google Play Consumer Antitrust Litigation

In re: Elmiron (Pentosan Polysulfate Sodium) Products Liability Litigation

In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices & Products Liability Litigation

In re: Blackbaud Inc., Customer Data Breach Litigation

In re: Paragard IUD Products Liability Litigation

In re: Seresto Flea & Tick Collar, Marketing Sales Practices & Product Liability Litigation

In re: All-Clad Metalcrafters, LLC, Cookware Marketing and Sales Practices Litigation

In re: Allergan Biocell Textured Breast Implant Products Liability Litigation

In re: Zicam Cold Remedy Marketing, Sales Practices and Products Liability Litigation

In re: Guidant Corp. Implantable Defibrillators Product Liability Litigation

In re: Ortho Evra Products Liability Litigation

In re: Yasmin and YAZ (Drospirenone) Marketing, Sales Practices and Products Liability Litigation

In re: Kugel Mesh Hernia Patch Products Liability Litigation

In re: Medtronic, Inc. Sprint Fidelis Leads Products Liability Litigation

In re: Stand 'N Seal Products Liability Litigation

In re: Chantix (Varenicline) Products Liability Litigation

In re: Fosamax (alendronate Sodium) Products Liability Litigation

In re: Benicar (Olmesartan) Products Liability Litigation

In re: Onglyza (Saxagliptin) & Kombiglyze Xr (Saxagliptin & Metformin) Products Liability Litigation

In re: Risperdal and Invega Product Liability Cases

In re: Mirena IUS Levonorgestrel-Related Products Liability Litigation

In re: Incretin-based Therapies Product Liability Litigation

In re: Reglan/Metoclopromide

In re: Levaquin Products Liability Litigation

In re: Zimmer Nexgen Knee Implant Products Liability Litigation

In re: Fresenius Granuflo/NaturaLyte Dialysate Products Liability Litigation

In re: Propecia (Finasteride) Products Liability Litigation

In re: Transvaginal Mesh (In Re C. R. Bard, Inc., Pelvic Repair System Products Liability Litigation; In Re Ethicon, Inc., Pelvic Repair System Products Liability Litigation; In Re Boston Scientific, Inc., Pelvic Repair System Products Liability; In Re American Medical Systems, Pelvic Repair System Products Liability, and others)

In re: Fluoroquinolone Product Liability Litigation

In re: Depuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liability Litigation

In re: Recalled Abbott Infant Formula Products Liability Litigation

Home Depot, U.S.A., Inc. v. Jackson

Webb v. Injured Workers Pharmacy, LLC

# NOTABLE RECOVERIES

## $4 Billion Settlement

In re: Prudential Insurance Co. Sales Practice Litigation

## $3.2 Billion Settlement

In re: Tyco International Ltd., Securities Litigation

## $1.14 Billion Settlement

In Re: Nortel Networks Corp. Securities Litigation

## $1 Billion-plus Trial Verdict

Vivendi Universal, S.A. Securities Litigation

## $1 Billion Settlement

NASDAQ Market-Makers Antitrust Litigation

## $1 Billion Settlement

W.R. Grace & Co.

## $1 Billion-plus Settlement

Merck & Co., Inc. Securities Litigation

## $775 Million Settlement

Washington Public Power Supply System Securities Litigation

## $586 Million Settlement

In re: Initial Public Offering Securities Litigation

# CASONDRA R. TURNER

**Casondra R. Turner** is a Senior Counsel at Milberg in its Cybersecurity and Data Privacy Practice Group. Ms. Turner graduated magna cum laude, with honors, from the University of Georgia with dual degrees in History and International Affairs and a Spanish minor. She obtained her Juris Doctor from Boston University School of Law in 2013, where she was an editor for the International Law Journal, and clerked for the U.S. District Court in the Middle District of Georgia.

Ms. Turner has practiced law at two AmLaw 100 firms and has extensive trial and appellate experience defending large institutions throughout the country. As a former litigation associate, Ms. Turner specialized in securities fraud class actions and resolved countless lawsuits from inception through appeal. Ms. Turner is admitted to practice law in each of the state and federal courts in Massachusetts and Georgia and the Eleventh Circuit Court of Appeals. Ms. Turner has been recognized for her zealous advocacy and was nominated for a Top 40 Under 40 award in 2024. She also has an unbridled commitment to pro bono work and has successfully obtained asylum and post-conviction relief for many pro bono clients, including a posthumous pardon for an enslaved woman, Celia Newsom, from the Governor of Missouri in 2024— the first of its kind in Missouri history. She served for two years as a board member of the Georgia Association of Black Women Attorneys and is the current Vice President of the Celia Newsom Legacy Foundation. She also teaches undergraduate and graduate courses in criminal justice and business law and was awarded Adjunct Professor of the Year in 2023 for helping under-served students gain admission to law school.

Ms. Turner has repeatedly been appointed to serve as lead or co-lead counsel for plaintiffs in privacy-related class actions. She and her firm have developed ground-breaking case law that many plaintiffs rely on in their data breach class actions today. Over the past 3 years, Milberg has settled on a class-wide basis more than 100 class actions involving privacy violations, the majority of which are data breaches, in state and federal courts across the country as lead or co-lead counsel. To Ms. Turner's knowledge, no firm has settled and won court approval of more data breach class actions during this period. Representative cases include:

- *Parris, et al., v. Meta Platforms, Inc.*, Case No.2023LA000672 (18th Cir. DuPage Cty., Ill.) (where Milberg served as lead counsel and obtained a settlement of $64.5 million for 4 million consumers in a privacy class action);
- *Boone v. Snap, Inc.*, Case No. 2022LA000708 (18th Cir. DuPage Cty., Ill.) (where Milberg served as lead counsel and obtained a settlement of $35 million for 3 million consumers in a privacy class action); and
- *In re: East Palestine Train Derailment*, No. 23-cv-00242 (N.D. Ohio) (where Milberg served on the leadership team that obtained a settlement of $600 million in a complex class action).

Milberg is currently involved in some of the largest and most well-known class action cases in the country and is comprised of more than 120 attorneys who work from offices across the United States and Europe.

7

# LOCATIONS

## PUERTO RICO
1311 Avenida Juan Ponce de León
San Juan, Puerto Rico 00907

### CALIFORNIA
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212

### FLORIDA
201 Sevilla Avenue, Suite 200
Coral Gables, Florida 33134

### GEORGIA
260 Peachtree Street NW, Suite 2200
Atlanta, GA 30303

### ILLINOIS
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606

### NEW JERSEY
1 Bridge Plaza North, Suite 675
Fort Lee, New Jersey 07024

### NEW YORK
100 Garden City Plaza, Suite 500
Garden City, New York 11530

### TENNESSEE
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929

### WASHINGTON
1420 Fifth Ave, Suite 2200
Seattle, Washington 98101

17410 133rd Avenue, Suite 301
Woodinville, Washington 98072

### WASHINGTON, D.C.

5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015

### NETHERLANDS

### UNITED KINGDOM

8



# Exhibit 4

# COLE & VAN NOTE

## ATTORNEYS AT LAW

*"A single voice has the power to push Big Business toward big change."*

# FIRM RESUME

## OVERVIEW OF OUR PRACTICE

Cole & Van Note ("CVN") is a boutique class action firm known for aggressive representation and impressive results in the areas of consumer fraud, data breach, environmental and employment litigation. Founded in 1992, CVN has been devoted primarily to such matters, having litigated hundreds of class actions against businesses of all types and in nearly every industry imaginable. The members of CVN have vast experience prosecuting class/complex actions, both in a sole counsel capacity and in leadership positions, oftentimes among many firms, in California and nationwide litigation. They have published numerous scholarly articles dealing with various



substantive issues as well as class action litigation/procedure, speak regularly to legal audiences, and have served as consulting experts in class action litigation. CVN's team of skilled advocates has recovered billions of dollars for tens of millions of workers and consumers, been involved in record-setting settlements and judgments and compelled the correction of innumerable unlawful practices.

## SHAREHOLDERS & ASSOCIATE ATTORNEYS



**Scott Edward Cole**, founder and shareholder of Cole & Van Note, has extensive leadership experience prosecuting class action cases in federal and state courts nationwide. Mr. Cole has authored numerous scholarly publications and serves as highly regarded guest lecturer on issues surrounding class action procedures and negotiation theory. Mr. Cole has been responsible for shaping the law in trial and appellate courts for decades, authored the book "Fallout" and is available to serve as a mediator of class action disputes.

Credentials: Admitted, State Bar of California, 1992; University of San Francisco School of Law, J.D., 1992; President, University of San Francisco Labor & Employment Law Society; San Francisco State University, B.A., Speech Communications (Individual Major in Rhetoric), 1989, Minor Study in Business Administration, 1989; Admitted, United States District Court for all California Districts, the District of Colorado and the Western District of Michigan; Admitted, United States Court of Appeals (6th, 9th and 10th Circuits). Additionally, Mr. Cole is a former National Association of Securities Dealers Registered Representative (Series 7) and is/has been a

member of the Association of Trial Lawyers of America, California Lawyers Association, California Employment Lawyers Association, American Bar Association, Alameda County Bar Association (e.g., Vice Chair of ACBA's Labor & Employment Law Section Executive Committee), National Employment Lawyers Association and a U.S. Delegate to the InterAmerican Meeting of Labor and Trade Union Lawyers, Havana, Cuba (March 2012). Mr. Cole is also the author of "Fallout," a story based upon his experiences litigating in the wake of the 1994 airborne release of toxic chemicals by the Unocal Corporation and used by various law schools in the curriculum for first year law students.



**Laura Van Note**, shareholder, is an aggressive and skilled advocate and leads the firm's hiring and career outreach efforts. A 2013 graduate of the University of Missouri, Kansas City School of Law, her practice has focused primarily on class action representation of data breach victims and underpaid workers in employment/civil rights litigation. With a near-perfect track record for results, Ms. Van Note appears in courts across the nation, is licensed in Kansas and Missouri and in numerous federal districts.

Credentials: Admitted, State Bar of California, 2016; Admitted, State Bar of Missouri, 2013; Admitted, State Bar of Kansas, 2015; Admitted, United States District Court for all California Districts, the Eastern District of Wisconsin, District of Kansas, Eastern and Western Districts of Missouri, District of New Mexico, District of Nebraska, District of Colorado and the Northern District of Illinois; University of Missouri, Kansas City School of Law, J.D., 2013 (Order of the Barrister, Dean's List, Captain of the National Trial Advocacy Team, President of the American Constitutional Society for Law and Policy, Teaching Assistant to the Directory of Advocacy); University of Missouri, Kansas City, B.A., History, Minor in French, 2010.



**Cortney Szafran**, associate attorney, graduated from Stetson University College of Law in 2021 near the top of her class, then completing her LL.M. in the top 2% of her class from the University of California, Los Angeles School of Law. While in school at UCLA, Ms. Szafran also served as Chief Managing Editor of the Journal of Gender & Law. After graduation, she served as a civil defense attorney representing Fortune 500 companies as national counsel in complex litigation including products liability, premises liability and personal injury matters. Ms. Szafran brings a unique perspective and set of skills to the firm's high profile consumer and employment class action practice.

Credentials: Admitted, State Bar of Florida, 2021; Admitted, United States District Court for the Middle District of Florida; Stetson University College of Law, J.D., 2021; University of South Florida, St. Petersburg, B.S., Business Economics (Minor in International Business), magna cum laude.



**Mark T. Freeman**, associate attorney, graduated from Pacific McGeorge School of Law in 2013 near the top of his class. During law school, Mr. Freeman engaged in the McGeorge Trial Advocacy Program (which he completed with Honors) and served as Chief Comment Editor for the McGeorge Law Review. A published author ("BarCram: How To Survive the Last Two Weeks Before You Take (And Pass) the California Bar"), Martindale-Hubbell "AV Preeminent" rated attorney and Certified Mediator, Mr. Freeman is also member of the Consumer Attorneys of California, the Congress of Neutrals and the Contra Costa County Bar Association. At CVN, Mr. Freeman utilizes his vast litigation experience in the areas of class action consumer, employment and data breach law.

Credentials: Admitted, State Bar of California, 2013; Admitted, State Bar of Texas, 2025; Admitted, District of Columbia Bar, 2025; Admitted, United States District Courts for the Northern, Central and Eastern Districts of California; Admitted, 9th Circuit Court of Appeals; Pacific McGeorge School of Law, J.D., 2013 (Order of the Coif; McGeorge Law Review); Saint Mary's College of California, B.A. in Economics; Minor in English & Creative Writing (Honors: Br. U. Jerome Griffin Award at Graduation (highest award in School of Econ. and Business)), 2010.

Interim Counsel not listed.

**SCHOLARLY PUBLICATIONS**

The following represent examples of how CVN has elected to give back and help shape the law though our own articles, opinion pieces and the like – some examples of this including:

*The Quest for Class Certification*, Employment Law Strategist (Sept. & Oct. 2003).

*To Be or Not to Be a Penalty: Defining the Recovery Under California's Meal and Rest Period Provisions*, Golden Gate U. L. Rev. (Spring 2005).

*To Certify or Not to Certify: A Circuit-By-Circuit Primer of the Varying Standards for Class Certification in Actions under the Federal Labors Standards Act*, B.U. Pub. Int. L.J. (Spring 2004).

*Kullar v. Footlocker Retail, Inc.: A New Standard for Class Action Settlement Approval*, CELA Bulletin (April 2009).

*Ninth Circuit Provides Much Needed Guidance on Evidentiary Burdens in Overtime Misclassification Litigation,* CELA Bulletin (May 2009).

*Putting the "Rest" Back in Rest Break,* Alameda County Bar Association - Labor & Employment Section News (Autumn 2009).

*Barristers to Blogs: Softening Ethical Restrictions in the Digital Age,* Los Angeles Daily Journal (June 14, 2010).

**LEADERSHIP ROLES**

CVN has held numerous court-appointed sole- and co-leadership positions in state and federal courts across the nation. Recent lead counsel appointments include:

- In Re: Rackspace Data Security Litigation, No. SA-22-cv-01296-XR (W.D. Tex.) (court appointed sole lead counsel)

- Henderson v. Reventics, LLC, Case No. 1:23-cv-00586-MEH (D. Colo.) (court appointed co-lead counsel)

- Hinds v. Community Medical Centers, Inc., Case No. STK-CV-UNPI-2021-10404 (Super. Ct. Cal. San Joaquin Cnty.) (court appointed co-lead counsel)

- Tsvetanova v. UCSD Health, Case No. 37-2021-00039888-CU-PO-CTL (Super. Ct. Cal. San Diego Cnty.) (court appointed co-lead counsel)

- Fedorys v. Ethos Group Inc., Case No. 3:22-cv-2573-M (N.D. Tex.) (court appointed co-lead counsel)

- Moreland v. 1st Franklin Financial Corporation, Case No. 2:23-cv-00038-SCJ (N.D. Ga.) (court appointed co-lead counsel)

- Domitrovich v. MC Dean, Inc., Case No. 1:23-cv-00210-CMH-JFA (E.D. Va.) (court appointed co-lead counsel)

- Deevers v. Wing Financial Services, LLC, Case No. 4:22-cv-00550-CVE-MTS (N.D. Okla.) (court appointed co-lead counsel)

- Darrin v. Huntington Ingalls Industries, Inc., Case No. 4:23-cv-00053-JKW-DEM (E.D. Va.) (court appointed co-lead counsel)

- Guerrero v. Merritt Healthcare Holdings, LLC, Case No. 3:23-cv-00389-MPS (D. Conn.) (court appointed co-lead counsel)

- Prutsman v. Nonstop Administration and Insurance Services, Inc., Case No. 3:23-Cv-01131-VC (N.D. Cal.) (court appointed co-lead counsel)

- In re DISH Network Data Security Incident Litigation, Case No. 1:23-cv-01168-RMR-SBP (D. Colo.) (court appointed co-lead counsel)

- Byers v. OrthoAlaska, LLC, Case No. 3:23-cv-00243-SLG (D. Alaska) (court appointed co-lead counsel)

- Tambroni v. WellNow Urgent Care, P.C., Case No. 1:24-cv-01595 (N.D. Ill.) (court appointed co-lead counsel)

- Dryden v. Tri Counties Bank, Case No. 23CV03115 (Super. Ct. Cal. Butte Cnty.) (court appointed co-lead counsel)

- Brett v. Valley Mountain Regional Center, Case No. STK-CV-UPl-2024-0005025 (Super. Ct. Cal. San Joaquin Cnty.) (court appointed co-lead counsel)

- Cordell v. Patelco Credit Union, Case No. 24CV082095 (Super. Ct. Cal. Alameda Cnty.) (court appointed co-lead counsel)

- Skillings v. Access Sports Medicine and Orthopedics, Case No. 218-2024-CV-01086 (Super. Ct. New Hampshire Rockingham Cnty.) (court appointed co-lead counsel)

- Woodard v. Atlanta Women's Health Group, P.C., Case No 24EV001838H (State Ct. Georgia Fulton Cnty.) (court appointed co-lead counsel)

- In Re: Cleveland Brothers Data Incident Litigation, Case No. 1:23-cv-00501-JPW (M.D. Penn.) (court appointed co-lead counsel)

- Hahn v. Phoenician Medical Center, Inc., Case No. CV2023-010982 (Super. Ct. Az. Maricopa Cnty.) (court appointed executive committee chair)

- Daley v. Risas Holdings LLC, Case No. CV-24-00789-PHX-SMM (D. Az.) (court appointed lead counsel)

- Shweiki v. Donor Network West, Case No. C20-00073 (Super. Ct. Cal. Contra Costa Cnty.) (court appointed lead counsel)

- Lowrey v. Community Psychiatry Mgt., LLC, Case No. 2:23-cv-00185-TLN-DB (E.D. Cal.) (court appointed co-lead counsel)

- In Re: Blackhawk Network Data Breach Litig., Case No. 3:22-cv-07084-CRB (N.D. Cal.) (court appointed co-lead counsel)

- In re Dropbox Sign Data Breach Litigation, Case No. 4:24-cv-02637-JSW (N.D. Cal.) (court appointed co-lead counsel)

- Bujok v. MC2 Data, LLC, Case No. 0:24-cv-61864-LEIBOWITZ (S.D. Fla.) (court appointed co-lead counsel)

- Francisco v. Diligent Acquisitions LLC, Case No. 4:24-cv-04468 (S.D. Tex.) (court appointed co-lead counsel)

- Oliver v. Jewish Home Lifecare, Index No. 157811/2024 (N.Y. Sup. Ct., N.Y. County, Index No. 157811/2024) (court appointed co-lead counsel)

- Hunt v. Charlston Area Medical Center, Inc., Case No. 2:25-cv-00113 (S.D.W.V.) (court appointed co-lead counsel)

- Creutz v. Carespring Health Care Management LLC, Case No. 1:24-cv-00447 (S.D.Ohio) (court appointed co-lead counsel)

- Ceballos v. Tri-City Medical Center ASC Operators LLC, Case No. 24CU017568C (Super. Ct. Cal. San Diego Cnty.) (court appointed co-lead counsel)

- Lunsford v. Maryhaven Inc., Case No. 25CV003753 (Ct. of Common Pleas, Franklin Cty. Ohio) (court appointed co-lead counsel)

- Rice v. California Cancer Associates for Research and Excellence, Inc., Case No. 5:25-cv-01636 (C.D. Cal.) (court appointed co-lead counsel)

- In re Teamsters Local Union Nos. 117 and 174 Data Breach Litigation, Case 25-3-21664-1 KNT (Wash. Sup. Ct., King Cty.) (court appointed co-lead counsel)

Note that CVN has held sole lead and co-leadership roles in hundreds of additional matters. Please contact our firm for additional leadership information.

## EXEMPLAR COMPLEX & CLASS ACTION CASES

CVN's attorneys have represented tens of millions of individuals in legal disputes across hundreds of class action/complex litigation cases around the nation. For well over three decades, CVN's legal team has amassed extensive experience litigating data breach, wage and hour, environmental, and other personal injury and commercial cases. Today, the firm almost exclusively prosecutes multi-state data breach and other consumer-oriented class actions.

Drawing from various areas of law, and by no means an exhaustive list, examples of the range of CVN's practice include matters such as:

Augustus/Davis v. ABM Security Services, Inc. (American Commercial Security Service, Inc.)
Superior Court of California, County of Los Angeles, Case No. BC336416; 2 Cal.5th 257 (2016)
Our firm filed this action for violations of California law for denial of meal and rest periods toward security guards. The action achieved class certification status in 2009. Following summary judgment proceedings, a judgment of over $89 million was entered against the defendant(s). The judgment hinged on the issue of whether "on-duty" rest breaks were legally sufficient. After the Court of Appeal ruled against Plaintiffs on the issue, the case went to the California Supreme Court where Plaintiffs prevailed and, in so doing, created a new legal standard clarifying that "on-duty" rest breaks are invalid. After 12 years of litigation, successful summary judgment and substantial appellate work, this matter resolved for $110 million.

Bower v. Steel River Systems LLC
Illinois Fourteenth Judicial Circuit Court (Whiteside County), Case No. 2023-LA-000006
This action arose out of Steel River Systems' 2022 data breach which affected numerous consumers and/or employees. This action settled for an undisclosed amount.

Brett v. Valley Mountain Regional Center
Superior Court of California, County of San Joaquin, Case No. STK-CV-UPl-2024-0005025
This action arose out of Valley Mountain's 2023 data breach which affected 17,000 patients of Defendant's facilities. Cole & Van Note was appointed co-lead class counsel.

Bulow v. Wells Fargo Investments, LLC
United States District Court (N.D. Cal.), Case No. 3:06-CV-7924
This matter was filed as a nation-wide class action against Wells Fargo Investments, on behalf of its Financial Consultants to recover overtime pay, compensation for denied meal and rest periods (California only) and reimbursement for business related service and supply expenses (California only). This matter settled for $6.9 million.

Byers v. OrthoAlaska, LLC
United States District Court (D. Alaska), Case No. 3:23-cv-00243-SLG
This action arose out of OrthoAlaska's massive data breach which affected countless patients, consumers and/or employees. Cole & Van Note was court-appointed as co-lead class counsel.

Cano v. United Parcel Service, Inc.
Superior Court of California, County of Alameda, Case No. RG03089266
This wage and hour complex litigation matter involved the alleged misclassification of overtime non-exempt Operations Management Specialists, Operational Excellence Specialists and Industrial Engineering Specialist at this company's California facilities. This action settled for $4.5 million.

Chaidez v. Odwalla, Inc.
Superior Court of California, County of San Mateo, Case No. CIV430598
This wage and hour complex litigation matter involved the alleged misclassification of overtime non-exempt California Route Sales Representatives. CVN served as primary counsel for this proposed class of employees. This action settled for $2.2 million.

CKE Overtime Cases
Superior Court of California, County of Los Angeles, Case No. BC283274 (JCCP No. 4274)
This class action was brought against fast food chain Carl's Jr. for violations of California's overtime laws on behalf of the company's California restaurant chain Managers. The coordinated litigation provided a settlement fund of $9.0 million.

Cordell v. Patelco Credit Union
Superior Court of California, County of Alameda, Case No. 24CV082095
This action arose out of the well-publicized 2024 data breach and denial of service impacting well over 1,000,000 Patelco customers. As a result of the event, Patelco customers were blocked access to their funds and other services for weeks, resulting in myriad damages including rejection of loan applications, damage to their credit and the inability to pay everyday life expenses. Cole & Van Note was appointed co-lead class counsel. The matter settled for $7.25 million (settlement pending).

Darrin v. Huntington Ingalls Industries, Inc.
United States District Court (E.D. Va.), Case No. 4:23-cv-00053-JKW-DEM
This action arose out of Huntington Ingalls' massive data breach. Cole & Van Note was appointed by the court to a co-lead counsel position.

Davis v. Universal Protection Security Systems, Inc.
Superior Court of California, County of San Francisco, Case No. CGC-09-495528
Our firm filed a claim in 2009 against Universal Protection Security Systems, Inc. for violations of California law for denial of meal and rest periods toward security guards. This case settled under Cole & Van Note's sole leadership for $4 million.

Deevers v. Wing Financial Services, LLC
United States District Court (N.D. Okla.), Case No. 4:22-cv-00550-CVE-MTS
This action arose out of Wing Financial's 2022 data breach which affected numerous loan consumers. Cole & Van Note was appointed co-lead class counsel.

Despres (Cornn) v. United Parcel Service, Inc.
United States District Court (N.D. Cal.), Case No. 3:03-CV-02001
This wage and hour class action litigation was brought to remedy violations of meal and rest period regulations on behalf of the company's California ground delivery drivers. CVN served as co-counsel for the certified class of drivers. This action settled for $87 million, an unprecedented settlement amount at the time for such claims.

Domitrovich v. MC Dean, Inc.
United States District Court (E.D. Va.), Case No. 1:23-cv-00210-CMH-JFA
This action arose out of MC Dean's 2021 data breach which affected 45,000 employees. Cole & Van Note was appointed co-lead class counsel.

Dryden v. Tri Counties Bank
Superior Court of California, County of Butte, Case No. 23CV03115
This action arose out of Tri Counties' 2023 data breach which affected nearly 75,000 consumers. Cole & Van Note was appointed co-lead class counsel.

Escow-Fulton v. Sports and Fitness Clubs of America dba 24 Hour Fitness USA, Inc.
Superior Court of California, County of San Diego County, Case Nos. GIC881669/GIC873193)
Our firm filed this class action on behalf of the company's California "Group X" Instructors to recover regular and overtime pay, related penalties and un-reimbursed expenses. The action achieved class certification status in 2009. In 2011, the parties agreed to a partial settlement (of the expense reimbursement claims) for $10 million. The parties then filed cross-motions for summary adjudication and, on August 2, 2011, the court issued an Order finding 24 Hour Fitness' session rate compensation scheme to be an invalid piece rate. The parties then agreed to settle the unpaid wage claims for another $9 million, for a total judgment of $19 million. This was an industry changing case that helped define "piece rate" standard under California law.

Fedorys v. Ethos Group, Inc.
United States District Court (N.D. Tex.), Case No. 3:22-cv-02573-M
This action arose out of Ethos Group's 2022 data breach which affected at least 267,000 consumers. Cole & Van Note was appointed co-lead class counsel.

Guerrero v. Merritt Healthcare Holdings, LLC
United States District Court (D. Conn.), Case No. 3:23-cv-00389-MPS
This action arose out of Merritt Healthcare's 2022 data breach which affected over 77,000 patients. Cole & Van Note was appointed co-lead class counsel.

Hakeem v. Universal Protection Service, LP
Superior Court of California, County of Sacramento, Case Nos. 34-2020-00286228-CU-OE-GDS; 34-201900270901-CU-OE-GDS
After an exhaustive multi-year process including venue transfer, consolidation, migration of litigants from one case to the other, multiple appeals and, generally, extremely hard-fought litigation, these two security guard class actions achieved a consolidated judgment under Cole & Van Note's sole leadership for $10 million.

Head v. Regal Medical Group, Inc.
Superior Court of California, County of Los Angeles, Case No. 23STCV02939
This action arose out of this health care group 2023 data breach which affected roughly 3.3 million patients. Cole & Van Note served as the lead firm. The matter settled for $50 million (settlement pending).

Henderson v. Reventics, LLC
United States District Court (D. Colo.), Case No. 1:23-cv-00586-MEH
This action arose out of Reventics' massive 2022 data breach which affected over four million patients, consumers and employees. Cole & Van Note was appointed co-lead class counsel. The matter settled for $8.15 million (settlement pending).

Hinds v. Community Medical Centers
Superior Court of California, County of San Joaquin, Case No. STK-CV-UNPI-2021-0010404
This action arose out of Community Medical Centers' massive 2021 data breach which affected countless patients, consumers and/or employees. After reviewing competing requests for leadership over these consolidated actions, Cole & Van Note was appointed by the court to a co-lead counsel position. This action resulted in a multi-million-dollar judgment.

In re Apple Inc. Device Performance Litigation
United States District Court (N.D. Cal.), Case No. 5:18-md-02827-EJD
Following Apple's December 2017 admission that it throttled back performance of its iPhones (versions 6, 6 Plus, 6s, 6s Plus, SE, 7 and 7 Plus) to mask the problem of defective batteries and unexpected iPhone shut-downs, Cole & Van Note filed a class action to recover damages for consumers nationwide. Cole & Van Note served on the Plaintiffs' Steering Committee. This action settled for $500 million.

In re DISH Network Data Security Incident Litigation
United States District Court (D. Colo.), Case No. 1:23-cv-01168-RMR-SBP
This action arose out of DISH Network's massive data breach which affected over 300,000 workers. Cole & Van Note was appointed by the court to a co-lead counsel position.

In re Dropbox Sign Data Breach Litigation
United States District Court (N.D. Cal.), Case No. 4:24-cv-02637-JSW
This action arose out of Dropbox's massive data breach. Cole & Van Note was appointed by the court to a co-lead counsel position.

In re Rackspace Security Litigation
United States District Court (W.D. Tex.), Case No. SA-22-cv-01296
This action arises out of Rackspace Technology's 2022 massive ransomware event which shut down functionality for tens of thousands of individuals and businesses across the Unites States and overseas. Cole & Van Note served as court-appointed sole lead counsel for the nationwide class and representative plaintiffs from over 30 states.

In re Tosco SFR Litigation
Superior Court of California, County of Contra Costa, Case No. C97-01637
During incidents in April 1997 and January 1998, the Tosco Refinery in Rodeo, California released tons of airborne toxic chemicals. These harmful substances traveled into neighboring communities, seriously affecting the health of citizens and local workers. CVN served as Lead Counsel in this complex litigation and represented thousands of members of the community in that role. The multi-million-dollar fund created through this litigation under Cole & Van Note's sole leadership was disbursed among thousands of claimants and significantly change practices at this refinery ever since.

In re Unocal Refinery Litigation
Superior Court of California, County of Contra Costa, Case No. C94-04141
In response to Unocal's 16-day airborne release of chemicals over the County of Contra Costa in 1994, CVN filed a class action against the corporation on behalf of thousands of victims and thereafter served as one of a handful of firms (among dozens of law firms of record) on the Plaintiffs' Steering Committee. After hard-fought litigation, the matter eventually settled for $80 million. This litigation, Mr. Cole's efforts to commence it and his grassroots work and exposure of the toxic event to the media provide the backdrop for Mr. Cole's book, "Fallout," published in 2018 (2605 Media LLC). In the end, the impact of this litigation was sweeping, substantially changing practices at this refinery and industry regulations, helping to establish a toxic release community monitoring system that spawned similar systems across the nation, establishing parks, improved roadways and an unprecedented community-industry Good Neighbor agreement.

In re Walgreen Co. Wage and Hour Litigation
United States District Court (C.D. Cal.), Case No. 2:11-CV-07664
Our firm served as court-appointed Lead Counsel after an adversarial hearing process in this consolidated action of nine lawsuits bringing a variety of wage and hour claims on behalf of California workers. The case settled under Cole & Van Note's sole leadership for $23 million.

In re Westley Tire Fire Litigation
Superior Court of California, County of Santa Clara, Case No. CV 801282
On September 22, 1999, lightning struck and ignited a pile of approximately 7 million illegally stored waste tires in Westley, California, a town about 70 miles east of San Francisco. Over the subsequent five weeks, the fire spewed smoke and carcinogens over a large portion of the State of California. CVN served as the (sole) Lead and (shared) Liaison Counsel over a Plaintiffs' Steering/Management Committee in the consolidated actions against the owners and operators of this tire pile and related entities. These cases sought compensation for those individuals and businesses suffering personal and/or property damages as a result of these toxic substances and the fire's fall-out. In 2001, CVN reached a settlement with one defendant (CMS Generation Co.) for $9 million. In 2003, the Court granted final approval of the settlement. In 2005, two of the remaining defendants settled for roughly $1.4 million (over $10 million aggregate).

Kullar v. Foot Locker, Inc.
Superior Court of California, County of San Francisco, Case No. CGC-05-447044; 168 Cal.App.4th 116 (2008)
This class action was brought on behalf of California employees allegedly forced to purchase shoes of a distinctive color or design as a term and condition of their employment and in violation of state law. After the Court approved a multi-million settlement, two separate appeals challenged the settlement, but the Court of Appeal affirmed the trial court's judgment. This oft-cited case established in California what's now known as the "*Kullar standard*" for court approval of class action settlements.

Kurihara v. Best Buy Co., Inc.
United States District Court (N.D. Cal.), Case No. C 06-01884 MHP (EMC)
This class action was brought on behalf of Best Buy's California employees against this chain retailer for violations of California law (for denial of meal and rest periods). This case was granted class certification and Cole & Van Note then settled it for $5 million following an oft-cited ruling which clarified the distinction between class composition and entitlement to a recovery.

Lett v. TTEC
United States District Court (N.D. Cal.), Case No. 3:22-cv-00018
This action arose out of TTEC Service Corporation's massive data breach in 2021 which affected countless patients, consumers and employees. CVN helped negotiate a $2.5 million settlement for the class of victims.

Mambuki v. Securitas Security Services USA, Inc.
Superior Court of California, County of Santa Clara, Case No. 1-05-CV-047499 (JCCP No. 4460)
Our firm filed a claim against this defendant for violations of California law (for denial of meal and rest periods) on behalf of the company's California-based security guards. This coordinated proceeding settled in 2008 for $15 million.

Mendoza v. CaptureRx

United States District Court (W.D. Texas), Case No. 5:21-CV-00523-OLG

This class action against NEC Networks, LLC, d/b/a CaptureRx ("CaptureRx"), as well as Rite Aid and Community Health Centers of the Central Coast arising out of the massive data breach in 2021 which affected a minimum of 1.6 million people. The hacked information included sensitive personally identifiable information and personal health information. These consolidated cases settled in 2022 for a total value of over $4.75 million.

Moreland, et al. v. 1st Franklin Financial Corporation

United States District Court (N.D. Ga.), Case No. 2:23-cv-00038-SCJ

This action arose out of 1st Franklin Financial's 2022 data breach affecting this company's loan consumers. Cole & Van Note was appointed co-lead class counsel.

O'Brien v. Edward D. Jones & Co., LP

United States District Court (N.D. Ohio), Case No. 1:08-CV-00529

We filed a nation-wide (and New York State) class action against this financial securities company on behalf of the company's financial services representatives to recover overtime pay and related penalties. CVN served on a Lead Counsel Committee in this action, which settled in 2007 for $19 million.

Onyeige v. Union Telecard Alliance, LLC

United States District Court (N.D. Cal.), Case No. 3:05-CV-03971; MDL No. 1550

Our firm filed an action against Union Telecard Alliance, LLC alleging negligent misrepresentation and deceptive advertising practices related to its marketing of pre-paid telephone calling cards. This action settled for $22 million.

Prutsman v. Nonstop Administration and Insurance Services, Inc.

United States District Court (N.D. Cal.), Case No. 3:23-cv-01131-VC

This action arose out of Nonstop's massive 2022 data breach which affecting consumers, employees and health care affiliates. Cole & Van Note was appointed co-lead class counsel.

Ramirez v. The Coca Cola Company

Superior Court of California, County of San Bernardino, Case No. RCV 056388 (JCCP No. 4280)

This was one of two companion actions CVN prosecuted against this soft drink giant for violations of California's overtime laws. This action was brought on behalf of over 4,000 hourly workers at the company's bottling, distribution and sales centers who were allegedly forced to work "off-the-clock" for Coca Cola and/or whose time records were ordered modified by the company. This well-publicized action resolved under Cole & Van Note's leadership for $12 million.

Riordan v. Western Digital Corp.

United States District Court (N.D. Cal.), Case No. 5:21-CV-06074

This action arose out of the well-publicized widespread criminal data deletion of consumer hard drives in 2021. According to the lawsuit, the company knew of vulnerabilities in, at least,

six of its products for years which, ultimately, led to the erasure of data for countless purchasers of these products. CVN served as sole counsel for the victims.

Roman/Toussaint v. HanesBrands, Inc.
United States District Court (M.D. N.C.), Case No. 1:22-cv-00879-LCB-LPA
This case involved a data breach of HanesBrands' network system in which worker information was accessed and/or reviewed by cybercriminals.

Tambroni v. WellNow Urgent Care, P.C.
United States District Court (N.D. Ill.), Case No. 1:24-cv-01595
This action arose out of WellNow's 2023 data breach affecting over 400,000 patients. Cole & Van Note was appointed co-lead class counsel.

Thomas v. Cal. State Auto. Assoc.
Superior Court of California, County of Alameda, Case No. CH217752
Our firm filed this class action litigation on behalf of all California claims adjusters working for CSAA after mid-January 1997. This lawsuit alleged that, during those years, CSAA mis- classified these workers as exempt "administrators" and refused to pay them for overtime hours worked. This lawsuit settled for $8 million for nearly 1,200 workers.

Tierno v. Rite Aid Corporation
United States District Court (N.D. Cal.), Case No. 3:05-CV-02520
Our firm filed this action against Rite Aid Corporation on behalf of its salaried California Store Managers. It was alleged that defendant, purportedly the nation's third largest drug store chain, failed to pay overtime to those workers and denied them their meal and rest periods. In 2006, the federal court certified the class in this action, and approved a hard-fought settlement, achieved under Cole & Van Note's sole leadership, of $6.9 million.

Tsvetanova v. Regents of the University of California, dba U.C. San Diego Health
Superior Court of California, County of San Diego, Case No. 37-2021-00039888-CU-PO-CTL
This action arose out of U.C. San Diego Health's massive data breach between December 2020 and April 2021 which affected countless patients, consumers and employees. After reviewing numerous requests for leadership over these consolidated actions, Cole & Van Note was appointed by the court to a co-lead class counsel position.

Witriol v. LexisNexis
United States District Court (S.D. Cal.), Case No. 3:06-CV-02360
Our firm filed an action against this company for its unlawful disclosure of private credit, financial and/or other personal information. This litigation, resolved by Cole & Van Note, provided a settlement fund of $2.8 million.

CVN also serves in more informal (e.g., Executive Committee or Plaintiffs' Steering Committee) leadership positions in numerous other data breach cases and in sole counsel roles in many dozens more—actions currently pending across the majority of U.S. states.

## APPELLATE EXPERIENCE

CVN has substantial appellate experience, merely highlighted by some examples below. For other appellate and/or unreported opinions and/or a list of matters currently on appeal, please contact our firm.

Augustus v. ABM Security Services, Inc. (2016) 2 Cal.5th 257 (Case No. S224853).

Baddie v. Berkeley Farms, Inc. (9th Cir. 1995) 64 F.3d 487 (Case No. 93-17187).

Bradford v. Asian Health Services (9th Cir. 2025) Case No. 24-3702

Dunbar v. Albertson's, Inc. (2006) 141 Cal.App.4th 1422 (First Dist., Division 1, Case No. A111153).

Gonzalez v. El Centro del Barrio (5th Cir. 2025) Case No. 25-50092

In re Certified Tire and Service Centers Wage and Hour Cases (2018) 28 Cal.App.5th 1 (Cal. Ct. of Appeals, Fourth Dist., Division 1, Case No. A086407).

Kullar v. Foot Locker Retail, Inc. (2008) 168 Cal.App.4th 116 (Case No. A119697).

Montano v. The Wet Seal Retail, Inc. (2015) 232 Cal.App.4th 1214 (Cal. Ct. App. 2015)

O'Hara v. Factory 2-U Stores, Inc., 2003 WL 22451991 (Cal. Ct. of Appeals, First District, Division 4, Case No. A101452)

Taylor v. Park Place Asset Management (1999) (Cal. Ct. of Appeals, First Dist., Division 5, Case No. A086407).

Whiteway v. Fedex Kinko's Office and Print Services (9th Cir. 2009) 319 Fed.Appx. 688 (Case No. 07-16696).



555 12th Street, Suite 2100
Oakland, CA 94607
Tel: 510-891-9800

*www.colevannote.com*