# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| *In re Belle Tire Distributors, Inc. Litigation* | Case No. 2:24-cv-12966-MFL-CI |
| | Hon. Matthew F. Leitman |
| | **CLASS ACTION** |

## PLAINTIFFS' UNOPPOSED MOTION FOR
## ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

Plaintiffs respectfully request that the Court (1) approve attorneys' Fees, which includes reasonably incurred litigation Costs, in the amount of $300,000 total; and (2) grant Plaintiffs Tabbitha Berry, Hamza Yaser Algharably, Zachary Loafman, Anthony Georges, and Zach Travis each a Service Award of $1,250 in recognition of their efforts on behalf of the Settlement Class as Class Representatives.

The undersigned counsel certifies that counsel communicated with opposing counsel, via email on July 8–10, 2026, explaining the nature of the relief to be sought by way of this Motion. On July 10, 2026, counsel for Belle Tire stated that Belle Tire does not oppose the relief requested herein.

Dated: July 13, 2026                              Respectfully Submitted:

**THE MILLER LAW FIRM, P.C.**

By: */s/ E. Powell Miller*
E. Powell Miller (P39487)
Emily E. Hughes (P68724)
950 West University Drive
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
eeh@millerlawpc.com

Casondra Turner
**MILBERG PLLC**
260 Peachtree Street NW, Ste 2200
Atlanta, GA 30303
Tel: (866) 252-0878
E: cturner@milberg.com

Scott Edward Cole, Esq.
**COLE & VAN NOTE**

1

555 12th Street, Suite 2100
Oakland, California 94607
(510) 891-9800
sec@colevannote.com

***Settlement Class Counsel***

2

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| *In re Belle Tire Distributors, Inc. Data Breach Litigation* | Case No. 2:24-cv-12966-MFL-CI<br><br>Hon. Matthew F. Leitman<br><br>**CLASS ACTION** |

## BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

## STATEMENT OF ISSUES PRESENTED

1.      Whether this Court should award attorneys' Fees and reasonably incurred litigation Costs in pursuit of this matter in the amount of $300,000 total—to compensate Settlement Class Counsel for securing this substantial cash and non-cash benefit for a Class of individuals alleging class-wide damages stemming from the Data Security Incident which Belle Tire discovered on or about June 11, 2024.

**Plaintiffs' Answer: Yes.**

2.      Whether this Court should award Plaintiffs Tabbitha Berry, Hamza Yaser Algharably, Zachary Loafman, Anthony Georges, and Zach Travis each a Service Award of $1,250.00, in recognition of their zealous efforts on behalf of the Settlement Class as Class Representatives, which has required their involvement in this case for a substantial amount of time?

**Plaintiffs' Answer: Yes.**

i

## CONTROLLING AND MOST APPROPRIATE AUTHORITIES

- Fed. R. Civ. P. 23(h)

- *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016)

- *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

- *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483 (E.D. Mich. 2008)

- *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974)

- *In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512 (E.D. Mich. Dec. 20, 1996)

- *Arp v. Hohla & Wyss Enterprises, LLC*, 2020 WL 6498956 (S.D. Ohio Nov. 5, 2020)

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND ...................................2

III.   SUMMARY OF BENEFITS PROVIDED TO THE CLASS........................4

IV.   THE REQUEST FOR ATTORNEYS' FEES ARE REASONABLE AND SHOULD BE APPROVED..........................................................................5

   A.   The Percentage-of-the-Fund Should Be Used to Calculate Fees ...................6

   B.   The Reasonableness of the Requested Fee is Supported by the Sixth Circuit's Six-Factor Test ...............................................................................10

      1.   Class Counsel Has Secured a Valuable Benefit for the Class ................12

      2.   Society Has a Stake in Incentivizing the Pursuit of Complex Data Privacy Litigation .....................................................................................12

      3.   Class Counsel Took the Case on a Contingency Basis, Thereby Confronting the Risk of Nonpayment.......................................................14

      4.   The Complexity of Litigation Supports the Requested Fees..................17

      5.   The Parties Are Both Represented by Skilled Counsel ..........................18

      6.   The Value of Services Performed on an Hourly Basis Is Reasonable ...19

V.    THE REQUESTED ATTORNEYS' COSTS ARE REASONABLE AND SHOULD BE APPROVED ........................................................................22

VI.   THE REQUESTED SERVICE AWARDS REFLECT PLAINTIFFS' INVOLVEMENT AND SHOULD BE APPROVED ....................................23

VII.  CONCLUSION....................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Arp v. Hohla & Wyss Enterprises, LLC*,
  2020 WL 6498956 (S.D. Ohio Nov. 5, 2020) .................................... 19, 20, 21, 22

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980).................................................................................11

*Bowling v. Pfizer, Inc.*,
  102 F.3d 777 (6th Cir. 1996) ...................................................................11

*Burden v. SelectQuote*,
  2013 WL 3988771 (N.D. Cal. Aug. 2, 2013) .............................................23

*Di Giacomo v. Plains All Am. Pipeline*,
  2001 WL 34633373 (S.D. Tex. Dec. 19, 2001)...........................................10

*Dick v. Sprint Commc'ns Co. L.P.*,
  297 F.R.D. 283 (W.D. Ky. 2014) ...............................................................12

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)...................................................................................13

*Est. of McConnell v. EUBA Corp.*,
  2021 WL 1966062 (S.D. Ohio May 17, 2021)............................................19

*Fidel v. Farley*,
  534 F.3d 508 (6th Cir. 2008) ....................................................................23

*Fournier v. PFS Invs., Inc.*,
  997 F. Supp. 828 (E.D. Mich. 1998) ........................................... 8, 10, 20

*Fulton-Green v. Accolade, Inc.*,
  2019 WL 4677954 (E.D. Pa. Sept. 24, 2019)............................................16

*Gascho v. Global Fitness Holdings, LLC*,
  822 F.3d 269 (6th Cir. 2016) .............................................. 7, 11, 12, 13

*Goodell v. Charter Commc'ns, LLC*,
  2010 WL 3259349 (W.D. Wis. Aug. 17, 2010) .........................................16

*Hadix v. Johnson*,
  322 F.3d 895 (6th Cir. 2003) ....................................................................23

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)...................................................................................19

*Hillson v. Kelly Servs. Inc.*,
  2017 WL 3446596 (E.D. Mich. Aug. 11, 2017)..........................................10

*In re Cap. One Consumer Data Sec. Breach Litig.*,
  2022 WL 17176495 (E.D. Va. Nov. 17, 2022) ...........................................16

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ........................................................ passim

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) ................................................................ passim
*In re Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*,
  341 F.R.D. 128 (D. Md. 2022) ..................................................................23
*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
  1996 WL 780512 (E.D. Mich. Dec. 20, 1996) ...................................... 13, 14, 18
*In re S. Ohio Corr. Facility*,
  173 F.R.D. 205 (S.D. Ohio 1997)................................................................11
*In re S. Ohio Corr. Facility*,
  24 F. App'x 520 (6th Cir. 2001) .................................................................11
*In re Telectronics Pacing Sys., Inc.*,
  137 F. Supp. 2d 985 (S.D. Ohio 2001) .......................................................18
*Isabel v. City of Memphis*,
  404 F.3d 404 (6th Cir. 2005) .....................................................................19
*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) ......................................................................8
*Kogan v. AIMCO Fox Chase L.P.*,
  193 F.R.D. 496 (E.D. Mich. 2000) ............................................................14
*Kolinek v. Walgreen Co.*,
  311 F.R.D. 483, 500-01 (N.D. Ill. 2015) ........................................... 7, 8, 9
*Lasalle Town Houses Coop. Assoc. v. City of Detroit*,
  2016 WL 1223354 (E.D. Mich. Mar. 29, 2016)................................................23
*Love v. Gannett Co. Inc.*,
  2021 WL 4352800 (W.D. Ky. Sept. 24, 2021)....................................................19
*Lyngaas v. Curaden AG*, No. 17-10910,
  2020 WL 5249203 (E.D. Mich. Sept. 3, 2020) .....................................................7
*Mathias v. Accor Econ. Lodging, Inc.*,
  347 F.3d 672 (7th Cir. 2003) .....................................................................11
*Moulton v. U.S. Steel Corp.*,
  581 F.3d 344 (6th Cir. 2009) .....................................................................11
*N.Y.S. Teachers' Ret. Sys. v. Gen. Motors Co.*,
  315 F.R.D. 226 (E.D. Mich. 2016) ...............................................................9
*New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
  234 F.R.D. 627 (W.D. Ky. 2006) .................................................................23
*Nilsen v. York Cnty.*,
  400 F. Supp. 2d 266 (D. Me. 2005)................................................................7
*Pfeiffer v. RadNet, Inc.*,
  2022 WL 2189533 (C.D. Cal. Feb. 15, 2022) ....................................................24
*Pratt v. KSE Sportsman Media, Inc.*,
  2023 WL 5500832 (E.D. Mich. Aug. 25, 2023)....................................................11

*Ramey v. Cincinnati Enquirer, Inc.*,
508 F.2d 1188 (6th Cir. 1974) ................................................................... 11, 20, 22
*Rawlings v. Prudential-Bache Props.*,
9 F.3d 513 (6th Cir. 1993) ....................................................................... 6, 7
*Shane Grp. v. BCBS of Mich.*,
2015 WL 1498888 (E.D. Mich. Mar. 31, 2015) ...................................................... 11
*Stanley v. U.S. Steel Co.*,
2009 WL 4646647 (E.D. Mich. Dec. 8, 2009) ........................................................ 14
*Thomsen v. Morley Companies, Inc.*,
639 F. Supp. 3d 758 (E.D. Mich. 2022) ............................................................. 24
*Thomsen v. Morley Companies, Inc.*,
2023 WL 3437802 (E.D. Mich. May 12, 2023) ........................................................ 24
*Van Horn v. Nationwide Prop. and Cas. Ins. Co.*,
436 F. App'x 496 (6th Cir. 2011) ................................................................. 6, 19
*Waid v. Snyder (In re Flint Water Cases)*,
63 F.4th 486 (6th Cir. 2023) ....................................................................... 6
*Wise v. Popoff*,
835 F. Supp. 977 (E.D. Mich. 1993) ................................................................. 8

## Rules

Fed. R. Civ. P. 23(f) ............................................................................... 18
Fed. R. Civ. P. 12(b)(1) ........................................................................... 18
Fed. R. Civ. P. 12(b)(6) ........................................................................... 18
Fed. R. Civ. P. 23(h) ................................................................................ 5

## I.    INTRODUCTION

This case arises from an incident involving the improper access of data that Defendant Belle Tire Distributors, Inc. ("Belle Tire") became aware of on or about June 11, 2024, involving the potential unauthorized access of the Private Information of certain individuals (the "Data Security Incident"[1]).

By way of extremely hard-fought negotiations, Settlement Class Counsel ("Class Counsel") have achieved a Settlement that provides Settlement Class Members ("Class Members") with meaningful relief, including: compensation for unreimbursed Documented Losses, up to a total of 150% of a Class Member's Documented Loss (up to $1,000.00 (S.A. ¶ 14)), or, Alternative Pro Rata Cash Compensation—from the non-reversionary Alternative Pro Rata Settlement Fund (*id.* ¶¶ 15, 16). Obtaining this outstanding result did not come easily. Class Counsel, with Plaintiffs' assistance, shouldered significant risk—investigating the case pre-filing, securing informal discovery, participating in a mediation with Judge Morton Denlow (ret.), and engaging in months of arm's-length negotiations.

The result achieved here would not have been possible without the significant investment of time and resources by Class Counsel. Class Counsel's use of their accumulated knowledge and experience to efficiently obtain this Settlement, in a

---

[1] Capitalized terms have the same definition as defined in the Settlement Agreement, *see* ECF No. 20-2, PageID.214–259, unless otherwise defined herein.

1

specialized area of law, weighs strongly in favor of the reasonableness of Plaintiffs' request. Accordingly, Plaintiffs respectfully request, pursuant to Fed. R. Civ. P. 23(h) and the Parties' Settlement Agreement (the "S.A."), that the Court approve Plaintiffs' request for attorneys' Fees and reasonably incurred litigation Costs in the total amount of $300,000.00; and Service Awards of $1,250.00 for each named Plaintiff. The request for Fees and Costs is approximately 1% of the maximum amount made available under the Settlement.[2]

For the above reasons, and as explained further below, this Court should approve the request for attorneys' Fees, Costs, and Service Awards.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Belle Tire experienced a Data Security Incident on or around June 11, 2024. Consolidated Class Action Complaint ("CAC"), ECF No. 10 at ¶ 33. Following Belle Tire's investigation, it sent notice to Class Members on or about November 2024. *Id.* Belle Tire informed impacted individuals that the Data Security Incident involved unauthorized access to the following Private Information, including but not limited to, their: name, social security number ("SSNs"), contact information, date of birth, and drivers' license. *See id*. The Data Security Incident impacted roughly

---

[2] Each Class Member may make a claim for a maximum amount of $1,000 for unreimbursed Documented Losses. $1,000 x 29,000 = $29,000,000. Reasonable litigation Costs are presently approximately $18,500, so the Fees portion is $281,500, and $281,500/$29,000,000 = 0.97%.

29,000 individuals, including that of current and former employees. *See* **Exhibit A**, Joint Declaration of Settlement Class Counsel in Support of Plaintiffs' Unopposed Motion for Attorneys' Fees, Costs, and Service Awards ¶ 3 (hereinafter "Decl.").

The CAC alleges that Plaintiffs' and Class Members' Private Information was compromised due to Belle Tire's negligence and other misconduct. CAC ¶¶ 7-8, 39. Plaintiffs allege that they and similarly situated Class Members have suffered injury as a result of Belle Tire's conduct, including: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of their Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Security Incident; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Security Incident; (vii) nominal damages; and (viii) the continued and certainly increased risk to their Private Information. *Id.* ¶ 10. Plaintiffs asserted the following causes of action in the CAC: (1) negligence; (2) breach of implied contract; (3) unjust enrichment; and (4) invasion of privacy. *See id.*

The Parties agreed to mediation and exchanged informal discovery under Fed. R. Evid. 408. Decl. ¶¶ 8, 9. On September 30, 2025, the Parties participated in a full-day mediation with Judge Denlow, but it did not immediately produce a resolution. *Id.* 11. The Parties, though, continuously engaged in rounds of settlement discussions, and, on February 6, 2026, after months of negotiations, the Parties

reached an agreement in principle, which called for the resolution of the claims of Plaintiffs and the Class. Decl. ¶ 12. Thereafter, the Parties spent substantial time negotiating the settlement terms and executed the Settlement Agreement on April 13, 2026. Decl. ¶ 13; ECF No. 20-2. Plaintiffs then moved for preliminary approval of the class action settlement on April 13, 2026, and the Court issued preliminary approval of the class action Settlement on April 28, 2026. ECF Nos. 20, 22.

## III.   SUMMARY OF BENEFITS PROVIDED TO THE CLASS

The Settlement resolves and releases all claims asserted by the Class against Belle Tire concerning the Data Security Incident.

Under the Settlement Agreement, Class Members will receive the following benefits as briefly summarized below.[3] Belle Tire has agreed to pay compensation for unreimbursed Documented Losses, up to a total of 150% of a Class Member's Documented Loss (up to $1,000.00 (S.A. ¶ 14)), and for the Alternative Pro Rata Cash Compensation—from the non-reversionary Alternative Pro Rata Settlement Fund. S.A. ¶¶ 15–16. If any funds remain in the Alternative Pro Rata Settlement Fund more than 120 days after distribution of initial payments to Class Members, a subsequent payment will be evenly made to all Class Members who cashed or deposited their initial Claim Payments. S.A. ¶ 38.

Belle Tire has also agreed to pay the costs of Claims Administration, any

---

[3] *See* ECF No. 20-2 for additional benefits information under the S.A. at ¶¶ 13–19.

attorneys' Fees and Costs award, and any Class Representative Service Awards. ECF No. 20-2, S.A., ¶¶ 26, 61-62. Finally, notably, the Settlement provides that "[t]he amount of attorneys' fees and costs was negotiated after the primary terms of the Settlement were negotiated." ECF No. 20-2, S.A. ¶ 61.

## IV.   THE REQUEST FOR ATTORNEYS' FEES AND COSTS ARE REASONABLE AND SHOULD BE APPROVED

Under Federal Rule of Civil Procedure 23(h), the Court may award "reasonable attorney's fees[.]" Fed. R. Civ. P. 23(h). The Settlement here provides that Class Counsel may move the Court for an award of attorneys' Fees and Costs not to exceed $300,000. ECF No. 20-2, S.A. ¶ 61. As of this filing, Plaintiffs have incurred approximately $18,500 in reasonable litigation costs (Decl. ¶ 27); thus, Plaintiffs' request consists of $281,500 for the fee award portion.

Plaintiffs' fee request represents approximately 1% of the maximum $29,000,000 amount made available under the Settlement (*see* n.2 for calculations). The Settlement here provides a common fund benefit in addition to other class member benefits. S.A. ¶¶ 13–19; Decl. 15. The Settlement benefits include the ability for Class Members to recover for Documented Losses—150% of their documented out-of-pocket losses, up to $1,000. S.A. ¶ 14. The Settlement benefits also include an entirely non-reversionary Alternative Pro Rata Settlement Fund for those Class Members electing to receive the Alternative Pro Rata Cash Payment (S.A. ¶¶ 15–18). And notably, any Documented Loss payment made by Belle Tire

does *not* act to reduce the amount of the Alternative Pro Rata Settlement Fund, "[s]eparate and apart from the funds deposited in the Alternative Pro Rata Settlement Fund, Defendant agrees to pay for" Documented Loss claims, Notice and Claims Administration Costs, and any attorneys' Fees, Costs, and Service Awards approved by the Court. S.A. ¶ 19.

As set forth below, the Court should calculate Class Counsel's fee using the "percentage-of-the-fund" method and find that the requested award is reasonable and well supported by applicable caselaw.

### A.   The Percentage-of-the-Fund Should Be Used to Calculate Fees

In determining attorneys' fees and evaluating the reasonableness of those fees, courts use either the percentage-of-the-fund method or the lodestar method. *Waid v. Snyder (In re Flint Water Cases)*, 63 F.4th 486, 495 (6th Cir. 2023) (citing *Van Horn v. Nationwide Prop. and Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011)). "The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved." *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 516 (6th Cir. 1993). Courts have discretion to choose the appropriate method based on the nuances of the class action. *Id.*

Courts within "the Sixth Circuit have indicated their preference for the percentage-of-the-fund method in common fund cases." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (E.D. Mich. 2003). "When awarding attorney

fees in a class action, district courts generally have discretion to choose whether to calculate fees based on the lodestar method—multiplying the number of hours reasonably expended by a reasonable hourly rate—or based on the percentage method—awarding class counsel a percentage of the monies recovered." *Lyngaas v. Curaden AG*, 2020 WL 5249203, at *1 (E.D. Mich. Sept. 3, 2020) (citing *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016)). "As the two methods measure the fairness of the fee with respect to different desired outcomes, it is necessary that district courts be permitted to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Id.* at *1 (citing *Gascho*, 822 F.3d at 279 & *Rawlings*, 9 F.3d at 516).

In "choosing between the percentage and lodestar approaches," courts "look to the calculation method most commonly used in the marketplace at the time such a negotiation would have occurred." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 500-01 (N.D. Ill. 2015); *see also, e.g.*, *Nilsen v. York Cnty.*, 400 F. Supp. 2d 266, 278 (D. Me. 2005) ("There is good reason for using a market-oriented approach. If a consumer wanted to determine a reasonable plumber's, mechanic's or dentist's fee, the consumer would have to look to the market. Why should lawyers be different?").

With respect to class actions analogous to the present matter, "the normal practice . . . is to negotiate a fee arrangement based on a percentage of the plaintiffs'

7

ultimate recovery[.]" *Kolinek*, 311 F.R.D. at 501. The federal judiciary is in near unanimous agreement that the percentage-of-the-fund approach best yields the fair market price for the services provided by counsel to the class for purposes of determining a reasonable attorneys' fee award at settlement. *See Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986) ("When the prevailing method of compensating lawyers for similar services is the contingent fee, then the contingent fee *is* the market rate.") (internal quotations omitted, emphasis in original); *see, e.g.*, *In re Cardizem*, 218 F.R.D. at 532 ("This Court's decision to apply the percentage-of-the-fund method is consistent with the majority trend[.]"). This is especially true where, as here, a settlement establishes a non-reversionary common fund for the benefit of settlement class members. *See Fournier v. PFS Invs., Inc.*, 997 F. Supp. 828, 831–32 (E.D. Mich. 1998) ("The lodestar method should arguably be avoided in situations where such a common fund exists because it does not adequately acknowledge (1) the result achieved or (2) the special skill of the attorney(s) in obtaining that result. Courts and commentators have been skeptical of applying the formula in common fund cases. For these reasons, many courts have strayed from using lodestar in common fund cases and moved towards the percentage of the fund method which allows for a more accurate approximation of a reasonable award for fees.") (collecting cases); *Wise v. Popoff*, 835 F. Supp. 977, 980 (E.D. Mich. 1993).

Thus, in recent non-reversionary common fund cases such as this, district

8

courts of the Sixth Circuit have applied the percentage-of-the-fund method in determining a reasonable attorneys' fee award. *See In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 502 (E.D. Mich. 2008) (noting that "the Sixth Circuit has observed a 'trend towards adoption of a percentage of the fund method in [common fund] cases'") (citations omitted).

The percentage-of-the-fund method is appropriate to utilize here because it best replicates the *ex ante* market value of the services that Class Counsel provided to the Class. *See Kolinek*, 311 F.R.D. at 501 (in consumer class actions, such as the present case, "the normal practice [is] to negotiate a fee arrangement based on a percentage of the plaintiffs' ultimate recovery").

The percentage-of-the-fund method also better aligns Class Counsel's interests with those of the Class because it bases the fee on the results the lawyers achieve for the class rather than on the number of motions they file, documents they review, and hours they work, and it avoids some of the problems the lodestar-times-multiplier method can foster (such as encouraging counsel to delay resolution of the case when an early resolution may be in their clients' best interests). *N.Y.S. Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 243 (E.D. Mich. 2016) (while "[t]he lodestar method better accounts for the amount of work done . . . the percentage of the fund method more accurately reflects the results achieved") (citation omitted). It is also simpler to apply. *See, e.g., Fournier*, 997 F. Supp. at 832

9

(noting that the percentage-of-the-fund method provides the "benefit" of "readily ascertainable fee amounts"); *Hillson v. Kelly Servs. Inc.*, 2017 WL 3446596, at *2 (E.D. Mich. Aug. 11, 2017) (stating that "[t]he percentage-of-recovery approach is easy to calculate" and "establishes reasonable expectations on the part of plaintiffs' attorneys") (citation omitted).[4] As another federal district court aptly explained:

> The lodestar [method] remains difficult and burdensome to apply, and it positively encourages counsel to run up the bill, expending hours that are of no benefit to the class. Moreover, . . . lodestar may result in undercompensation of talented attorneys. Experienced practitioners know that a highly qualified and dedicated attorney may do more for a class in an hour than another attorney could do in ten. The lodestar can end up prejudicing lawyers who are more effective with a lesser expenditure of time.

*Di Giacomo v. Plains All Am. Pipeline*, 2001 WL 34633373, at *6 (S.D. Tex. Dec. 19, 2001) (citations omitted).

**B. The Reasonableness of the Requested Fee is Supported by the Sixth Circuit's Six-Factor Test**

The Sixth Circuit has articulated six factors that are "germane" to determining the reasonableness of a requested percentage to award as attorneys' fees: (1) the

---

[4] Awarding fees solely based on the lodestar methodology can create an incentive for class counsel to reject or delay accepting a settlement merely to bill more hours pursuant to a more wasteful, unnecessary, and risky litigation strategy. Plaintiffs' Counsel are, of course, willing to provide their collective Lodestar if the Court so requests, and from a review of lodestar conducted by Class Counsel, this case includes a substantially negative lodestar multiplier. Decl. ¶ 17.

value of the benefit to the class; (2) society's stake in rewarding attorneys who produce the settlement's benefits, to maintain an incentive to others; (3) whether the work was performed on a contingent fee basis; (4) the complexity of the litigation; (5) the skill and standing of counsel on both sides; and (6) the value of the legal services performed on an hourly basis. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974); *Gascho*, 822 F.3d at 280 (describing these factors as "germane" to the fee inquiry, and citing *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009)); *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996).

A "reasonable" fee in common-fund case typically ranges "from 20 to 50 percent." *Shane Grp. v. BCBS of Mich.*, 2015 WL 1498888, at \*15 (E.D. Mich. Mar. 31, 2015); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 217 (S.D. Ohio 1997), *rev'd on other grounds,* 24 F. App'x 520 (6th Cir. 2001) ("[t]ypically, the percentage awarded ranges from 20 to 50 percent of the common fund"); *see also Pratt v. KSE Sportsman Media, Inc.*, 2023 WL 5500832, at \*7 (E.D. Mich. Aug. 25, 2023) (finding 35% of common fund to be reasonable); *Mathias v. Accor Econ. Lodging, Inc.*, 347 F.3d 672, 677 (7th Cir. 2003) (Posner, J.) (referring to the "usual 33-40 percent contingent fee" charged by plaintiff's lawyers). The amount awarded is calculated as a percentage "from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Gascho*, 822 F.3d at 282 (calculating the percentage, as "[a]ttorney's fees are the numerator" and "the dollar amount of the Total Benefit to

11

the class (which includes the 'benefit to class members,' the attorney's fees, and [potentially] the costs of administration)" is the denominator).

The relevant factors support approval of the requested attorneys' Fees here.

### 1.    Class Counsel Has Secured a Valuable Benefit for the Class

The value of the benefit to the class is the most important factor in assessing the reasonableness of fees. *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 299 (W.D. Ky. 2014) (citation omitted); *In re Delphi*, 248 F.R.D. at 503 (result achieved is "primary factor"). Assessing the overall value includes consideration of both tangible and intangible benefits. *See Gascho*, 822 F.3d at 282 (requiring "appropriate consideration" of "cash and noncash settlement components" in assessing the total benefits to the class). The risk of continued litigation also is considered in relation to the value of the benefit to the class under this factor. *Sprint*, 297 F.R.D. at 299.

In this case, the value of the benefit to the Class is all of the following: Documented Loss Claims up to $1,000 per Class Member (with a maximum value of $29,000,000), the full non-reversionary Settlement Fund ($75,000), the Notice and Claims Administration Costs, and any attorneys' Fees, Costs, and Service Awards approved by the Court. *See* S.A. ¶¶ 13-19.

Accordingly, this factor weighs in favor of approval.

### 2.    Society Has a Stake in Incentivizing the Pursuit of Complex Data Privacy Litigation

Society has a strong stake in rewarding attorneys who produce the type of

benefits achieved by the settlement here. *See In re Cardizem*, 218 F.R.D. at 533; *see also Gascho*, 822 F.3d at 287 (class actions such as this action "have value to society[—]particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources"). It is thus in society's interest to encourage litigation that protects important individual privacy rights that would not otherwise be safeguarded. *See In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512, at *17 (E.D. Mich. Dec. 20, 1996) ("Without compensation to those who are willing to undertake the inherent complexities and unknowns of [] class action litigation" such as the type here, "enforcement of the federal . . . protection laws would be jeopardized."); *In re Cardizem*, 218 F.R.D. at 534 ("Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions . . . benefits society."). When individual class members seek relatively small statutory damages, "[e]conomic reality dictates that [their] suit proceed as a class action or not at all." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974).

Finally, the Class's reaction to the requested fee award also indicates its fairness and reasonableness. *See In re Delphi*, 248 F.R.D. at 504 ("The Class's overwhelming favorable response lends further support to the conclusion that the requested fee award is fair and reasonable."). Notice was directly disseminated to every Class Member by postal mail and/or email on May 28, 2026. Decl. ¶ 14. Those

13

Notices prominently and specifically state that Class Counsel intends to apply to the Court for an award of Fees and Costs up to $300,000. *See* ECF No. 20-2, S.A. ¶ 61, PageID.277. Since the dissemination of notice to the 28,629[5] Class Members, as of July 10, 2026, with numerous Class Members already having responded, not a single objection nor opt-out has been received. Decl. ¶ 14. Thus, the Class as a microcosm of society has recognized the societal value of this litigation by giving the Settlement a resounding stamp of approval. This factor supports the requested award.

### 3.    Class Counsel Took the Case on a Contingency Basis, Thereby Confronting the Risk of Nonpayment

Undertaking an action on a contingency basis lends additional support to the reasonableness of a requested fee award. *See In re Cardizem*, 218 F.R.D. at 533; *Stanley v. U.S. Steel Co.*, 2009 WL 4646647, at *3 (E.D. Mich. Dec. 8, 2009) ("Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award."). When attorneys invest significant time and resources in pursuing the litigation, despite the risk they will not be compensated, this factor is generally satisfied. *In re Rio*, 1996 WL 780512, at *18; *Kogan v. AIMCO Fox Chase L.P.*, 193 F.R.D. 496, 504 (E.D. Mich. 2000). The contingent nature of the case is amplified where class counsel faces a formidable defendant and defense

---

[5] Following entry of the Preliminary Approval Order, and review of the class list provided by Belle Tire, including de-duplication, the Claims Administrator was able to determine contact information for 28,629 individuals. Decl., ¶ 3.

14

counsel, such as here. *See In re Cardizem*, 218 F.R.D. at 533.

Class Counsel pursued this action purely on a contingency basis. Decl. ¶ 17. Class Counsel conducted an extensive pre-filing investigation into the relevant facts and legal issues, which was informed by the vast experience and expertise accumulated during the prosecution of numerous other data security cases. *Id.*, ¶ 18. Class Counsel invested significant time, effort, and resources to the litigation without compensation. *Id.* Cognizant of the risk of nonpayment, Class Counsel nonetheless embarked on a fact-intensive investigation of Belle Tire's practices, and as noted above, filed cases, worked to consolidate related cases, drafted and filed a master consolidated complaint, exchanged informal discovery, participated in a formal mediation, engaged in months and months of settlement negotiations and then spent a similar amount of time negotiating Settlement papers. *Id.*, ¶¶ 9–13. Class Counsel also advanced significant costs, paying for a full-day mediation with renowned mediator Judge Morton Denlow. *Id.*, ¶ 18. Class Counsel fronted this investment of time and resources, despite the significant risk of nonpayment inherent in this case. *Id.*, ¶¶ 19–20. And given the defenses mounted by Belle Tire—led by highly qualified and extremely competent defense counsel, who regularly defend complex cases—success on the legal issues was far from certain. *Id.* ¶ 20.

Class Counsel understands that, if not resolved, Belle Tire would have filed a motion to dismiss, then later move for summary judgment, and then put up a strong

15

defense at any trial. Decl. ¶ 20. While Class Counsel believed they would overcome

Belle Tire at each step, in order to obtain class-wide relief, Class Counsel would also

need to move and succeed on a motion for class certification under Rule 23, which

Belle Tire would have opposed and then appealed any defeat under subsection (f).

*Id.* Caselaw addressing the application of Rule 23 in this context is far from

established. *Id. See In re Cap. One Consumer Data Sec. Breach Litig.*, 2022 WL

17176495, at *2 (E.D. Va. Nov. 17, 2022) ("Data breaches are a 'risky field of

litigation' because they 'are uncertain and class certification is rare.'") (quoting

*Fulton-Green v. Accolade, Inc.*, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019)).

In considering the reasonableness of a fee request in a contingency-fee class

action settlement, courts consider how the legal market would have assessed the

case's risk at its inception and, in turn, how the market's risk assessment would have

affected a hypothetical *ex ante* fee negotiation between counsel and potential client.

*See Goodell v. Charter Commc'ns, LLC*, 2010 WL 3259349, at *1 (W.D. Wis. Aug.

17, 2010) ("The question is not how risky the case looks when it is at an end but how

the market would have assessed the risks at the outset.").

As explained, there was a significant threshold risk at its inception and would

continue through class certification. There is no doubt this litigation is viewed by

other counsel as risky and uncertain given the developing caselaw in the context of

data security cases. Notwithstanding, Class Counsel moved forward and negotiated

the Settlement presently before the Court for approval. Despite the serious risk of non-recovery to the Class, at the outset and for the duration of these adversarial proceedings, Class Counsel nevertheless expended a significant amount of attorney time and Costs investigating, prosecuting, and resolving the alleged claims without guarantee of reimbursement. Decl., ¶¶ 18, 21. As a result of the work Class Counsel devoted to this litigation, their law firms were forced to forgo representing clients in other matters that they otherwise would have taken on. *Id.* ¶ 21. Class Counsel should thus be rewarded for accepting each Plaintiff's case and devoting substantial resources investigating and prosecuting it on behalf of the Class.

Simply, this litigation presented a substantial risk of non-recovery to the Class and thus non-payment to Class Counsel. The request for Fees and Costs appropriately and reasonably compensates Class Counsel for embarking on lengthy, time-consuming, and expensive litigation for the benefit of the Class, in the case of the aforementioned risks.

### 4. The Complexity of Litigation Supports the Requested Fees

The complexity of the litigation reinforces the reasonableness of the requested fee award. *In re Cardizem*, 218 F.R.D. at 533. "[M]ost class actions are inherently complex." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). This case is no exception. Specifically, this matter involved multiple layers of factual complexity, much of which was obscured at the outset due to the

17

labyrinthine nature of the cybersecurity issues behind the Data Security Incident. This required extensive preliminary investigation into Belle Tire's privacy policies, its methods of data collection and storage, and the nature of its cybersecurity protocols.

This case also involved complex legal issues. If settlement was not reached, Belle Tire may have successfully challenged Plaintiffs' claims under Rule 12(b)(1) and Rule 12(b)(6), or, as noted, opposed class certification or otherwise obtained relief via Rule 23(f), or obtained summary judgment, trial, and/or post-judgment relief. Decl., ¶ 20. The sophisticated factual and legal questions here and the inherent uncertainty of data security class action litigation combine to enhance the complexity of this case and support the reasonableness of the requested Fees.

### 5.    The Parties Are Both Represented by Skilled Counsel

The skill and standing of counsel on both sides, including their experience and professionalism, also validates the reasonableness of a requested fee award. *In re Rio*, 1996 WL 780512, at *18. When counsel for both parties have significant experience, "[t]he ability of [counsel] to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested." *In re Delphi*, 248 F.R.D. at 504. There is no dispute that both Parties were represented by skilled and experienced counsel. This factor is also satisfied.

18

**6.    The Value of Services Performed on an Hourly Basis Is Reasonable**

The sixth and final factor assesses the value of the legal services performed on an hourly basis, also known as the "lodestar." *In re Cardizem*, 218 F.R.D. at 533; *see also Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Here, as discussed, the percentage-of-the-fund method, not the lodestar method, is the appropriate method for computing a reasonable fee award. Thus, the only potential use for counsel's lodestar in this case would be to "cross-check" that amount with the fees requested by counsel as a percentage of the fund. Even then, however, courts throughout the Sixth Circuit note that a cross-check of counsel's lodestar is "not required." *Arp v. Hohla & Wyss Enterprises, LLC*, 2020 WL 6498956, at *7 (S.D. Ohio Nov. 5, 2020); *Love v. Gannett Co. Inc.*, 2021 WL 4352800, at *6 (W.D. Ky. Sept. 24, 2021) (a "cross-check isn't required," citing *Van Horn*, 436 F. App'x at 501); *Est. of McConnell v. EUBA Corp.*, 2021 WL 1966062, at *6 (S.D. Ohio May 17, 2021) (in considering the *Ramey* factors, "a lodestar cross-check" is "not required"). Rather, where the percentage-of-the-fund method is used to compute counsel's fee, a lodestar cross-check is optional and entirely discretionary. *See Van Horn*, 436 F. App'x at 501 (finding that district courts have complete discretion when deciding to calculate attorneys' fees based on the percentage-of-the-fund or lodestar methods, and thus a cross-check analysis is optional). *In re Delphi*, 248 F.R.D. at 503 (applying

19

percentage-of-the-fund-method in awarding fees in common-fund settlement, without addressing the *Ramey* factor pertaining to "the value of the services on an hourly basis"); *Fournier*, 997 F. Supp. at 832-33; *Arp*, 2020 WL 6498956, at *7-8.

In this case, like in *Delphi*, *Fournier*, and *Arp*, the circumstances giving rise to the Settlement demonstrate that there is no need to "cross-check" the requested Fees with the lodestar value of the time Class Counsel expended in the prosecution of this case. The "total benefit" to the Class is as follows: Documented Loss Claims up to $1,000 per Class Member (with a maximum value of $29,000,000), the full non-reversionary Settlement Fund ($75,000), the Notice and Claims Administration Costs, and any attorneys' Fees, Costs, and Service Awards approved by the Court.

Moreover, as outlined in the Motion for Preliminary Approval (ECF No. 20), the Settlement achieved in this case is a direct result of Class Counsel's expertise, thorough investigation, and efficient resolution of this matter. The Class Members therefore benefited from Class Counsel's extensive analysis into the Data Security Incident here and the law governing the applicable issues, the significant time and other resources (thousands of hours) that Class Counsel expended prosecuting related matters, and developing favorable jurisprudence on issues of critical important to the claims alleged herein. Decl., ¶ 22.

Specifically, the extensive efforts expended by Class Counsel include combining the complex cyber-science behind the Data Security Incident and the

applicable law, so as to prepare and litigate this case. *Id*. In sum, the Court should view this Settlement as part of a multi-year project in which counsel devoted substantial time, money, and other resources developing expertise in the field of data security prosecution for the benefit of the Class—while on a contingency basis here and without any guarantee of recovering fees for their work or being reimbursed their out-of-pocket costs. *Id*., ¶¶ 21–22. The result Class Counsel obtained here, and the efficiency in doing so, would have been impossible without the significant investments of resources of Class Counsel in prosecuting other data security cases, which provided Class Counsel with the knowledge, experience, and jurisprudence to achieve the present Settlement. *Id*. ¶ 22.

In *Arp*, for example, the court awarded counsel a percentage of a common settlement fund as a fee, notwithstanding the value of counsel's lodestar expended solely in that case, based on circumstances similar to those present here. Like the counsel in *Arp*, Class Counsel here have the same type of expertise in the data security context. *See Arp*, 2020 WL 6498956, at *7. Thus, the circumstances of this case likewise support awarding a percentage-of-the-fund fee as in *Arp*, *sans* regard to the value of lodestar. As in *Arp*, Class Counsel should be rewarded for efficiently obtaining an excellent, non-reversionary Settlement Fund that provides *meaningful* relief to all Settlement Class Members. *Id*. As explained, this result would not have been possible without the thousands of hours that Class Counsel devoted, over

21

several years, to investigating data security incidents and developing the law on critically important issues underlying the claims alleged here. *See also* Decl., ¶ 22. These hours "directly benefitted the class in this case." *See Arp*, 2020 WL 6498956, at *7. When properly viewed in this context, the requested fee is reasonable and appropriate here, regardless of the number of hours expended by counsel on the prosecution of this case. *Id.* ("A firm's expertise in a niche area provides important context when analyzing the reasonableness of a fee[.]").

Accordingly, the final *Ramey* Factor also confirms the reasonableness of the request for an award of attorneys' Fees and Costs of $300,000.

## V. THE REQUESTED ATTORNEYS' COSTS ARE REASONABLE AND SHOULD BE APPROVED

The Settlement Agreement provides that Class Counsel may also move for reasonably incurred litigation Costs. ECF No. 20-2, S.A. ¶ 61. As a portion of the total award for Fees and Costs, Plaintiffs request an award of $18,500 in costs.[6] Decl. ¶ 27. These reasonably incurred Costs include mediation, filing fees, costs of service of process, travel, research, copying/mailing, and other litigation-related costs. This amount is reasonable under the circumstances here, in which numerous Plaintiffs' counsel worked to consolidate a number of separately-filed actions in an effort to

---

[6] Class Counsel will provide a final account of the litigation costs at the Final Approval Hearing and will include this amount in the proposed final approval order. The costs are included in the fee request.

efficiently prosecute this data security action, ultimately securing a common fund settlement for the Class.[7]

## VI.   THE REQUESTED SERVICE AWARDS REFLECT PLAINTIFFS' INVOLVEMENT AND SHOULD BE APPROVED

Service Awards are frequently awarded in common-fund cases within this Circuit. *See Hadix v. Johnson*, 322 F.3d 895, 898 (6th Cir. 2003). The approval of a service award is examined through the following factors: (1) the actions taken to protect the Class's interests and whether that resulted in a substantial benefit to the class; (2) the financial risk the class representative assumed; and (3) the time and effort that the class representative dedicated. *Lasalle Town Houses Coop. Assoc. v. City of Detroit*, 2016 WL 1223354, at *7 (E.D. Mich. Mar. 29, 2016). "The range of acceptable enhancement payments is discretionary, but courts have determined that a $5,000 payment is presumptively reasonable." *In re Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 172 (D. Md. 2022) (citing *Burden v. SelectQuote*, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013)).

Plaintiffs spent considerable time protecting the interests of the Class through their involvement. Decl., ¶ 23. Plaintiffs assisted their respective counsel in

---

[7] "Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement, including expenses incurred in connection with document production, . . . travel and other litigation-related expenses." *New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 634-35 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008).

23

investigating claims, drafting and reviewing the respective initial complaint and the CAC, preserving documents, answering additional questions ahead of mediation, and reviewing and approving the Settlement and filings related thereto. *Id*., ¶ 24.

Based on the above, a Service Award of $1,250 for each Plaintiff is fair, reasonable, and thus, should be approved. *See, e.g.*, *Thomsen v. Morley Companies, Inc.*, 639 F. Supp. 3d 758, 766 (E.D. Mich. 2022) (preliminarily approving Service Award of $1,500 in similar data breach case)) & *Thomsen v. Morley Companies, Inc.*, 2023 WL 3437802, at *3 (E.D. Mich. May 12, 2023) (providing final approval to $1,500 Service Award); *Pfeiffer v. RadNet, Inc.*, 2022 WL 2189533, at *4 (C.D. Cal. Feb. 15, 2022) (awarding $1,500 Service Awards).

## VII.   CONCLUSION

Based on the above, Plaintiffs respectfully request that the Court (1) approve Plaintiffs' request for attorneys' Fees and reasonably incurred litigation Costs in the amount of $300,000; and (2) approve Service Awards for each named Plaintiff in the amount of $1,250 each in recognition of their efforts on behalf of the Settlement Class as Class Representatives. A proposed order is attached as **Exhibit B** hereto.

Dated: July 13, 2026                    Respectfully submitted:

                                        /s/ E. Powell Miller
                                        E. Powell Miller (P39487)
                                        Emily E. Hughes (P68724)
                                        **THE MILLER LAW FIRM**
                                        950 W. University Drive, Suite 300

24

Rochester, MI 48307
T: (248) 841-2200
epm@millerlawpc.com
eeh@millerlawpc.com

Casondra Turner
**MILBERG PLLC**
260 Peachtree Street NW, Suite 2200
Atlanta, GA 30303
Tel: (866) 252-0878
E: cturner@milberg.com

Scott Edward Cole, Esq.
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
(510) 891-9800
sec@colevannote.com

***Proposed Settlement Class Counsel***

25

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2026, I electronically filed the foregoing documents using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, MI 48307
Tel: (248) 841-2200
epm@millerlawpc.com