# Exhibit A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| *In re Belle Tire Distributors, Inc. Data Breach Litigation* | Case No. 2:24-cv-12966-MFL-CI<br><br>Hon. Matthew F. Leitman<br><br>**CLASS ACTION** |

**JOINT DECLARATION IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

We, E. Powell Miller, Casondra Turner, and Scott Cole, pursuant to 28 U.S.C. § 1746 hereby declare as follows:

1.       We are Interim Co-Lead Counsel of Record for Plaintiffs and proposed Class Counsel for the Settlement Class in the above-captioned Action.[1] We submit the foregoing Declaration based upon personal knowledge and, if compelled to testify as a witness, would testify competently thereto.

2.       We make this declaration in support of Plaintiffs' Unopposed Motion for Attorneys' Fees, Costs, and Service Awards, filed herewith.

3.       This case arises from a data breach (the "Data Breach") experienced by Belle Tire Distributors, Inc. ("Belle Tire" or "Defendant") on or about June 11, 2024, which involved the potential unauthorized access of Personally Identifiable Information ("PII") and Protected Health Information ("PHI"). Defendant initially

---

[1] References to the collective counsel for Plaintiffs herein will be "Class Counsel."

1

believed that roughly 29,000 individuals were affected by the Data Breach. Following the Court's Order granting preliminary approval of class action settlement, and review of the class list provided by Defendant (including de-duplication), the Claims Administrator determined there are approximately 28,629 individuals in the Settlement Class.

4. On November 7, 2024, Plaintiff Tabbitha Berry initiated this action against Belle Tire by filing a Complaint on behalf of herself and a putative class of other similarly situated individuals. ECF No. 1.

5. Beginning on November 11, 2024, and continuing through November 20, 2024, four additional related complaints were filed against Belle Tire. *See, Hamza Yaser Algharably v. Belle Tire Distributors, Inc.*, No. 2:24-cv-12984 (filed Nov. 11, 2024); *Zachary Loafman v. Belle Tire Distributors, Inc.*, No. 2:24-cv-12994 (filed Nov. 12, 2024); *Anthony Georges v. Belle Tire Distributors, Inc.*, No. 2:24-cv-13018 (filed Nov. 14, 2024); *Zach Travis v. Belle Tire Distributors, Inc.*, No. 2:24-cv-13084 (filed Nov. 20, 2024).

6. Prior to filing the initial action, Proposed Settlement Class Counsel and other counsel for Plaintiffs conducted comprehensive pre-filing investigations concerning every aspect of the factual and legal issues underlying this action.

7. On March 19, 2025, following an earlier Status Conference, the Court consolidated all related cases into the present, first-filed case. *See,* Order Granting

2

Consolidation, ECF No. 8. On April 16, 2025, Plaintiffs filed a Consolidated Amended Class Action Complaint ("CAC") on behalf of themselves and all others similarly situated. ECF No. 10.

8.     Shortly thereafter, the Parties discussed early resolution via mediation. To that end, on May 6, 2025, the Court granted the Parties' stipulation to stay the proceedings pending mediation. ECF No. 11. The Parties then set a mediation for September 30, 2025 with mediator Judge Morton Denlow (ret.).

9.     Prior to attending mediation, Plaintiffs drafted and served detailed pre-mediation discovery requests pertaining, *inter alia*, to the following areas of inquiry: cyber-forensic reports, internal investigations, correspondence with government regulatory agencies, number of persons affected by the Data Breach, security measures taken post-Data Breach, the types of PII and PHI compromised during the Data Breach, the type and amount of insurance coverage, evidence of fraud or misuse and various demographics of those people affected by the Data Breach.

10.     Defendant produced its pre-mediation responses with sufficient time for Class Counsel to thoroughly evaluate and include them in their analysis of liability, damages and the likelihood of achieving class certification. Indeed, this pre-mediation information was utilized by both sides to draft and exchange mediation briefs outlining their respective positions.

11.     The Parties were unable to reach an agreement after their September

3

30, 2025, full day mediation with Judge Denlow.

12.     Post-mediation, the Parties continued their ADR efforts, engaging in various rounds of settlement discussions; on February 6, 2026, after months of such negotiations, the Parties reached an agreement in principle, which called for the resolution of the claims of Plaintiffs and all members of the putative Class.

13.     Thereafter, the Parties spent substantial time negotiating settlement terms, finally executing the Settlement Agreement on April 13, 2026.

14.     Following preliminary settlement approval, Class Counsel have worked cooperatively with Counsel for Belle Tire and the Claims Administrator to ensure the full and timely dissemination of notice to Class Members; the Notice was directly disseminated to every Class Member by postal mail and/or email on May 28, 2026. As of July 10, 2026, with numerous Class Members having responded, not a single objection nor opt-out has been received.

15.     The Settlement benefits, including the ability to make a claim for Documented Losses or a claim from the entirely non-reversionary Alternative Pro will be distributed to Settlement Class Members pursuant to the Settlement Agreement, and any amount to be approved by the Court to be paid for attorneys' Fees, Costs, and Service Awards will not act to reduce the amount made available to Settlement Class Members in any way.

16.     Data breach litigation is complicated and risky. If the case had not

settled, the Parties would have needed to complete dispositive briefing. The Parties would have then commenced formal discovery, and Plaintiffs would have had to prepare the case for class certification, summary judgment, trial, perhaps even engage in appellate work. Undoubtedly, further litigation would create substantial additional risks that the Class would not be certified and/or that the Class Members would recover significantly reduced relief—or receive nothing at all.

17.    Each of the Plaintiffs' law firms working on this case have done so, and continued to do so on a contingency fee basis; none of them have received any reimbursement to date for their time or their significant advanced expenses. And based on a review of lodestar reports conducted by Class Counsel, a substantially *negative* lodestar multiplier is present here.

18.    As noted, Class Counsel conducted an extensive pre-filing investigation into the relevant facts and legal issues, which was informed by the vast experience and expertise that they had accumulated during the prosecution of numerous other data breach cases. Specifically, the aforesaid extensive efforts include combining the complex cyber-science behind the Data Breach and the applicable law, so as to prepare and litigate this case. This included the investment of significant time, effort, and resources to this litigation without compensation. Class Counsel, for example, paid for the mediation with retired Judge Denlow with no guarantee of reimbursement.

19.     While Class Counsel was cognizant of the risk of nonpayment, they nonetheless embarked on a fact-intensive investigation of Defendant's practices, filed the pertinent cases, worked to consolidate related cases, engaged in settlement discussions with Defendant, exchanged informal discovery, drafted and filed an amended complaint, and participated in a formal mediation.

20.     Class Counsel invested this time and resources into the case despite the significant and inherent risk of nonpayment. Given the defenses mounted by Defendant—led by highly qualified and competent counsel, who regularly defend complex class action data breach cases—success on the relevant legal issues was far from certain. Class Counsel understands that the Court could have granted a motion to dismiss, and Defendant could have opposed class certification pursuant to Rule 23 (including appeal under subsection (f)), obtained summary judgment, trial, and/or post-judgment relief. Finally, case law in the field of data security is far from established.

21.     As a result of the work Class Counsel devoted to this litigation, their law firms were forced to forgo representing clients in other matters that they otherwise would have accepted. In sum, the Court should not view this Settlement, or this case generally, in a vacuum; instead, it should be viewed as part of a multi-year effort in which counsel devoted substantial time, money, and other resources for the benefit of the Class—all on a contingency basis and all without any guarantee

of recovering fees for their work or reimbursement of their out-of-pocket expenses.

22. The result that Class Counsel obtained here, and the efficiency with which they obtained it, would have been impossible without the significant investments of resources that Class Counsel devoted in prosecuting other data breach cases over a number of years, which provided Class Counsel with the knowledge, experience, and jurisprudence to achieve the present Settlement. The Class Members therefore benefited from Class Counsel's extensive analysis into the Data Breach here and the law governing the applicable issues, the significant time and other resources (thousands of hours) that Class Counsel expended prosecuting related matters, and developing favorable jurisprudence on issues of critical import to the claims alleged herein.

23. Moreover, Plaintiffs Tabbitha Berry, Hamza Yaser Algharably, Zachary Loafman, Anthony Georges, and Zach Travis spent considerable time protecting the interests of the Class through their involvement in this case.

24. Specifically, each Plaintiff assisted their respective counsel with the investigation of their claims, aided in drafting and reviewing their respective complaints, and examined and ultimately approved the Consolidated Amended Complaint. Further, all of the Plaintiffs preserved documents that they would need to render to Defendant in discovery, and each Plaintiff was consulted and remained actively engaged throughout the settlement process. And Plaintiffs provided

7

additional information ahead of the formal mediation.

25.     In recognition of the time, effort, and expense Plaintiffs incurred in pursuing the claims benefiting the Settlement Class, Plaintiffs respectfully request approval of a $1,250.00 service award to each Named Plaintiff.

26.     Class Counsel further respectfully asks the Court award the requested attorneys' Fees and Costs. As set forth in the accompanying brief, the requested amount of $300,000 for Fees and Costs is fair and reasonable under the facts and circumstances of this litigation and the Sixth Circuit's Six-Factor Test, is aligned with the average percentage afforded in analogous class action settlements, and is also commensurate with fees awarded in other class action cases in this judicial district.

27.     Plaintiffs have incurred approximately $18,500 in reasonably incurred litigation costs to date, which includes the cost of mediation ($13,000); filing fees ($2,025); costs of service of process ($742); experts, research, copying/mailing and other administrative costs ($1,890); and costs for travel ($840). As such, Class Counsel respectfully requests that this Court include an award of $18,500 when calculating the total award amount.

We declare, pursuant to 28 U.S.C. § 1746 and under penalty of perjury under the laws of the State of Michigan and of the United States of America, that the foregoing is true and correct to the best of our knowledge.

Dated: July 13, 2026          */s/ E. Powell Miller*
                              E. Powell Miller (P39487)

Dated: July 13, 2026          */s/ Casondra R. Turner*
                              Casondra R. Turner

Dated: July 13, 2026          */s/ Scott Edward Cole*
                              Scott Edward Cole

9