# Exhibit A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| *In re Belle Tire Distributors, Inc. Data Breach Litigation* | Case No. 2:24-cv-12966-MFL-CI<br>Hon. Matthew F. Leitman<br>**CLASS ACTION** |

**JOINT DECLARATION OF SETTLEMENT CLASS COUNSEL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

We, E. Powell Miller, Casondra Turner, and Scott Edward Cole, pursuant to 28 U.S.C. § 1746 hereby declare as follows:

1. We and our firms are Interim Co-Lead Counsel of record for Plaintiffs and proposed Class Counsel for the Settlement Class in the above-captioned Action.[1] We submit the foregoing Declaration based upon personal knowledge and, if compelled to testify as a witness, would testify competently thereto.

2. We make this Joint Declaration in support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, filed herewith.

3. This case arises from a data breach (the "Data Breach") experienced by Belle Tire Distributors, Inc. ("Belle Tire" or "Defendant") on or about June 11, 2024, which involved the potential unauthorized access of Personally Identifiable

[1] References to the Proposed Settlement Counsel for Plaintiffs herein will be "Class Counsel."

Information ("PII") and Protected Health Information ("PHI"). Defendant initially believed that roughly 29,000 individuals were affected by the Data Breach. Following the Court's Order Granting Preliminary Approval of Class Action Settlement (ECF No. 22), and review of the class list provided by Defendant (including de-duplication), the Claims Administrator determined there are approximately 28,629 individuals in the Settlement Class.

4. On November 7, 2024, Plaintiff Tabbitha Berry initiated this action against Belle Tire by filing a Complaint on behalf of herself and a putative class of other similarly situated individuals. ECF No. 1.

5. Beginning on November 11, 2024, and continuing through November 20, 2024, four additional related complaints were filed against Belle Tire. *See Hamza Yaser Algharably v. Belle Tire Distributors, Inc.*, No. 2:24-cv-12984 (filed Nov. 11, 2024); *Zachary Loafman v. Belle Tire Distributors, Inc.*, No. 2:24-cv-12994 (filed Nov. 12, 2024); *Anthony Georges v. Belle Tire Distributors, Inc.*, No. 2:24-cv-13018 (filed Nov. 14, 2024); *Zach Travis v. Belle Tire Distributors, Inc.*, No. 2:24-cv-13084 (filed Nov. 20, 2024).

6. Prior to filing the initial action, Class Counsel and other counsel for Plaintiffs conducted comprehensive pre-filing investigations concerning every aspect of the factual and legal issues underlying this action.

7. On March 19, 2025, following an earlier Status Conference, the Court

consolidated all related cases into the present, first-filed case. *See* Order Granting Consolidation, ECF No. 8. On April 16, 2025, Plaintiffs filed a Consolidated Amended Class Action Complaint ("CAC") on behalf of themselves and all others similarly situated. ECF No. 10.

8. Shortly thereafter, the Parties discussed early resolution via mediation. To that end, on May 6, 2025, the Court granted the Parties' stipulation to stay the proceedings pending mediation. ECF No. 11. The Parties then set a mediation for September 30, 2025, with mediator Judge Morton Denlow (ret.).

9. Prior to attending mediation, Plaintiffs drafted and served detailed pre-mediation discovery requests pertaining to, *inter alia*, the following areas of inquiry: cyber-forensic reports, internal investigations, correspondence with government regulatory agencies, number of persons affected by the Data Breach, security measures taken post-Data Breach, the types of PII and PHI compromised during the Data Breach, the type and amount of insurance coverage, evidence of fraud or misuse, and various demographics of those people affected by the Data Breach.

10. Defendant produced its pre-mediation responses with sufficient time for Class Counsel to thoroughly evaluate and include them in their analysis of liability, damages, and the likelihood of achieving class certification. Indeed, this pre-mediation information was utilized by both sides to draft and exchange mediation briefs outlining their respective positions.

11. The Parties were unable to reach an agreement at their September 30, 2025 full day mediation with Judge Denlow.

12. Post-mediation, the Parties continued their ADR efforts, engaging in various rounds of settlement discussions. On February 6, 2026, after months of such negotiations, including numerous rounds of correspondence and telephone calls, the Parties reached an agreement in principle, which called for the resolution of the claims of Plaintiffs and all members of the putative Class.

13. Thereafter, the Parties spent substantial time negotiating settlement terms, finally executing the Settlement Agreement on April 13, 2026.[2]

14. On April 28, 2026, this Court granted Preliminary Approval of the Settlement and ordered that Notice be given to Class Members. *See* ECF No. 22. Settlement Administrator Simpluris successfully disseminated Notice to the Settlement Class. Simpluris determined there were a total of 28,665 Settlement Class Members. *See* Declaration of Lisa Pavlik of Simpluris, Inc. in Support of Final Approval of Settlement, ¶ 5 ("Pavlik Decl.").[3]

15. A Postcard Notice was provided via U.S. First Class Mail to 18,080 Settlement Class Members, and Email Notice was sent to 10,549 Settlement Class

---

[2] The Settlement Agreement, in addition to being included in earlier pleadings, is attached hereto as **Exhibit 1**, for ease of review by Settlement Class Members.
[3] The Pavlik Declaration is attached as an exhibit to Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement.

Members. Pavlik Decl., ¶ 8. Simpluris received 2,946 returned Postcard Notices; 2,580 Postcard Notices were re-mailed to either a newfound address or with forwarding addresses provided by USPS, and 366 Postcard Notices were determined to be undeliverable, and so Postcard Notice reached 17,714 Settlement Class Members. *Id.*, ¶ 11. For Email Notice, 330 were considered undeliverable or were bounced back, and so Email Notice reached 10,219 Settlement Class Members. *Id.*, ¶ 8.

16. Therefore, Notice reached 27,933 Settlement Class Members, which is approximately 97.45% of the Settlement Class, easily meeting the due process standard. Pavlik Decl., ¶ 11. The Notice was written in plain language and informed each Settlement Class Member how to reach the Settlement website, make a claim and how to opt-out or object to the Settlement. The Settlement Website has been available to the public since May 28, 2026, and as of August 3, 2026, the Website has been visited by 4,355 unique visitors with 9,608 page views. Pavlik Decl., ¶ 13.

17. To date, Class Members have submitted 575 Claims, including 571 who made a claim for the Alternative Pro Rata Cash Payment. Pavlik Decl., ¶¶ 15, 17. As of August 7, 2026, no Settlement Class Members have opted out or objected to the Settlement. *Id.*, ¶¶ 19, 21. Given the $75,000 Alternative Pro Rata Settlement Fund, 571 Settlement Class Members will each receive a significant recovery of roughly $131.35 (75,000/571). *See id.* ¶ 17.

18. Data breach litigation is complicated and risky. If the case had not settled, the Parties would have needed to complete dispositive briefing. The Parties would have then commenced formal discovery, and Plaintiffs would have had to prepare the case for class certification, summary judgment, trial, perhaps even engage in appellate work. Undoubtedly, further litigation would create substantial additional risks that the Class would not be certified and/or that the Class Members would recover significantly reduced relief—or receive nothing at all.

19. Class Counsel regularly engage in consumer privacy cases, have the resources necessary to prosecute this case, and have frequently been appointed lead class counsel in data breach cases and other class actions.

20. Class Counsel have devoted substantial resources to this action: investigating Plaintiffs' claims; analyzing the scope of the Data Security Incident and Belle Tire's privacy policies, remedial steps, and financial condition; participating in mediation; and, ultimately, negotiating a Settlement that provides meaningful relief for the Class in the face of substantial litigation risks. Class Counsel have vigorously prosecuted this case and will work diligently on behalf of the Class throughout the administration process.

21. As noted, Class Counsel conducted an extensive pre-filing investigation into the relevant facts and legal issues, which was informed by the vast experience and expertise that they had accumulated during the prosecution of

numerous other data breach cases. Specifically, the aforesaid extensive efforts include combining the complex cyber-science behind the Data Security Incident and the applicable law, so as to prepare and litigate this case.

22. While Class Counsel was cognizant of the risk of nonpayment, they nonetheless embarked on a fact-intensive investigation of Defendant's practices, filed the pertinent cases, worked to consolidate related cases, engaged in settlement discussions with Defendant, exchanged informal discovery, drafted and filed a consolidated amended complaint, and participated in a formal mediation.

23. Class Counsel invested this time and resources into the case despite the significant and inherent risk of nonpayment. Given the defenses mounted by Defendant and the lengthy rounds of negotiation—led by highly qualified and competent counsel, who regularly defend complex class action data breach cases—success on the relevant legal issues was far from certain. Class Counsel understands that, without a settlement, the next step would be for Belle Tire to file a motion to dismiss and it is far from certain that Plaintiffs would have prevailed, and, beyond that, Defendant could have opposed a motion for class certification pursuant to Rule 23 (including appeal under subsection (f)), obtained summary judgment, trial, and/or post-judgment relief. Finally, caselaw in the field of data security is far from established.

24. As a result of the work Class Counsel devoted to this litigation, their

law firms were forced to forgo representing clients in other matters that they otherwise would have accepted. In sum, the Court should not view this Settlement, or this case generally, in a vacuum; instead, it should be viewed as part of a multi-year effort in which counsel devoted substantial time, money, and other resources for the benefit of the Class—all on a contingency basis and all without any guarantee of recovering fees for their work or reimbursement of their out-of-pocket expenses.

25. The result that Class Counsel obtained here, and the efficiency with which they obtained it, would have been impossible without the significant investments of resources that Class Counsel devoted in prosecuting other data breach cases over a number of years, which provided Class Counsel with the knowledge, experience, and jurisprudence to achieve the present Settlement. The Class Members therefore benefited from Class Counsel's extensive analysis into the Data Breach here and the law governing the applicable issues, the significant time and other resources (thousands of hours) that Class Counsel expended prosecuting related matters, and developing favorable jurisprudence on issues of critical import to the claims alleged herein.

26. Moreover, Plaintiffs Tabbitha Berry, Hamza Yaser Algharably, Zachary Loafman, Anthony Georges, and Zach Travis spent considerable time protecting the interests of the Class through their involvement in this case. Plaintiffs support the settlement.

27. Specifically, each Plaintiff assisted their respective counsel with the investigation of their claims, aided in drafting and reviewing their respective complaints, and examined and ultimately approved the Consolidated Amended Complaint. Further, all of the Plaintiffs preserved documents that they would need to render to Defendant in discovery, and each Plaintiff was consulted and remained actively engaged throughout the settlement process. And Plaintiffs provided additional information ahead of the formal mediation.

28. As discussed in Plaintiffs' Motion for Attorneys' Fees, Costs and Service Awards (ECF No. 25), Plaintiffs respectfully request that the Court approve a $1,250.00 Service Award for each Named Plaintiff and an award of $300,000.00 to Class Counsel for Attorneys' Fees and Litigation Costs—of which roughly $18,500 is for Litigation Costs.

We declare, pursuant to 28 U.S.C. § 1746 and under penalty of perjury under the laws of the State of Michigan and of the United States of America, that the foregoing is true and correct to the best of our knowledge.

Dated: August 19, 2026 — */s/ E. Powell Miller*
E. Powell Miller (P39487)

Dated: August 19, 2026 — /s/ *Casondra R. Turner*
Casondra R. Turner

Dated: August 19, 2026 — /s/ *Scott Edward Cole*
Scott Edward Cole

# Exhibit 1

# SETTLEMENT AGREEMENT

This Settlement and Release Agreement ("Agreement" or "Settlement Agreement") is entered into by and between Belle Tire Distributors, Inc. ("Belle Tire" or "Defendant"), and Tabbitha Berry, Hamza Yaser Algharably, Zachary Loafman, Anthony Georges, and Zach Travis ("Plaintiffs"), both individually and on behalf of the Settlement Class, in the litigation *In Re: Belle Tire Distributors, Inc. Data Breach Litigation*, Case No. 2:24-cv-12966, currently pending in the United States District Court for the Eastern District of Michigan (the "Litigation"). Defendant and Plaintiffs are each referred to as a "Party" and are collectively referred to herein as "the Parties."

## I. Recitals

1. The Litigation arises out of a data security incident suffered by Belle Tire and identified on or about June 11, 2024, in which cybercriminals targeted and accessed Belle Tire's computer network and may have seen and taken certain sensitive information (the "Private Information") of Plaintiffs and Settlement Class Members (the "Data Security Incident").

2. Defendant denies all claims asserted against it in the Litigation, denies all allegations of wrongdoing and liability, and denies all material allegations of the operative Consolidated Class Action Complaint (the "CAC") (ECF No. 10).

3. Plaintiffs and Class Counsel believe that the legal claims asserted in the Litigation have merit. Class Counsel have investigated the facts relating to the claims and defenses alleged and the underlying events in the Litigation, have made a thorough study of the legal principles applicable to the claims and defenses asserted in the Litigation, and have conducted a thorough assessment of the strengths and weaknesses of the Parties' respective positions.

4. The Parties desire to settle the Litigation and all claims arising out of or related to the allegations and/or subject matter of the CAC and the Litigation on the terms and conditions set forth herein for the purpose of avoiding the burden, expense, risk, and uncertainty of continuing

to litigate the Litigation.

5. Counsel for the Parties engaged in extensive arm's-length negotiations concerning a possible settlement of the claims asserted in the Litigation, including a mediation with the Hon. Morton Denlow of JAMS on September 30, 2025. These hard-fought negotiations eventually resulted in a settlement, the terms of which are reflected in this Settlement Agreement.

6. Plaintiffs and Class Counsel, on behalf of the Settlement Class, have concluded, based upon their investigation, and taking into account the contested issues involved, the expense and time necessary to prosecute the Litigation through trial, the risks and costs associated with further prosecution of the Litigation, the uncertainties of complex litigation, the desired outcome from continued litigation, and the substantial benefits to be received pursuant to this Settlement Agreement, that a settlement with Defendant on the terms set forth herein is fair and reasonable and in the best interest of Plaintiffs and the Settlement Class. Plaintiffs and Class Counsel believe that the Settlement confers substantial benefits upon the Settlement Class.

7. The Parties agree and understand that neither this Settlement Agreement, nor the settlement it represents, shall be construed as an admission by Defendant of any wrongdoing whatsoever, including an admission of a violation of any statute or law or of liability on the claims or allegations in the Litigation or any other similar claims in other proceedings, or that any such claims would be suitable for class treatment. Defendant denies liability for the claims asserted and is entering into this Agreement to avoid further expense, inconvenience, and distraction of protracted litigation, and to obtain the nationwide releases, orders, and a judgment contemplated by this Agreement, thereby resolving with finality all claims that Plaintiffs and the Settlement Class have or could have asserted against the Released Parties.

8. The Parties, by and through their respective duly authorized counsel of record, and

intending to be legally bound hereby, agree that the Litigation, and all matters and claims in the CAC, and all matters and claims arising out of or related to the allegations and/or subject matter of the CAC and Litigation, shall be settled, compromised, and dismissed, on the merits and with prejudice, upon the following terms and conditions.

## II. Definitions

9. As used herein and in the related documents attached hereto as exhibits, the following terms have the meaning specified below:

a. "Attorneys' Fees, Costs, and Service Awards" means the amount of the attorneys' fees and Litigation Costs of Class Counsel and the Service Awards for Class Representatives, which will be submitted for Court approval.

b. "Claims Deadline" means the deadline for filing claims set at a date certain sixty (60) Days from the Notice Date, as defined in Paragraph 44.

c. "Claim Form" means the form that Settlement Class Members must complete and submit on or before the Claims Deadline to be eligible for the benefits described herein, and substantially in the form of **Exhibit A** to this Settlement Agreement. The Claim Form shall require a sworn affirmation under the laws of the United States but shall not require a notarization or any other form of verification.

d. "Claims Period" means the period for filing claims up until a date certain sixty (60) Days from the Notice Date.

e. "Claimants" shall have the meaning given in Paragraph 34.

f. "Class Counsel" shall mean The Miller Law Firm P.C., Milberg, PLLC, and Cole & Van Note.

g. "Class Representatives" means the Plaintiffs, Tabbitha Berry, Hamza Yaser Algharably, Zachary Loafman, Anthony Georges, and Zach Travis.

h. "Court" means the United States District Court for the Eastern District of Michigan.

i. "Data Security Incident" means the unauthorized access by a third party of Defendant's computer system, discovered on or about June 11, 2024, which led to the alleged disclosure of the Private Information of Plaintiffs and Settlement Class Members.

j. "Day(s)" means calendar days, but does not include the day of the act, event, or default from which the designated period of time begins to run. Further and notwithstanding the above, when computing any period of time prescribed or allowed by this Settlement Agreement, "Days" includes the last day of the period unless it is a Saturday, a Sunday, or a federal legal holiday, in which event the period runs until the end of the next day that is not a Saturday, Sunday, or federal legal holiday.

k. "Defendant's Counsel" means Honigman LLP.

l. "Documented Losses" are defined in Paragraph 14.

m. "Effective Date" means the date defined in Paragraph 89.

n. "Final" with respect to a judgment or order means that all of the following have occurred: (i) the time expires for noticing any appeal; (ii) if there is an appeal or appeals, completion, in a manner that finally affirms and leaves in place the judgment or order without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration, rehearing, or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (iii) final dismissal of any appeal or the final dismissal of any proceeding on certiorari.

o. "Final Approval Hearing" means the hearing to determine whether the

Settlement should be given final approval and whether the application of Class Counsel for Attorneys' Fees, Costs, and Service Awards for Plaintiffs should be approved.

p. "Final Approval Order" means the order of the Court finally approving this Settlement, substantially in the form of **Exhibit E** to this Settlement Agreement.

q. "Final Judgment" means the dismissal with prejudice in the Litigation, entered in connection with the Settlement and Final Approval Order.

r. "Litigation" means the consolidated lawsuit entitled *In Re: Belle Tire Distributors, Inc. Data Breach Litigation*, Case No. 2:24-cv-12966, currently pending in the United States District Court for the Eastern District of Michigan.

s. "Litigation Costs" means costs and expenses incurred by Class Counsel in connection with commencing, prosecuting, mediating, settling the Litigation, and obtaining an order of final judgment.

t. "Long-Form Notice" means the written notice substantially in the form of **Exhibit B** to this Settlement Agreement.

u. "Notice and Claims Administration Costs" means all approved reasonable costs incurred or charged by the Settlement Administrator in connection with providing notice to members of the Settlement Class and administering the Settlement. This does not include any separate costs incurred directly by Defendant or any of Defendant's attorneys, agents or representatives in this Litigation.

v. "Notice Date" means the date defined in Paragraph 44.

w. "Notice Program" means the notice program described in Section VII.

x. "Objection Deadline" shall have the meaning set forth in Paragraph 54 or as otherwise ordered by the Court.

y. "Parties" means Plaintiffs collectively and Defendant, and a "Party" means

either the Plaintiffs or the Defendant.

z. "Plaintiffs' Released Claims" means all claims and other matters released in and by Section XIV of this Settlement Agreement.

aa. "Postcard Notice," "Short-Form Notice," and "Email Notice" means the written notice to be sent to Settlement Class Members pursuant to the Preliminary Approval Order substantially in the form as the Short-Form Notice attached as **Exhibit C** to this Settlement Agreement.

bb. "Preliminary Approval Date" means the date the Preliminary Approval Order has been executed and entered by the Court.

cc. "Preliminary Approval Order" means the order certifying the proposed Class for settlement purposes, preliminarily approving this Settlement Agreement, approving the Notice Program, and setting a date for the Final Approval Hearing, entered in a format the same as or substantially similar to that of the Proposed Preliminary Approval Order attached hereto as **Exhibit D.**

dd. "Related Entities" means Belle Tire's past or present parents, subsidiaries, divisions, and related or affiliated entities of any nature whatsoever, whether direct or indirect, as well as each of Belle Tire's and these entities' respective predecessors, successors, members, directors, officers, employees, principals, agents, attorneys, providers, vendors, customers, insurers, and reinsurers, and includes, without limitation, any person related to any such entity who is, was, or could have been named as a defendant in this Litigation.

ee. "Released Claims" means all claims and other matters released in and by Section XIV of this Settlement Agreement.

ff. "Releasing Parties" shall be defined as Plaintiffs, the Settlement Class

Members and all of their respective past, present or future spouses, immediate family members, heirs, executors, representatives, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, and corporations.

gg. "Released Persons" means Defendant and the Related Entities, as well as their respective past, present or future joint ventures, parent companies, subsidiaries, licensors, licensees, associates, affiliates, employers, and its, or their respective, administrators, employees, independent contractors, agents, consultants, insurers, reinsurers, directors, managing directors, officers, principals, members, managers, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, and corporations, whether foreign or domestic.

hh. "Settlement" means the settlement reflected by this Settlement Agreement.

ii. "Settlement Administrator" means the class action settlement administrator retained to carry out the notice plan and administer the claims and settlement fund distribution process. After reviewing bids, the Parties, subject to Court approval, have agreed to use Simpluris, Inc. as the Settlement Administrator in this matter.

jj. "Settlement Agreement" means this Settlement Agreement, including releases and all exhibits hereto.

kk. "Settlement Class" means "all individuals whose Private Information was

exposed to unauthorized third parties as a result of the Data Security Incident discovered by Defendant on or before June 11, 2024." Excluded from the Class are the judge(s) presiding over this matter and the clerks of said judge(s).

ll. "Settlement Class Member[s]" means all persons who are members of the Settlement Class, except those who timely opt out of the Settlement Class in accordance with Section IX. Without counting those who opt out, Defendant estimates that there are approximately 29,000 Settlement Class Members.

mm. "Settlement Fund" or "Alternative Pro Rata Settlement Fund" means the non-reversionary sum of seventy-five thousand dollars and zero cents ($75,000.00), to be paid by, or on behalf of, Defendant as specified in this Agreement, including any interest accrued thereon after payment, from which only the alternative pro rata Cash Payments to Settlement Class Members who submit valid and timely claims for the alternative pro rata Cash Payment shall be paid; compensation for Documented Losses will not be paid from the Alternative Pro Rata Settlement Fund.

nn. "Settlement Website" means a dedicated website created and maintained by the Settlement Administrator, which will contain relevant documents and information about the Settlement, including this Settlement Agreement, the Postcard Notice, the Long-Form Notice, and the Claim Form, among other documents and information as agreed upon by the Parties and approved by the Court as required.

oo. "Valid Claims" means Settlement Claims in an amount approved by the Settlement Administrator or found to be valid through the claims processing and/or dispute resolution process.

## III. CERTIFICATION OF THE SETTLEMENT CLASS

10. For settlement purposes only, the Parties will request that the Court certify the

Settlement Class.

11. If this Settlement Agreement is terminated or disapproved, or if the Effective Date should not occur for any reason, then the Parties' consent to and request for certification of the Settlement Class will be withdrawn and deemed to be of no force or effect for any purpose in this or any other proceeding.

12. Neither this Settlement Agreement, nor any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of this Settlement Agreement is intended to, or shall be construed as, or deemed to be evidence of an admission or concession by the Settling Defendants that a class should be or should have been certified for any purposes other than this Settlement and none of them shall be admissible in evidence for any such purpose in any proceeding.

## IV. BENEFITS TO SETTLEMENT CLASS MEMBERS

13. **Compensation to Settlement Class Members.** Settlement Class Members must submit a valid Claim Form within the Claims Period in order to receive compensation from the Settlement. Claims will be subject to review for completeness and plausibility by the Settlement Administrator. For claims deemed to be invalid, the Settlement Administrator will provide claimants an opportunity to cure in the manner set forth in Paragraph 34. Settlement Class Members are eligible to receive compensation from the Settlement by electing one (and only one) of the Settlement options: (a) reimbursement for Documented Losses as set forth in Section IV(13), or (b) participation in an alternative pro rata cash payment.

14. **Documented Losses.** All Settlement Class Members who submit a Valid Claim using the Claim Form are eligible for reimbursement for 150% of that Class Member's documented out-of-pocket expenses incurred because of the Data Security Incident, with reasonable proof connecting the expense to the Data Security Incident ("Documented Losses").

The most a Settlement Class Member can be awarded for Documented Losses is $1,000. Examples of Documented Losses include, but are not limited to: (i) unreimbursed bank fees; (ii) fees for credit reports; (iii) identity theft protection services and plans purchased between June 11, 2024 and the Claims Deadline; (iv) cell phone charges (only if charged by the minute); (v) postage; and (vi) gasoline for local travel. To receive reimbursement for any Documented Losses, Settlement Class Members must submit a Valid Claim, including necessary supporting documentation and proof connecting the claimed expense to the Data Security Incident, to the Claims Administrator.

15. **Alternative Pro Rata Cash Payment.** Settlement Class Members may file a claim for an alternative Cash Payment that is allocated by proration as described in Paragraph 19.

## V. ALTERNATIVE PRO RATA SETTLEMENT FUND

16. **Alternative Pro Rata Settlement Fund:** Defendant agrees to make a payment of seventy-five thousand dollars and zero cents ($75,000.00) and deposit that payment into the Alternative Pro Rata Settlement Fund, along with the Notice and Claims Administration Costs, thirty (30) Days after this Court enters the Preliminary Approval Order. The Alternative Pro Rata Settlement Fund shall be used to provide alternative pro rata cash payments to Settlement Class Members who submit valid claims for the alternative Cash Payment. The timing set forth in this provision is contingent upon the receipt of an invoice, W-9, payment instructions from the Settlement Administrator for the Alternative Pro Rata Settlement Fund, and contact information of an individual to voice-verify the instructions, by the date that the Preliminary Approval Order is issued.

17. **Custody of the Alternative Pro Rata Settlement Fund:** The Alternative Pro Rata Settlement Fund shall be deposited in an appropriate trust account established by the Settlement Administrator but shall remain subject to the jurisdiction of the Court until such time as the entirety of the Alternative Pro Rata Settlement Fund is distributed pursuant to this Agreement or returned

to Defendant in the event this Agreement is voided, terminated, or cancelled.

a. In the event this Agreement is voided, terminated, or cancelled due to lack of approval from the Court or any other reason: (i) the Class Representatives and Class Counsel shall have no obligation to repay any of the Notice and Claims Administration Costs that have been paid or incurred in accordance with the terms and conditions of this Agreement; (ii) any amounts remaining in the Alternative Pro Rata Settlement Fund after payments incurred in accordance with the terms and conditions of this Agreement, including all interest earned on the Alternative Pro Rata Settlement Fund net of any taxes, shall be returned to Defendant; and (iii) no other person or entity shall have any further claim whatsoever to such amounts.

18. **Non-Reversionary:** This Settlement is not a reversionary settlement. As of the Effective Date, all rights of Defendant in or to the Alternative Pro Rata Settlement Fund shall be extinguished, except in the event this Settlement Agreement is voided, cancelled, or terminated, as described in Section XIII of this Agreement. In the event the Effective Date occurs, no portion of the Alternative Pro Rata Settlement Fund shall be returned to Defendant.

19. **Use of the Alternative Pro Rata Settlement Fund:** As further described in this Agreement, the Alternative Pro Rata Settlement Fund shall be used by the Settlement Administrator to pay for the alternative pro rata Cash Payments to Settlement Class Members and any taxes owed by the Alternative Pro Rata Settlement Fund. Separate and apart from the funds deposited in the Alternative Pro Rata Settlement Fund, Defendant agrees to pay for: (i) payments to Class Members who submit Valid Claims for Documented Losses in an amount determined by the Settlement Administrator, but not exceeding $1,000 per Class Member, (ii) reasonable Notice and Claims Administration Costs incurred pursuant to this Settlement Agreement as approved by the Parties and approved by the Court, (iii) any Service Awards approved by the Court, and (iv)

any attorneys' fees and costs award as approved by the Court, all pursuant to the terms and conditions of this Agreement. Defendant assumes no obligation to pay any cost not expressly provided in this Paragraph.

20. **Financial Account:** The Alternative Pro Rata Settlement Fund shall be an account established and administered by the Settlement Administrator, at a financial institution recommended by the Settlement Administrator and approved by Class Counsel and Defendant, and shall be maintained as a qualified settlement fund pursuant to Treasury Regulation § 1.468 B-1, *et seq.*

21. **Payment/Withdrawal Authorization:** No amounts may be withdrawn from the Alternative Pro Rata Settlement Fund unless (i) expressly authorized by the Settlement Agreement, or (ii) as may be approved by the Court. The Settlement Administrator shall provide Class Counsel and Defendant with notice of any withdrawal or other payment the Settlement Administrator proposes to make from the Alternative Pro Rata Settlement Fund before the Effective Date at least seven (7) business days prior to making such withdrawal or payment.

22. **Payments to Class Members:** The Settlement Administrator, subject to such supervision and direction of the Court and Class Counsel as may be necessary or as circumstances may require, shall administer and oversee distribution of the Alternative Pro Rata Settlement Fund to Claimants pursuant to this Agreement.

23. **Treasury Regulations and Fund Investment:** The Parties agree that the Alternative Pro Rata Settlement Fund is intended to be maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468 B-1, and that the Settlement Administrator, within the meaning of Treasury Regulation§ 1.468 B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Alternative Pro Rata Settlement Fund

and paying from the Alternative Pro Rata Settlement Fund any taxes owed by the Alternative Pro Rata Settlement Fund. The Parties agree that the Alternative Pro Rata Settlement Fund shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election required to treat the Alternative Pro Rata Settlement Fund as a qualified settlement fund from the earliest date possible. Any and all funds held in the Alternative Pro Rata Settlement Fund shall be held in an interest-bearing account insured by the Federal Deposit Insurance Corporation at a financial institution determined by the Settlement Administrator and approved by the Parties. Funds may be placed in a non-interest bearing account as may be reasonably necessary during the check-clearing process. The Settlement Administrator shall provide an accounting of any and all funds in the Alternative Pro Rata Settlement Fund, including any interest accrued thereon and payments made pursuant to this Agreement, upon request of any of the Parties.

24. **Taxes:** Any and all taxes owed by the Alternative Pro Rata Settlement Fund shall be paid out of the Alternative Pro Rata Settlement Fund, and shall be timely paid by the Settlement Administrator without prior order of the Court. Further, the Alternative Pro Rata Settlement Fund shall indemnify and hold harmless the Parties and their counsel for taxes (including, without limitation, taxes payable by reason of any such indemnification payments). The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Class Representative or any Settlement Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Alternative Pro Rata Settlement Fund. Each Class Representative and Settlement Class Member shall be solely responsible for the federal, state, and local tax consequences to him or her regarding the receipt of funds from the Alternative Pro Rata Settlement Fund pursuant to this Agreement.

25. **Limitation of Liability**

a. Defendant and its counsel shall not have any responsibility for or liability whatsoever with respect to (i) any act, omission, or determination of Class Counsel, the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Alternative Pro Rata Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Alternative Pro Rata Settlement Fund; (iv) the determination, administration, calculation, or payment of any claims asserted against the Alternative Pro Rata Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Alternative Pro Rata Settlement Fund; or (vi) the payment or withholding of any taxes, expenses, and/or costs incurred in connection with the taxation of the Alternative Pro Rata Settlement Fund or the filing of any returns. Defendant also shall have no obligation to communicate with Settlement Class Members and others regarding amounts paid under the Settlement.

b. The Class Representative and Class Counsel shall not have any liability whatsoever with respect to (i) any act, omission, or determination of the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Alternative Pro Rata Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Alternative Pro Rata Settlement Fund; (iv) the determination, administration, calculation, or payment of any claims asserted against the Alternative Pro Rata Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Alternative Pro Rata Settlement Fund; or (vi) the payment or withholding of any taxes, expenses, and/or costs incurred in connection with the taxation of the Alternative Pro Rata Settlement Fund or the filing of any returns.

## VI. SETTLEMENT ADMINISTRATION

26. All agreed-upon and reasonable Notice and Claims Administration Costs will be

paid separate and apart from the Alternative Pro Rata Settlement Fund and shall be deposited with the Settlement Administrator within fifteen (15) Days after this Court enters the Preliminary Approval Order.

27. The Parties solicited competitive bids for settlement administration, including Notice and Claims Administration Costs, and will rely upon Email Notice, where available, and Postcard Notice, in order to contain the costs of settlement administration while still providing effective notice to the Settlement Class Members.

28. The Settlement Administrator will provide written notice of the settlement terms to all Settlement Class Members for whom Defendant has provided a valid mailing address or email address. The Settlement Administrator shall perform skip-tracing for any returned mail and shall re-mail notice to any Settlement Class Members whose addresses are uncovered by skip-tracing. Settlement Class Members shall have thirty (30) Days from the Notice Date to object to the Settlement Agreement.

29. The Settlement Administrator will cause the Notice Program to be effectuated in accordance with the terms of the Settlement Agreement and any orders of the Court. The Settlement Administrator may request the assistance of the Parties to facilitate providing notice and to accomplish such other purposes as may be approved by both Class Counsel and Defendant's Counsel. The Parties shall reasonably cooperate with such requests.

30. The Settlement Administrator will administer the claims process in accordance with the terms of the Settlement Agreement and any additional processes agreed to by both Class Counsel and Defendant's Counsel, subject to the Court's supervision and direction as circumstances may require.

31. To make a claim, a Settlement Class Member must complete and submit a valid,

timely, and sworn Claim Form. A Claim Form shall be submitted online at the Settlement Website or by U.S. mail and must be postmarked no later than the Claims Deadline.

32. The Settlement Administrator will review and evaluate each Claim Form, including any required documentation submitted, for validity, timeliness, and completeness.

33. For any Claim Form seeking request for Compensation for Documented Losses, the Settlement Administrator will review the supporting documentation and explanation connecting the claimed loss to the Data Security Incident. If, in the Settlement Administrator's determination, the Claim Form and supporting materials provides reasonable proof that a claimed loss is connected with the Data Security Incident, the Settlement Administrator shall inform the Parties and provide the Parties with the Claim Form and supporting materials. Any Party may object to the sufficiency of the Claim Form and/or supporting materials, and in the case of an objection, the Settlement Administrator will, in good faith, review the preliminary determination for compliance with Section IV (Paragraph 14) above. Any remaining objections may be brought to the Court for binding determination.

34. If, in the determination of the Settlement Administrator, the Settlement Class Member submits a timely but incomplete or inadequately supported Claim Form, the Settlement Administrator shall give the Settlement Class Member notice of the deficiencies, and the Settlement Class Member shall have twenty-one (21) Days from the date of the written notice to cure the deficiencies. The Settlement Administrator will provide notice of deficiencies concurrently to Defendant's Counsel and Class Counsel. If the defect is not cured within the 21-Day period, then the Claim will be deemed invalid. All Settlement Class Members who submit a valid and timely Claim Form, including a Claim Form deemed defective but timely cured, shall be considered "Claimants."

35. The Settlement Administrator will maintain records of all Claim Forms submitted until three hundred and sixty (360) Days after entry of the Final Judgment. Claim Forms and supporting documentation may be provided to the Court upon request and to Defendant, Class Counsel, and Defendant's Counsel to the extent necessary to resolve claims determination issues pursuant to this Settlement Agreement. Class Counsel or the Settlement Administrator will provide other reports or information that the Court may request or that the Court or Defendant's Counsel may reasonably require.

36. Subject to the terms and conditions of this Settlement Agreement, forty-five (45) Days after the Effective Date, the Settlement Administrator shall mail or otherwise provide a payment via check ("Claim Check") or digital payment selected in consultation with the Settlement Administrator (collectively, "Claim Payment") to each Claimant for: their request for Compensation for Documented Losses; or for their pro rata share of the Alternative Pro Rata Settlement Fund in accordance with the following distribution procedures: the amount of each Cash Payment shall be calculated by dividing the Alternative Pro Rata Settlement Fund by the number of valid claims for Cash Payment.

37. Each Claim Check shall be mailed to the address provided by the Claimant on his or her Claim Form. All Claim Checks issued under this section shall be void if not negotiated within ninety (90) Days of their date of issue and shall contain a legend to that effect. Claim Checks issued pursuant to this section that are not negotiated within ninety (90) Days of their date of issue shall not be reissued.

38. To the extent any monies remain in the Alternative Pro Rata Settlement Fund more than one hundred twenty (120) Days after the distribution of Claim Payments to the Claimants, a subsequent payment will be evenly made to all Claimants who cashed or deposited their initial

Claim Payments they received, provided that the average payment amount is equal to or greater than Seven Dollars and Zero Cents ($7.00). The distribution of this remaining Alternative Pro Rata Settlement Fund shall continue until the average payment amount in a distribution is less than Seven Dollars and No Cents ($7.00), whereupon the amount remaining in the Alternative Pro Rata Settlement Fund, if any, shall be distributed by mutual agreement of the Parties and the Court.

39. For any Claim Check returned to the Settlement Administrator as undeliverable (including, but not limited to, when the intended recipient is no longer located at the address), the Settlement Administrator shall make reasonable efforts to find a valid address and resend the Claim Check within thirty (30) Days after the check is returned to the Settlement Administrator as undeliverable. The Settlement Administrator shall only make one attempt to resend a Claim Check.

40. No portion of the Alternative Pro Rata Settlement Fund shall revert or be repaid to Defendant after the Effective Date. Any residual funds remaining in the Alternative Pro Rata Settlement Fund, after all payments and distributions are made pursuant to the terms and conditions of this Agreement shall be distributed according to the provisions outlined in Paragraph 19.

## VII. NOTICE TO SETTLEMENT CLASS MEMBERS

41. The Parties agree the following Notice Program provides reasonable notice to the Settlement Class.

42. Direct Notice shall be provided to Settlement Class Members via Email Notice for Settlement Class Members for whom the Settlement Administrator has a valid email address and otherwise by U.S. Mail for Settlement Class Members for whom the Settlement Administrator has a valid address.

43. Within ten (10) Days of the entry of the Preliminary Approval Order, Defendant shall provide the Settlement Administrator with the names, email addresses, and last addresses known to Defendant for the individuals who may be Settlement Class Members (the "**Class List**").

The Settlement Administrator shall, by using the National Change of Address database maintained by the U.S. Postal Service ("**Postal Service**"), obtain updates, if any, to the mailing addresses.

a. Belle Tire shall provide the Class List to the Settlement Administrator only for the purposes of settlement administration. The Settlement Administrator shall not provide the Class List to Class Counsel.

b. To the extent Class Counsel learns the identity of and/or address or email address of any Settlement Class Member(s) in connection with the settlement administration process, including but not limited to by Class Counsel being contacted by any Settlement Class Member(s) based on such Settlement Class Member(s) receiving Class Counsel's contact information on the Class Notice and/or Claim Form, Class Counsel shall not use that information for any purpose other than assisting Settlement Class Member(s) with the settlement administration process. Class Counsel shall not use information obtained through the settlement administration process regarding the identity of and/or last-known address of any Class Member(s) to solicit or notify any such Settlement Class Member(s) about any other currently pending or future actions that such Settlement Class Member(s) may be able to join and/or bring. Nothing in this Settlement Agreement shall restrict Class Counsel's ability and right to represent any Class Member(s) in this Litigation or in any other currently-pending or future action in the event that such Settlement Class Member(s) independently approach(es) Class Counsel or is approached by Class Counsel without using information obtained in connection with the settlement administration process in this Litigation, seeking representation in connection with their potential rights to assert claims against any entity.

44. Within thirty (30) Days following entry of the Preliminary Approval Order ("Notice Date"), the Settlement Administrator shall provide Email Notice and/or Postcard Notice to all Settlement Class Members. The Settlement Administrator shall mail a Claim Form to Settlement Class Members upon written or telephonic request.

45. For any email addresses reported as invalid, the Settlement Administrator shall provide Postcard Notice. If any Short-Form Notice is returned by the Postal Service as undeliverable, the Settlement Administrator shall re-mail the Postcard Notice to the forwarding address, if any, provided by the Postal Service on the face of the returned mail. For Notices returned with no forwarding address, the Settlement Administrator shall perform skip-tracing for any returned mail and shall re-mail notice to any Settlement Class Members whose addresses are

uncovered by skip-tracing.

46. The mailed notice will consist of the Postcard Notice substantially in the form of **Exhibit C**. The Settlement Administrator shall have discretion to format this Postcard Notice in a reasonable manner to minimize mailing and administrative costs. Before the mailing of the Postcard Notice is commenced, Class Counsel and Defendant's Counsel shall first be provided with a proof copy (including what the items will look like in their final form) and shall have the right to inspect the same for compliance with the Settlement Agreement and the Court's orders.

47. No later than thirty (30) Days following entry of the Preliminary Approval Order, and prior to the mailing of the Postcard Notice to all Settlement Class Members, the Settlement Administrator will create a dedicated Settlement Website. The Settlement Administrator shall cause the CAC, Postcard Notice, Long-Form Notice, Claim Form, this Settlement Agreement, the Preliminary Approval Order, and other relevant settlement and court documents to be available on the Settlement Website. Any other content proposed to be included or displayed on the Settlement Website shall be approved in advance by counsel for the Parties, which approval shall not be unreasonably withheld, by Class Counsel and Defendant's Counsel. The website address and the fact that a more detailed Long-Form Notice and a Claim Form are available through the website shall be included in the Postcard Notice.

48. Claimants shall be able to submit their claims via the website.

49. The Settlement Website shall be maintained from the Notice Date until sixty (60) Days after the Claims Deadline has passed.

50. Claim Forms shall be returned or submitted to the Settlement Administrator online or via U.S. mail, postmarked by the Claims Deadline set by the Court, or be forever barred unless such claim is otherwise approved by the Court at the Final Approval Hearing, for good cause

shown as demonstrated by the applicable Settlement Class Member.

51. Prior to the Final Approval Hearing, the Settlement Administrator shall provide to Class Counsel to file with the Court an appropriate affidavit or declaration from the Settlement Administrator concerning compliance with the Court-approved Notice Program.

## VIII. OBJECTIONS TO THE SETTLEMENT

52. Any Settlement Class Member who wishes to object to the Settlement Agreement must file with the Court and serve a written objection(s) to the Settlement ("**Objection(s)**") on Class Counsel and Defendant's Counsel, at the addresses set forth in the Long-Form Notice.

53. Each Objection must substantially comply with the following; (i) set forth the Settlement Class Member's full name, current address, telephone number, and email address; (ii) contain the Settlement Class Member's original signature; (iii) contain proof that the Settlement Class Member is a member of the Settlement Class; (iv) state that the Settlement Class Member objects to the Settlement, in whole or in part; (v) set forth a statement of the legal and factual basis for the Objection; (vi) provide copies of any documents that the Settlement Class Member wishes to submit in support of his/her position; (vii) identify all counsel representing the Settlement Class Member, if any; (viii) contain the signature of the Settlement Class Member's duly authorized attorney or other duly authorized representative, along with documentation setting forth such representation; and (ix) contain a list, including case name, court, and docket number, of all other cases in which the objector and/or the objector's counsel has filed an objection to any proposed class action settlement in the past three (3) years.

54. Objections must be filed with the Court and served on Class Counsel and Defendant's Counsel no later than thirty (30) Days after the Notice Date (the "Objection Deadline"). The Objection Deadline shall be included in the Short-Form and Long-Form Notices.

55. Class Counsel and Defendant's Counsel may, but need not, respond to the

Objections, if any, by means of a memorandum of law served prior to the Final Approval Hearing.

56. An objecting Settlement Class Member has the right, but is not required unless otherwise ordered by the Court, to attend the Final Approval Hearing. If an objecting Settlement Class Member intends to appear at the Final Approval Hearing, either with or without counsel, he or she must also file a notice of appearance with the Court (as well as serve the notice on Class Counsel and Defendant's Counsel) by the Objection Deadline.

57. If the objecting Settlement Class Member intends to appear at the Final Approval Hearing through counsel, he or she must also identify the attorney(s) representing the objecting Settlement Class Member who will appear at the Final Approval Hearing and include the attorney(s) name, address, phone number, e-mail address, state bar(s) to which counsel is admitted, as well as associated state bar numbers.

58. Any Settlement Class Member who does not submit a timely Objection in complete accordance with this Settlement Agreement and the Long-Form Notice, or as otherwise ordered by the Court, shall not be treated as having filed a valid Objection to the Settlement and shall forever be barred from raising any objection to the Settlement.

## IX. <u>OPT OUT PROCEDURES</u>

59. Each individual wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Claims Administrator. The written notice must clearly manifest an individual's intent to opt-out of the Settlement Class. To be effective, written notice must be postmarked no later than thirty (30) Days after the Notice Date.

60. All individuals who submit valid and timely notices of their intent to opt-out of the Settlement Class, as set forth in Paragraph 59 above, referred to herein as "**Opt-Outs**" and excluded from the definition of "Settlement Class Member[s]" shall not receive any benefits of

and/or be bound by the terms of this Settlement Agreement. All Settlement Class Members shall be bound by the terms of this Settlement Agreement and Judgment entered thereon.

## IX. ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

61. Class Counsel shall request the Court to approve an award of attorneys' fees and costs not to exceed $300,000.00. Any attorneys' fees and costs award approved by the Court shall be paid by Belle Tire no later than fourteen (14) Days after the Effective Date. The timing set forth in this provision is contingent upon the receipt of a W-9, payment instructions from Class Counsel, and contact information of an individual to voice-verify the instructions. For the avoidance of doubt, the Court-approved amount of any attorneys' fees and costs award shall be paid by Defendant separate and apart from the Alternative Pro Rata Settlement Fund and other benefits to the Settlement Class. The amount of attorneys' fees and costs was negotiated after the primary terms of the Settlement were negotiated.

62. Class Counsel shall request the Court to approve a service award of one thousand dollars and zero cents ($1,250.00) for each named Plaintiff ($6,250 in total), which award is intended to recognize Plaintiffs for their efforts in the Litigation and commitment on behalf of the Settlement Class (the "**Service Awards**"). For the avoidance of doubt, the Court-approved amount for any Service Award shall be paid by Defendant separate and apart from the Alternative Pro Rata Settlement Fund and any other benefits to the Settlement Class. If approved by the Court, the Service Awards will be paid by Belle Tire to Class Counsel no later than thirty (30) Days after the Effective Date. The timing set forth in this provision is contingent upon the receipt of a W-9, payment instructions from Class Counsel, and contact information of an individual to voice-verify the instructions. The Parties did not discuss or agree upon payment of the Service Awards until after they agreed on all materials terms of relief to the Settlement Class.

63. Class Counsel will file an application with the Court for the requested Attorneys'

Fees, Costs, and Service Awards no later than fourteen (14) Days prior to the Objection Deadline.

64. The Parties agree that the Court's approval or denial of any request for the Attorneys' Fees, Costs, and Service Awards are not conditions to this Settlement Agreement and are to be considered by the Court separately from final approval, reasonableness, and adequacy of the settlement. Any reduction to the Attorneys' Fees, Costs, and Service Awards shall not operate to terminate or cancel this Settlement Agreement.

## X. NOTICES

65. All notices to the Parties required by the Settlement Agreement shall be made in writing and communicated by mail to the following addresses below.

All notices to Class Counsel or Plaintiffs shall be sent to:

E. Powell Miller
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, MI 48307

Casondra Turner
**MILBERG, PLLC**
260 Peachtree Street NW, Suite 2200
Atlanta, GA 30303

Scott Edward Cole
**Cole & Van Note**
555 12th Street, Suite 2100
Oakland, CA 94607

All notices to Defendant's Counsel or Defendant shall be sent to:

Andrew Clark
Jalen Farmer
**HONIGMAN LLP**
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226

66. Other than attorney-client communications or communications otherwise protected from disclosure pursuant to law or rule, the Parties shall promptly provide to each other copies of

comments, Objections, or other documents or filings received from a Settlement Class Member as a result of the Notice Program.

## XI. SETTLEMENT APPROVAL PROCESS

67. After execution of this Settlement Agreement, the Parties shall promptly move the Court to enter the Preliminary Approval Order, which:

a. Preliminarily approves this Settlement Agreement;

b. Provisionally certifies the Settlement Class;

c. Finds the proposed settlement is sufficiently fair, reasonable, adequate, and in the best interests of the Settlement Class;

d. Finds the Notice Program constitutes valid, due, and sufficient notice to the Settlement Class Members, and constitutes the best notice practicable under the circumstances, complying fully with the requirements of the laws of Michigan, the Constitution of the United States, and any other applicable law and that no further notice to the Class is required beyond that provided through the Notice Program;

e. Appoints Simpluris, Inc. as the Settlement Administrator;

f. Directs the Settlement Administrator to provide notice to Settlement Class Members in accordance with the Notice Program provided for in this Settlement Agreement;

g. Approves the Claim Form and directs the Settlement Administrator to administer the Settlement in accordance with the provisions of this Settlement Agreement;

h. Approves the Objection procedures as outlined in this Settlement Agreement;

i. Schedules a Final Approval Hearing to consider the final approval, reasonableness, and adequacy of the proposed settlement and whether it should be finally approved by the Court; and,

j. Contains any additional provisions agreeable to the Parties that might be necessary or advisable to implement the terms of this Settlement Agreement.

## XII. FINAL APPROVAL HEARING

68. The Parties will recommend that the Final Approval Hearing shall be scheduled no earlier than seventy-five (75) Days after the Notice Date.

69. The Parties may file a response to any objections and a Motion for Final Approval no later than fourteen (14) Days after the Objection Deadline.

70. Any Settlement Class Member who wishes to appear at the Final Approval Hearing, whether pro se or through counsel, must, by the Objection Deadline, either mail or hand-deliver to the Court or file a notice of appearance in the Litigation, take all other actions or make any additional submissions as may be required in the Long-Form Notice, this Settlement Agreement, or as otherwise ordered by the Court, and mail that notice and any other such pleadings to Class Counsel and Defendant's Counsel as provided in the Long-Form Notice.

71. The Parties shall ask the Court to enter a Final Approval Order and Judgment which includes the following provisions:

a. A finding that the Notice Program fully and accurately informed all Settlement Class Members entitled to notice of the material elements of the settlement, constitutes the best notice practicable under the circumstances, constitutes valid, due, and sufficient notice, and complies fully with the laws of Michigan, the United States Constitution, and any other applicable law;

b. A finding that after proper notice to the Settlement Class, and after sufficient opportunity to object, no timely objections to this Settlement Agreement have been made, or a finding that all timely objections have been considered and denied;

c. Approval of the Settlement, as set forth in the Settlement Agreement, as

fair, reasonable, adequate, and in the best interests of the Settlement Class, in all respects, finding that the settlement is in good faith, and ordering the Parties to perform the Settlement in accordance with the terms of this Settlement Agreement;

d. A finding that neither the Final Judgment, the Settlement, nor the Settlement Agreement shall constitute an admission of liability by any of the Parties, or any liability or wrongdoing whatsoever by any Party;

e. Subject to the reservation of jurisdiction for matters discussed in subparagraph (h) below, a dismissal with prejudice of the Litigation;

f. A finding that Plaintiffs shall, as of the entry of the Final Judgment, conclusively be deemed to have fully, finally, and forever completely released, relinquished, and discharged the Released Persons from the Plaintiffs' Released Claims;

g. A finding that all Settlement Class Members shall, as of the entry of the Final Judgment, conclusively be deemed to have fully, finally, and forever completely released, relinquished, and discharged the Released Persons from the Released Claims; and

h. A reservation of exclusive and continuing jurisdiction over the Litigation and the Parties for the purposes of, among other things, (i) supervising the implementation, enforcement, construction, and interpretation of the Settlement Agreement, the Preliminary Approval Order, and the Final Judgment; and (ii) supervising the administration and distribution of the relief to the Settlement Class and resolving any disputes that may arise with regard to the foregoing.

72. Upon entry of the Final Approval Order, the Litigation shall be dismissed with prejudice, with the Parties to bear their own costs and attorneys' fees and costs not otherwise awarded in accordance with this Settlement Agreement.

## XIII. TERMINATION OF THIS SETTLEMENT AGREEMENT

73. Each Party shall have the right to terminate this Settlement Agreement if:

a. The Court denies preliminary approval of this Settlement Agreement (or grants preliminary approval through an order that materially differs in substance to **Exhibit D** hereto);

b. The Court denies final approval of this Settlement Agreement (or grants final approval through an order that materially differs in substance from **Exhibit E** hereto);

c. The Final Approval Order and Final Judgment do not become final by reason of a higher court reversing final approval by the Court, and the Court thereafter declines to enter a further order or orders approving the settlement on the terms set forth herein; or

d. The Effective Date cannot or does not occur.

74. Defendant shall have the right, but not the obligation, to terminate the Settlement Agreement if 250 or more individuals opt out of the Settlement Class.

75. The Parties agree to work in good faith to effectuate this Settlement Agreement.

76. If a Party elects to terminate this Settlement Agreement under this Section XIII, that Party must provide written notice to the other Party's counsel, by hand delivery, mail, ore-mail within ten (10) Days of the occurrence of the condition permitting termination.

77. Nothing shall prevent Plaintiffs or Defendant from appealing or seeking other appropriate relief from an appellate court with respect to any denial by the Court of final approval of the Settlement.

78. If this Settlement Agreement is terminated or disapproved, or if the Effective Date should not occur for any reason, then: (i) this Settlement Agreement, the Preliminary Approval Order, the Final Approval Order (if applicable), and all of their provisions shall be rendered null and void; (ii) all Parties shall be deemed to have reverted to their respective status in the Litigation

as of the date and time immediately preceding the execution of this Settlement Agreement; (iii) except as otherwise expressly provided, the Parties shall stand in the same position and shall proceed in all respects as if this Settlement Agreement and any related orders had never been executed, entered into, or filed; and (iv) no term or draft of this Settlement Agreement nor any part of the Parties' settlement discussions, negotiations, or documentation (including any declaration or brief filed in support of the motion for preliminary approval or motion for final approval), nor any rulings regarding class certification for settlement purposes (including the Preliminary Approval Order and, if applicable, the Final Approval Order and Final Judgment), will have any effect or be admissible into evidence for any purpose in the Litigation or any other proceeding.

79. If the Court does not approve the Settlement or the Effective Date cannot or does not occur for any reason, Defendant shall retain all its rights and defenses in the Litigation. For example, Defendant shall have the right to object to the maintenance of the Litigation as a class action, to move for summary judgment, and to assert defenses at trial, and nothing in this Settlement Agreement or other papers or proceedings related to the Settlement shall be used as evidence or argument by any Party concerning whether the Litigation may properly be maintained as a class action, or for any other purpose.

## XIV. RELEASE

80. The Final Approval Order and Final Judgment shall provide that the Litigation is dismissed with prejudice as to the Plaintiffs and all Settlement Class Members.

81. On the Effective Date, Plaintiffs and each and every Settlement Class Member shall be bound by this Settlement Agreement and shall have recourse only to the benefits, rights, and remedies provided hereunder. No other action, demand, suit, arbitration, or other claim or proceeding, regardless of forum, may be pursued against Released Persons with respect to the Plaintiffs' Released Claims or the Released Claims.

82. On the Effective Date and in consideration of the promises and covenants set forth in this Settlement Agreement, Plaintiffs will be deemed to have fully, finally, and forever completely released, relinquished, and discharged the Released Persons from any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, disputes, contracts or agreements, extra-contractual claims, damages, punitive damages, exemplary damages, multiplied damages, expenses, costs, attorneys' fees and/or obligations, whether in law or in equity, accrued or unaccrued, direct or indirect, individual or representative, of every nature and description whatsoever, regardless of whether arising out of or connected to the Data Security Incident, that were or could have been asserted in the Litigation or other state, federal, local, statutory or common law or any other law, rule or regulation, against the Released Parties, or any of them, arising out of any facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the alleged disclosure of the Settlement Class Members' Private Information to any third party, including all claims that were brought or could have been brought in the Litigation relating to the disclosure of such information belonging to any and all Releasing Parties (the "**Plaintiffs' Release**"). Nothing herein is intended to release any claims any governmental agency or governmental actor has against Defendant. The Plaintiffs' Release shall be included as part of the Final Approval Order so that all claims released thereby shall be barred by principles of res judicata, collateral estoppel, and claim and issue preclusion (the "**Plaintiffs' Released Claims**"). The Plaintiffs' Released Claims shall constitute and may be raised as a complete defense to any proceeding arising from, relating to, or filed in connection with the Plaintiffs' Released Claims.

83. On the Effective Date and in consideration of the promises and covenants set forth

in this Settlement Agreement, each Settlement Class Member will be deemed to have fully, finally, and forever completely released, relinquished, and discharged the Released Persons from any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, disputes, contracts or agreements, extra-contractual claims, damages, punitive damages, exemplary damages, multiplied damages, expenses, costs, attorneys' fees and/or obligations, whether in law or in equity, accrued or unaccrued, direct or indirect, individual or representative, of every nature and description whatsoever, regardless of whether arising out of or connected to the Data Security Incident, that were or could have been asserted in the Litigation or other state, federal, local, statutory or common law or any other law, rule or regulation, against the Released Parties, or any of them, arising out of any facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the alleged disclosure of the Settlement Class Members' Private Information to any third party, including all claims that were brought or could have been brought in the Litigation relating to the disclosure of such information belonging to any and all Releasing Parties (the "**Settlement Class Release**"). The Settlement Class Release shall be included as part of the Final Approval Order so that all claims released thereby shall be barred by principles of res judicata, collateral estoppel, and claim and issue preclusion (the "**Released Claims**"). The Released Claims shall constitute and may be raised as a complete defense to any proceeding arising from, relating to, or filed in connection with the Released Claims.

84. Subject to Court approval, upon entry of the Final Approval Order, Plaintiffs and all Settlement Class Members shall be bound by this Settlement Agreement and the Settlement Class Release and all of Plaintiffs' Released Claims and the Released Claims shall be dismissed

with prejudice and released.

85. The Plaintiffs' Released Claims and Released Claims include the release of Unknown Claims. "**Unknown Claims**" means claims that could have been raised in the Litigation and that any of the Plaintiffs or Settlement Class Members, and each of their respective heirs, executors, administrators, representatives, agents, partners, trustees, successors, attorneys, and assigns do not know to exist or suspects to exist, which, if known by him, her or it, might affect his, her, or its agreement to release Defendant and all other Released Persons, or might affect his, her, or its decision to agree to, or object or not to object to the Settlement. Upon the Effective Date, Plaintiffs, the Settlement Class, and any Releasing Party shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE PLAINTIFFS DO NOT KNOW OR SUSPECT TO EXIST IN THEIR FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY THEM MUST HAVE MATERIALLY AFFECTED THEIR SETTLEMENT WITH THE DEFENDANT.

Upon the Effective Date, each of the Releasing Parties shall be deemed to have, and shall have, waived any and all provisions, rights, and benefits conferred by any law of any state, the District of Columbia or territory of the United States, by federal law, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to Section 1542 of the California Civil Code. The Class Representatives, the Settlement Class, and the Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Release, but that it is their intention to finally and forever settle and release the Released Claims, including but not limited to any Unknown Claims they may have, as that term is defined in this Paragraph. The Parties acknowledge, and Settlement Class Members shall be deemed by

operation of the Agreement to have acknowledged, that the foregoing waiver is a material term of the Agreement.

86. On entry of the Final Approval Order and Final Judgment, the Plaintiffs and Settlement Class Members shall be enjoined from prosecuting, respectively, the Plaintiffs' Released Claims and the Released Claims, in any proceeding in any forum against any of the Released Persons or based on any actions taken by any Released Persons authorized or required by this Settlement Agreement or the Court or an appellate court as part of this Settlement.

87. Without in any way limiting the scope of the Plaintiffs' Release or the Settlement Class Release (the "**Releases**"), the Releases cover, without limitation, any and all claims for attorneys' fees or costs incurred by Class Counsel or any other counsel representing Plaintiffs or Settlement Class Members, or any of them, in connection with or related in any manner to the Litigation, the Settlement, the administration of such Settlement and/or the Plaintiffs' Released Claims or the Released Claims as well as any and all claims for Service Awards to Plaintiffs.

88. Nothing in the Releases shall preclude any action to enforce the terms of this Settlement Agreement, including participation in any of the processes detailed herein.

## XV. EFFECTIVE DATE

89. The "Effective Date" of this Settlement Agreement shall be the first Day after the date when all of the following conditions have occurred:

a. This Settlement Agreement has been fully executed by all Parties and their counsel;

b. Orders have been entered by the Court certifying the Settlement Class, granting preliminary approval of this Settlement Agreement and approving the Notice Program and Claim Form, all as provided above;

c. The Court-approved Postcard Notice has been mailed, other notice required

by the Notice Program, if any, has been effectuated and the Settlement Website has been duly created and maintained as ordered by the Court;

d. The Court has entered a Final Approval Order finally approving this Settlement Agreement, as provided above; and

e. The Final Approval Order and Final Judgment have become Final, as defined in Paragraph 9n.

## XVI. MISCELLANEOUS PROVISIONS

90. The recitals and exhibits to this Settlement Agreement are integral parts of the Settlement and are expressly incorporated and made a part of this Settlement Agreement.

91. This Settlement Agreement is for settlement purposes only. Neither the fact of nor any provision contained in this Settlement Agreement nor any action taken hereunder shall constitute or be construed as an admission of the validity of any claim or any fact alleged in the CAC or Litigation or of any wrongdoing, fault, violation of law or liability of any kind on the part of Defendant or any admission by Defendant of any claim in this Litigation or allegation made in any other proceeding, including regulatory matters, directly or indirectly involving the Data Security Incident or allegations asserted in the CAC and Litigation. This Settlement Agreement shall not be offered or be admissible in evidence against the Parties or cited or referred to in any action or proceeding between the Parties, except in an action or proceeding brought to enforce its terms. Nothing contained herein is or shall be construed or admissible as an admission by Defendant that Plaintiffs' claims, or any similar claims, are suitable for class treatment.

92. In the event that there are any developments in the effectuation and administration of this Settlement Agreement that are not dealt with by the terms of this Settlement Agreement, then such matters shall be dealt with as agreed upon by the Parties, and failing agreement, as shall be ordered by the Court. The Parties shall execute all documents and use their best efforts to

perform all acts necessary and proper to promptly effectuate the terms of this Settlement Agreement and to take all necessary or appropriate actions to obtain judicial approval of this Settlement Agreement to give this Settlement Agreement full force and effect.

93. No person shall have any claim against Plaintiffs, Class Counsel, Defendant, Defendant's Counsel, the Settlement Administrator, or the Released Persons, or any of the foregoing's agents or representatives based on the administration of the Settlement substantially in accordance with the terms of the Settlement Agreement or any order of the Court or appellate court.

94. This Settlement Agreement constitutes the entire Settlement Agreement between and among the Parties with respect to the Settlement of the Litigation. This Settlement Agreement supersedes all prior negotiations and Settlement Agreements and may not be modified or amended except by a writing signed by the Parties and their respective counsel. The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or understanding concerning any part of the subject matter of this Settlement Agreement has been made or relied on except as expressly set forth in this Settlement Agreement.

95. There shall be no waiver of any term or condition in this Settlement Agreement absent an express writing to that effect by the non-waiving Party. No waiver of any term or condition in this Settlement Agreement shall be construed as a waiver of a subsequent breach or failure of the same term or condition, or waiver of any other term or condition of this Settlement Agreement.

96. In the event a third-party, such as a bankruptcy trustee, former spouse, or other third-party has or claims to have a claim against any payment made to a Settlement Class Member, it is the responsibility of the Settlement Class Member to transmit the funds to such third-party.

Unless otherwise ordered by the Court, the Parties will have no, and do not agree to any, responsibility for such transmittal.

97. This Settlement Agreement shall not be construed more strictly against one Party than another merely because it may have been prepared by counsel for one of the Parties, it being recognized that because of the arm's-length negotiations resulting in this Settlement Agreement, all Parties hereto have contributed substantially and materially to the preparation of the Settlement Agreement. All terms, conditions, and exhibits are material and necessary to this Settlement Agreement and have been relied upon by the Parties in entering into this Settlement Agreement.

98. This Settlement Agreement shall be construed under and governed by the laws of the State of Michigan without regard to its choice of law provisions.

99. In the event that one or more of the provisions contained in this Settlement Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect the other provisions of the Settlement Agreement, which shall remain in full force and effect as though the invalid, illegal, or unenforceable provision(s) had never been a part of this Settlement Agreement as long as the benefits of this Settlement Agreement to Defendant or the Settlement Class Members are not materially altered, positively or negatively, as a result of the invalid, illegal, or unenforceable provision(s).

100. This Settlement Agreement will be binding upon and inure to the benefit of the successors and assigns of the Parties, Released Persons, and Settlement Class Members.

101. The headings used in this Settlement Agreement are for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement. In construing this Settlement Agreement, the use of the singular includes the plural (and vice-versa)

and the use of the masculine includes the feminine (and vice-versa).

102. The Parties stipulate to stay all proceedings in the Litigation until the approval of this Settlement Agreement has been finally determined, except the stay of proceedings shall not prevent the filing of any motions, affidavits, and other matters necessary to obtain and preserve judicial approval of this Settlement Agreement.

103. This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original as against any Party who has signed it and all of which shall be deemed a single Settlement Agreement.

104. Each Party to this Settlement Agreement and the signatories thereto warrant that he, she, or it is acting upon his, her or its independent judgment and the advice of his, her, or its counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other Party, other than the warranties and representations expressly made in this Settlement Agreement.

105. Each signatory below warrants that he or she has authority to execute this Settlement Agreement and bind the Party on whose behalf he or she is executing the Settlement Agreement.

IN WITNESS WHEREOF, the Parties have hereby accepted and agreed to the Settlement Agreement.

[signatures on following page(s)]

**AGREED TO BY:**

| | |
|---|---|
| 4/13/2026 | Signed by: 38954B1FDAB54D0... |
| Date | Belle Tire Distributors, Inc. |
| | ***Defendant*** |
| Date | E. Powell Miller<br>The Miller Law Firm, P.C. |
| Date | Casondra Turner<br>Milberg, PLLC |
| Date | Scott Edward Cole<br>Cole & Van Note |
| | ***Counsel for Proposed Representative Plaintiffs and Class Counsel*** |

**AGREED TO BY:**

| | |
|---|---|
| ____________ | ______________________________ |
| Date | Belle Tire Distributors, Inc. |
| | ***Defendant*** |
| 4.8.26 | *E. Powell Miller* |
| Date | E. Powell Miller<br>The Miller Law Firm, P.C. |
| ____________ | ______________________________ |
| Date | Casondra Turner<br>Milberg, PLLC |
| ____________ | ______________________________ |
| Date | Scott Edward Cole<br>Cole & Van Note |
| | ***Counsel for Proposed Representative Plaintiffs and Class Counsel*** |

**AGREED TO BY:**

| | |
|---|---|
| ____________ Date | ______________________________ Belle Tire Distributors, Inc. |
| | ***Defendant*** |
| ____________ Date | ______________________________ E. Powell Miller<br>The Miller Law Firm, P.C. |
| 4/8/2026 ____ Date | */s/ Casondra Turner*________________ Casondra Turner, Milberg, PLLC |
| ____________ Date | ______________________________ Scott Edward Cole<br>Cole & Van Note |
| | ***Counsel for Proposed Representative Plaintiffs and Class Counsel*** |

**AGREED TO BY:**

| | |
|---|---|
| Date | Belle Tire Distributors, Inc. |
| | ***Defendant*** |
| Date | E. Powell Miller<br>The Miller Law Firm, P.C. |
| Date | Casondra Turner<br>Milberg, PLLC |
| 4/7/26<br>Date | Scott Edward Cole<br>Cole & Van Note |
| | ***Counsel for Proposed Representative Plaintiffs and Class Counsel*** |

4/6/2026 ID kcqjAvRmQ3nsX9PvrmeA7nv4

Date Tabbitha Berry

Date Hamza Yaser Algharably

Date Zachary Loafman

Date Anthony Georges

Date Zach Travis

| | |
|---|---|
| Date | Tabbitha Berry |
| 04/06/2026<br>Date | Hamza Algharably (Apr 6, 2026 10:38:46 EDT)<br>Hamza Yaser Algharably |
| Date | Zachary Loafman |
| Date | Anthony Georges |
| Date | Zach Travis |

| | |
|---|---|
| Date | Tabbitha Berry |
| Date | Hamza Yaser Algharably |
| Apr 10, 2026<br>Date | Zachary Loafman (Apr 10, 2026 14:59:17 EDT)<br>Zachary Loafman |
| Date | Anthony Georges |
| Date | Zach Travis |

Date — Tabbitha Berry

Date — Hamza Yaser Algharably

Date — Zachary Loafman

04/09/2026
Date — Anthony Georges

Date — Zach Travis

| | |
|---|---|
| Date | Tabbitha Berry |
| Date | Hamza Yaser Algharably |
| Date | Zachary Loafman |
| Date | Anthony Georges |
| 04/06/2026<br>Date | Zachariah Shea Travis<br>Zachariah Shea Travis (Apr 6, 2026 11:06:56 EDT)<br>Zach Travis |